***TERRY A. DAKE, LTD.***
**P.O. Box 26945**
**Phoenix, Arizona 85068-6945**
**Telephone: (602) 710-1005**
**tdake@cox.net**

**Terry A. Dake - 009656**

Attorney for Trustee

**IN THE UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF ARIZONA**

| | | |
|---|---|---|
| In re: | ) | In Chapter 7 Proceedings |
| | ) | |
| BRUCE STANLEY RICKER, | ) | |
| SUSAN RENEE RICKER, | ) | Case No. 3:23-BK-06089-DPC |
| | ) | |
| Debtor. | ) | |

**OBJECTION TO EXEMPTIONS
AND NOTICE OF BAR DATE**

The trustee objects to the exemptions claimed by the debtors. The trustee's objection is more fully set forth in and is supported by the following Memorandum Of Points And Authorities.

DATED November 9, 2023.

***TERRY A. DAKE, LTD.***

By /s/ TD009656
    Terry A. Dake
    P.O. Box 26945
    Phoenix, Arizona 85068-6945
    Attorney for Trustee

**MEMORANDUM OF POINTS AND AUTHORITIES**

**1. Homestead**

The debtors claim a homestead exemption in a 2020 Entegra Coach Odyssey Series motor home. The trustee objects.

The issue of whether a "motor home" can be exempted as a "mobile home" (the latter being the specific term used by the exemption statute, A.R.S. §33-1101(a)(4)) is currently pending before the Arizona

Supreme Court in *In re Drummond*, CV-23-0009-CQ. If the Arizona Supreme Court determines that a motor home cannot be exempted as a "mobile home", then the exemption claimed by these debtors in their motor home must also be denied. The trustee's brief that has been filed with the Arizona Supreme Court in the Drummond matter is incorporated by reference herein.

The trustee objects to the asserted exemption in this motor home and requests that this Court hold this matter in abeyance pending the ruling by the Arizona Supreme Court. If this Court declines to do so, then the trustee requests that the exemption be denied for the reasons set forth in the brief filed with the Arizona Supreme Court.

**2. Pre-Paid Assets**

The debtors claim several "pre-payments" exempt under A.R.S. §33-1126(C). The trustee objects.

First, the statute expressly provides that the asserted exemption is ONLY available to debtors who don't exercise the homestead exemption. Thus, this exemption is barred by the plain language of the statute since these debtors have exercised the homestead exemption.

Second, the statute only allows an exemption for "prepaid rent" and "security deposits provided in section 33-1121, subsection A, for the claimant's residence". The "security deposits" in §33-1321 are for security demanded by a landlord. The debtors' Petition (at Item 5) reflects that the debtors reside in Camp Verde. That is consistent with their Schedule G, which reflects that the debtors' have a lease with the Verde Ranch RV Park. It is also consistent with SOFA Item 6, which reflects the monthly rent payments to the Verde Ranch RV

2

Park. Thus, the Verde Ranch RV Park is the debtors' "landlord" where the debtors (aka "claimants") reside. The lease provided by the debtors shows that the Mesa Sunset RV Resort is apparently the owner of the Verde Ranch RV Park. Thus, if any exemption can be allowed, it is only for the payment to the landlord - Mesa Sunset RV Resort.

On the other hand, "Trail Riders Ranch" is not the debtors' landlord where they reside. Thus, that prepayment cannot be exempted.

The debtors also made a pre-payment to U-Haul for a storage locker in the amount of $1,183.17. SOFA Item 6. Those funds must also be turned over to the trustee along with these non-exempt pre-payments.

### 3. Prop 209 Exemptions

Finally, the debtors claim an exemption of $30,000.00 in a 2016 Buick Encore, and exemptions of $4,686.20 and $4,717.17 in two bank accounts at Bank of America. The trustee objects.

The vehicle exemption and the bank account exemptions are each claimed under the versions of §33-1125(8) and §33-1126(A)(9) as amended by Proposition 209 ("Prop 209"). Prop 209 increased the vehicle exemption from $6,000.00 to $10,000.00, and increased the bank account exemption from $300.00 to $5,000.00.

However, Prop 209 (Exhibit 1) contains a "savings clause" (Section 10), which says:

> This act applies prospectively only. Accordingly, it does not affect rights and duties that matured before the effective date of this act, contracts entered into before the effective date of this act or the interest rate on judgments that are based on a written agreement entered into before the effective date of this act.

3

In this case, the debts which these debtors seek to discharge were incurred before Prop 209 became effective on December 5, 2022. Yet the debtors seek to alter the rights of these pre-existing creditors by claiming the benefit of the significantly higher exemptions that were created by Prop 209 on December 5, 2022.

Prop 209 could not have been clearer - it applies "prospectively" only. Thus, it cannot be used to alter the debtor creditor relationships that were created before Prop 209 existed. Therefore, the increased vehicle exemption and the increased bank account exemptions claimed by the debtors under the new exemptions otherwise allowed by Prop 209 cannot be allowed in this case.

Second, Prop 209 is unconstitutional due to vagueness. That issue is presently before the Arizona Court of Appeals. Arizona Creditors' Bar v. State of Arizona, No. 1 CA-CV-22-0765. A copy of the plaintiff's briefs in that matter are attached as Exhibits 2 and 3 and are incorporated by reference herein. Unless and until the state courts have resolved that issue, the increased exemptions which are based on Prop 209 cannot be allowed.

**WHEREFORE**, the trustee prays for the entry of an order denying the homestead, prepayment, vehicle and bank account exemptions claimed by the debtors as set forth herein.

DATED November 9, 2023.

*TERRY A. DAKE, LTD.*

By /s/ TD009656
Terry A. Dake
P.O. Box 26945
Phoenix, Arizona  85068-6945
Attorney for Trustee

4

## NOTICE OF OBJECTION TO CLAIMED EXEMPTIONS

The trustee has filed the above objection to the exemptions claimed by the debtor.

<u>Your rights may be affected</u>. You should read these papers carefully and discuss them with your attorney, if you have one in this bankruptcy case. If you do not have an attorney, you may wish to consult one.

If you do not want the court to sustain the trustee's objection to the claimed exemptions and disallow them or if you want the court to consider your views on the trustee's objection, then on or before **December 4, 2023** you or your attorney must file with the Court a written response requesting a hearing on the trustee's objection.

### FILE YOUR OBJECTION AT:

Clerk
United States Bankruptcy Court
230 N. First Avenue
Ste. 101
Phoenix, AZ 85003-1706

If you mail your response to the Court, you must mail it early enough so the Court will receive it on or before the date stated above.

You must also mail a copy to the attorney for the trustee at:

Terry A. Dake, Esq.
***Terry A. Dake, Ltd.***
P.O. Box 26945
Phoenix, Arizona 85068-6945

If you or your attorney do not take these steps, the Court may decide that you do not oppose the trustee's objection and may enter an order that sustains the trustee's objection and disallows those exemptions to which the trustee has objected.

COPY e-mailed November 9, 2023 to:

**SANDRA C. OSWALT**
Oswalt Law Group, P.C.
3933 S. McClintock Drive, Ste. 500
Tempe, AZ 85282
602-773-5711
Fax : 602-773-5739
Email: sandra@oswaltlawgroup.com

 /s/ TD009656

5



**E  X  H  I  B  I  T       1**



AN INITIATIVE MEASURE

AMENDING SECTIONS 12-1598.10, 33-1101, 33-1123, 33-1125, 33-1126, 33-1131 AND 44-1201, ARIZONA REVISED STATUTES; RELATING TO PREDATORY DEBT COLLECTION PROTECTION.

Be it enacted by the People of the State of Arizona:

Section 1. Section 12-1598.10, Arizona Revised Statutes, is amended to read:

12-1598.10. Continuing lien on earnings; order

A. If it appears from the answer of the garnishee that the judgment debtor was an employee of the garnishee, or that the garnishee otherwise owed earnings to the judgment debtor when the writ was served, or earnings would be owed within sixty days thereafter and there is no timely written objection to the writ or the answer of the garnishee filed, on application by the judgment creditor the court shall order that the nonexempt earnings, if any, withheld by the garnishee after service of the writ be transferred to the judgment creditor who is entitled to such monies subject to the judgment debtor's right to objection and hearing pursuant to this article. The court shall further order that the garnishment is a continuing lien against the nonexempt earnings of the judgment debtor.

B. If a timely objection is filed the court shall conduct a hearing pursuant to section 12-1598.07 and shall make the following determinations:

1. Whether the writ is valid against the judgment debtor.

2. The amount outstanding on the judgment at the time the writ was served, plus accruing costs.

3. Whether the judgment debtor was employed by the garnishee at the time the writ was served.

4. Whether earnings were owed or would be owed by the garnishee to the judgment debtor within sixty days after the service of the writ.

5. Whether the debt was, at the time of service of the writ, subject to an effective agreement for debt scheduling between the judgment debtor and a qualified debt counseling organization.

C. If the court makes an affirmative determination under subsection B, paragraph 1 of this section and subsection B, paragraph 3 or 4 of this section and determines that the debt was not, at the time of service of the writ, subject to an effective agreement between the judgment debtor and a qualified debt counseling organization, the court shall order that the nonexempt earnings, if any, withheld by the garnishee after service of the writ be transferred to the judgment creditor and further order that the garnishment is a continuing lien against the nonexempt earnings of the judgment debtor. Otherwise the court shall order the garnishee discharged from the writ.

D. A continuing lien ordered pursuant to this section is invalid and of no force and effect on the occurrence of any of the following conditions:

1. The underlying judgment is satisfied in full, is vacated or expires.

2. The judgment debtor leaves the garnishee's employ for more than sixty days or, if the judgment debtor is an employee of a school district, a charter school, the Arizona state schools for the deaf and the blind or an accommodation school and the judgment debtor is subject to an employment contract that specifies that paydays are restricted to the school year, for more than ninety days.

3. The judgment creditor releases the garnishment.

4. The proceedings are stayed by a court of competent jurisdiction, including the United States bankruptcy court.

5. The judgment debtor has not earned any nonexempt earnings for at least sixty days or, if the judgment debtor is an employee of a school district, a charter school, the Arizona state schools for the deaf and the blind or an accommodation school and the judgment debtor is subject to an employment contract that specifies that paydays are restricted to the school year, for at least ninety days.

6. The court orders that the garnishment be quashed.

E. If no objections are filed to the answer of the garnishee and an order of continuing lien is not entered within forty-five days after the filing of the answer of the garnishee, any earnings held by the garnishee shall be released to the judgment debtor and the garnishee shall be discharged from any liability on the garnishment.

F. If at the hearing the court determines that the judgment debtor is subject to the ~~twenty-five~~ TEN percent maximum disposable earnings provision under section 33-1131, subsection B and based on clear and convincing evidence that the judgment debtor or the judgment debtor's family would suffer extreme economic hardship as a result of the garnishment, the court may reduce the amount of nonexempt earnings withheld under a continuing lien ordered pursuant to this section from the ~~twenty-five~~ TEN percent to not less than ~~fifteen~~ FIVE percent.

G. A court order entered pursuant to this section if recorded does not constitute a lien against real property pursuant to section 33-961.

H. The court, sitting without a jury, shall decide all issues of fact and law.

Sec. 2. Section 33-1101, Arizona Revised Statutes, is amended to read:

33-1101. Homestead exemptions; persons entitled to hold homesteads; annual adjustment

A. Any person the age of eighteen or over, married or single, who resides within the state may hold as a homestead exempt from attachment, execution and forced sale, not exceeding ~~one hundred fifty thousand dollars~~ $400,000 in value, any one of the following:

1. The person's interest in real property in one compact body upon which exists a dwelling house in which the person resides.

2. The person's interest in one condominium or cooperative in which the person resides.

3. A mobile home in which the person resides.

4. A mobile home in which the person resides plus the land upon which that mobile home is located.
B. Only one homestead exemption may be held by a married couple or a single person under this section. The value as specified in this section refers to the equity of a single person or married couple. If a married couple lived together in a dwelling house, a condominium or cooperative, a mobile home or a mobile home plus land on which the mobile home is located and are then divorced, the total exemption allowed for that residence to either or both persons shall not exceed ~~one hundred fifty thousand dollars~~ $400,000 in value.

C. The homestead exemption, not exceeding the value provided for in subsection A, AS ADJUSTED BY SUBSECTION D OF THIS SECTION, automatically attaches to the person's interest in identifiable cash proceeds from the voluntary or involuntary sale of the property. The homestead exemption in identifiable cash proceeds continues for eighteen months after the date of the sale of the property or until the person establishes a new homestead with the proceeds, whichever period is shorter. Only one homestead exemption at a time may be held by a person under this section.

D. THE HOMESTEAD EXEMPTION PROVIDED BY THIS SECTION SHALL BE ADJUSTED ANNUALLY BEGINNING ON JANUARY 1, 2024 AND THEREAFTER ON JANUARY 1 OF EACH SUCCESSIVE YEAR BY THE INCREASE IN THE COST OF LIVING. THE INCREASE IN THE COST OF LIVING SHALL BE MEASURED BY THE PERCENTAGE INCREASE AS OF AUGUST OF THE IMMEDIATELY PRECEDING YEAR OVER THE LEVEL AS OF AUGUST OF THE PREVIOUS YEAR OF THE CONSUMER PRICE INDEX (ALL URBAN CONSUMERS, UNITED STATES CITY AVERAGE FOR ALL ITEMS) OR ITS SUCCESSOR INDEX AS PUBLISHED BY THE UNITED STATES DEPARTMENT OF LABOR, BUREAU OF LABOR STATISTICS, OR ITS SUCCESSOR AGENCY, WITH THE AMOUNT OF THE EXEMPTION ROUNDED UP TO THE NEAREST $100.

Sec. 3. Section 33-1123, Arizona Revised Statutes, is amended to read:

33-1123. Household furniture, furnishings and appliances; annual adjustment

A. Household furniture and furnishings, household goods, including consumer electronic devices, and household appliances personally used by the debtor or a dependent of the debtor and not otherwise specifically prescribed in this chapter are exempt from process provided their aggregate fair market value does not exceed ~~six thousand dollars~~ $15,000.

2



B.  THE EXEMPTION PROVIDED BY THIS SECTION SHALL BE ADJUSTED ANNUALLY BEGINNING ON JANUARY 1, 2024 AND THEREAFTER ON JANUARY 1 OF EACH SUCCESSIVE YEAR BY THE INCREASE IN THE COST OF LIVING. THE INCREASE IN THE COST OF LIVING SHALL BE MEASURED BY THE PERCENTAGE INCREASE AS OF AUGUST OF THE IMMEDIATELY PRECEDING YEAR OVER THE LEVEL AS OF AUGUST OF THE PREVIOUS YEAR OF THE CONSUMER PRICE INDEX (ALL URBAN CONSUMERS, UNITED STATES CITY AVERAGE FOR ALL ITEMS) OR ITS SUCCESSOR INDEX AS PUBLISHED BY THE UNITED STATES DEPARTMENT OF LABOR, BUREAU OF LABOR STATISTICS, OR ITS SUCCESSOR AGENCY, WITH THE AMOUNT OF THE EXEMPTION ROUNDED UP TO THE NEAREST $100.

Sec. 4.  Section 33-1125, Arizona Revised Statutes, is amended to read:

33-1125. Personal items

The following property of a debtor used primarily for personal, family or household purposes is exempt from process:

1.  All wearing apparel of not more than a fair market value of five hundred dollars.

2.  All musical instruments provided for the debtor's individual or family use of not more than an aggregate fair market value of four hundred dollars.

3.  Horses, milk cows and poultry of not more than an aggregate fair market value of one thousand dollars.

4.  All engagement and wedding rings of not more than an aggregate fair market value of two thousand dollars.

5.  The library of a debtor, including books, manuals, published materials and personal documents of not more than an aggregate fair market value of two hundred fifty dollars.

6.  One watch of not more than a fair market value of two hundred fifty dollars.

7.  One typewriter, one computer, one bicycle, one sewing machine, a family bible or a lot in any burial ground of not more than an aggregate fair market value of two thousand dollars.

8.  Equity in one motor vehicle of not more than ~~six thousand dollars~~ $15,000. If the debtor or debtor's dependent has a physical disability, the equity in the motor vehicle shall not exceed ~~twelve thousand dollars~~ $25,000. THE EXEMPTION PRESCRIBED IN THIS PARAGRAPH SHALL BE ADJUSTED ANNUALLY BEGINNING ON JANUARY 1, 2024 AND THEREAFTER ON JANUARY 1 OF EACH SUCCESSIVE YEAR BY THE INCREASE IN THE COST OF LIVING. THE INCREASE IN THE COST OF LIVING SHALL BE MEASURED BY THE PERCENTAGE INCREASE AS OF AUGUST OF THE IMMEDIATELY PRECEDING YEAR OVER THE LEVEL AS OF AUGUST OF THE PREVIOUS YEAR OF THE CONSUMER PRICE INDEX (ALL URBAN CONSUMERS, UNITED STATES CITY AVERAGE FOR ALL ITEMS) OR ITS SUCCESSOR INDEX AS PUBLISHED BY THE UNITED STATES DEPARTMENT OF LABOR, BUREAU OF LABOR STATISTICS, OR ITS SUCCESSOR AGENCY, WITH THE AMOUNT OF THE EXEMPTION ROUNDED UP TO THE NEAREST $100.

9.  Professionally prescribed prostheses for the debtor or a dependent of the debtor, including a wheelchair or motorized mobility device.

10.  All firearms of not more than an aggregate fair market value of two thousand dollars.

11.  All domestic animals or household pets.

Sec. 5.  Section 33-1126, Arizona Revised Statutes, is amended to read:

33-1126. Money, benefits or proceeds; exception

A.  The following property of a debtor is exempt from execution, attachment or sale on any process issued from any court:

1.  All money received by or payable to a surviving spouse or child on the life of a deceased spouse, parent or legal guardian, not exceeding twenty thousand dollars.

2.  The earnings of the minor child of a debtor or the proceeds of these earnings by reason of any liability of the debtor not contracted for the special benefit of the minor child.

3



FILED
JUN - 8 2021
ARIZONA SECRETARY OF STATE

3. All monies received by or payable to a person entitled to receive child support or spousal maintenance pursuant to a court order.

4. All money, proceeds or benefits of any kind to be paid in a lump sum or to be rendered on a periodic or installment basis to the insured or any beneficiary under any policy of health, accident or disability insurance or any similar plan or program of benefits in use by any employer, except for premiums payable on the policy or debt of the insured secured by a pledge, and except for collection of any debt or obligation for which the insured or beneficiary has been paid under the plan or policy and except for payment of amounts ordered for support of a person from proceeds and benefits furnished in lieu of earnings that would have been subject to that order and subject to any exemption applicable to earnings so replaced.

5. All money arising from any claim for the destruction of, or damage to, exempt property and all proceeds or benefits of any kind arising from any fire or other insurance on any property exempt under this article.

6. The cash surrender value of life insurance policies where for a continuous unexpired period of two years the policies have been owned by a debtor. The policy shall have named as beneficiary the debtor's surviving spouse, child, parent, brother or sister. The policy may have named as beneficiary any other family member who is a dependent, in the proportion that the policy names any such beneficiary, except that, subject to the statute of limitations, the amount of any premium that is recoverable or avoidable by a creditor pursuant to title 44, chapter 8, article 1, with interest thereon, is not exempt. The exemption provided by this paragraph does not apply to a claim for the payment of a debt of the insured or beneficiary that is secured by a pledge or assignment of the cash value of the insurance policy or the proceeds of the policy. For the purposes of this paragraph, "dependent" means a family member who is dependent on the insured debtor for not less than half support.

7. An annuity contract where for a continuous unexpired period of two years that contract has been owned by a debtor and has named as beneficiary the debtor, the debtor's surviving spouse, child, parent, brother or sister, or any other dependent family member, except that, subject to the statute of limitations, the amount of any premium, payment or deposit with respect to that contract is recoverable or avoidable by a creditor pursuant to title 44, chapter 8, article 1 is not exempt. The exemption provided by this paragraph does not apply to a claim for a payment of a debt of the annuitant or beneficiary that is secured by a pledge or assignment of the contract or its proceeds. For the purposes of this paragraph, "dependent" means a family member who is dependent on the debtor for not less than half support.

8. Any claim for damages recoverable by any person by reason of any levy on or sale under execution of that person's exempt personal property or by reason of the wrongful taking or detention of that property by any person, and the judgment recovered for damages.

9. A total of ~~three hundred dollars~~ $5,000 held in a single account in any one financial institution as defined by section 6-101. The property declared exempt by this paragraph is not exempt from normal service charges assessed against the account by the financial institution at which the account is carried. THE EXEMPTION PRESCRIBED IN THIS PARAGRAPH SHALL BE ADJUSTED ANNUALLY BEGINNING ON JANUARY 1, 2024 AND THEREAFTER ON JANUARY 1 OF EACH SUCCESSIVE YEAR BY THE INCREASE IN THE COST OF LIVING. THE INCREASE IN THE COST OF LIVING SHALL BE MEASURED BY THE PERCENTAGE INCREASE AS OF AUGUST OF THE IMMEDIATELY PRECEDING YEAR OVER THE LEVEL AS OF AUGUST OF THE PREVIOUS YEAR OF THE CONSUMER PRICE INDEX (ALL URBAN CONSUMERS, UNITED STATES CITY AVERAGE FOR ALL ITEMS) OR ITS SUCCESSOR INDEX AS PUBLISHED BY THE UNITED STATES DEPARTMENT OF LABOR, BUREAU OF LABOR STATISTICS, OR ITS SUCCESSOR AGENCY, WITH THE AMOUNT OF THE EXEMPTION ROUNDED UP TO THE NEAREST $100.

10. An interest in a college savings plan under section 529 of the internal revenue code of 1986, either as the owner or as the beneficiary. This does not include money contributed to the plan within two years before a debtor files for bankruptcy.

B. Any money or other assets payable to a participant in or beneficiary of, or any interest of any participant or beneficiary in, a retirement plan under section 401(a), 403(a), 403(b), 408, 408A or 409 or a deferred compensation plan under section 457 of the United States internal revenue code of 1986, as amended, whether the beneficiary's interest arises by inheritance, designation, appointment or otherwise, is exempt from all claims of creditors of the beneficiary or participant. This subsection does not apply to any of the following:

1. An alternate payee under a qualified domestic relations order, as defined in section 414(p) of the United States internal revenue code of 1986, as amended. The interest of any and all alternate payees is exempt from any and all claims of any creditor of the alternate payee.

4

FILED
JUN - 8 2021
ARIZONA SECRETARY OF STATE

2. Amounts contributed within one hundred twenty days before a debtor files for bankruptcy.

3. The assets of bankruptcy proceedings filed before July 1, 1987.

C. Any person eighteen years of age or over, married or single, who resides within this state and who does not exercise the homestead exemption under article 1 of this chapter may claim as a personal property homestead exempt from all process prepaid rent, including security deposits as provided in section 33-1321, subsection A, for the claimant's residence, not exceeding two thousand dollars.

D. This section does not exempt property from orders that are the result of a judgment for arrearages of child support or for a child support debt.

Sec. 6. Section 33-1131, Arizona Revised Statutes, is amended to read:

33-1131. Definition; wages; salary; compensation

A. For the purposes of this section, "disposable earnings" means that remaining portion of a debtor's wages, salary or compensation for his personal services, including bonuses and commissions, or otherwise, and includes payments pursuant to a pension or retirement program or deferred compensation plan, after deducting from such earnings those amounts required by law to be withheld.

B. Except as provided in subsection C, the maximum part of the disposable earnings of a debtor for any workweek ~~which~~ THAT is subject to process may not exceed ~~twenty-five per cent~~ TEN PERCENT of disposable earnings for that week or the amount by which disposable earnings for that week exceed ~~thirty~~ SIXTY times the APPLICABLE minimum hourly wage ~~prescribed by federal law~~ in effect at the time the earnings are payable, whichever is less. THE APPLICABLE MINIMUM HOURLY WAGE IS THE MINIMUM WAGE REQUIRED BY FEDERAL, STATE OR LOCAL LAW, WHICHEVER IS HIGHEST.

C. The exemptions provided in subsection B do not apply in the case of any order for the support of any person. In such case, one-half of the disposable earnings of a debtor for any pay period is exempt from process.

D. The exemptions provided in this section do not apply in the case of any order of any court of bankruptcy under chapter XIII of the federal bankruptcy act or any debt due for any state or federal tax.

Sec. 7. Section 44-1201, Arizona Revised Statutes, is amended to read:

44-1201. Rate of interest for loan or indebtedness; interest on judgments; definitions

A. Interest on any loan, indebtedness or other obligation shall be AS FOLLOWS:

1. THE MAXIMUM INTEREST RATE ON MEDICAL DEBT SHALL BE THE LESSER OF THE FOLLOWING:

(a) THE ANNUAL RATE EQUAL TO THE WEEKLY AVERAGE ONE-YEAR CONSTANT MATURITY TREASURY YIELD, AS PUBLISHED BY THE BOARD OF GOVERNORS OF THE FEDERAL RESERVE SYSTEM, FOR THE CALENDAR WEEK PRECEDING THE DATE WHEN THE CONSUMER WAS FIRST PROVIDED WITH A BILL, OR

(b) THREE PERCENT A YEAR.

THE MAXIMUM INTEREST RATE PROVIDED PURSUANT TO THIS PARAGRAPH ALSO APPLIES TO ANY JUDGMENTS ON MEDICAL DEBT.

2. FOR ANY LOAN, INDEBTEDNESS OR OBLIGATION OTHER THAN MEDICAL DEBT, INTEREST SHALL BE at the rate of ten per cent per annum, unless a different rate is contracted for in writing, in which event any rate of interest may be agreed to. Interest on any judgment, OTHER THAN A JUDGMENT ON MEDICAL DEBT, that is based on a written agreement evidencing a loan, indebtedness or obligation that bears a rate of interest not in excess of the maximum permitted by law shall be at the rate of interest provided in the agreement and shall be specified in the judgment.

B. Unless specifically provided for in statute or a different rate is contracted for in writing, interest on any judgment OTHER THAN A JUDGMENT ON MEDICAL DEBT shall be at the lesser of ten per cent per annum or at a rate per annum that is equal to one per cent plus the prime rate as published by the board of governors of the federal reserve system in statistical release H.15 or any publication that may supersede it on the date that the judgment is entered. The judgment shall state the applicable interest rate and it shall not change after it is entered.

5

F I L E D

JUN -8 2021

ARIZONA SECRETARY OF STATE

C. Interest on a judgment on a condemnation proceeding, including interest that is payable pursuant to section 12-1123, subsection B, shall be payable as follows:

1. If instituted by a city or town, at the rate prescribed by section 9-409.

2. If instituted by a county, at the rate prescribed by section 11-269.04.

3. If instituted by the department of transportation, at the rate prescribed by section 28-7101.

4. If instituted by a county flood control district, a power district or an agricultural improvement district, at the rate prescribed by section 48-3628.

D. A court shall not award either of the following:

1. Prejudgment interest for any unliquidated, future, punitive or exemplary damages that are found by the trier of fact.

2. Interest for any future, punitive or exemplary damages that are found by the trier of fact.

E. For the purposes of subsection D of this section, "future damages" means damages that will be incurred after the date of the judgment and includes the costs of any injunctive or equitable relief that will be provided after the date of the judgment.

F. If awarded, prejudgment interest shall be at the rate described in subsection A or B of this section.

G. FOR THE PURPOSES OF THIS SECTION:

1. "HEALTH CARE SERVICES" MEANS SERVICES PROVIDED AT OR BY ANY OF THE FOLLOWING:

(a) HEALTH CARE INSTITUTIONS AS DEFINED IN SECTION 36-401.

(b) PRIVATE OFFICES OR CLINICS OF HEALTH CARE PROVIDERS LICENSED UNDER TITLE 32, CHAPTERS 7, 11, 13, 15, 15.1, 16, 17, 18, 19, 19.1, 25, 28, 33, 34, or 35.

(c) AMBULANCES OR AMBULANCE SERVICES AS DEFINED IN SECTION 36-2201.

2. "MEDICAL DEBT" MEANS A LOAN, INDEBTEDNESS OR OTHER OBLIGATION ARISING DIRECTLY FROM THE RECEIPT OF HEALTH CARE SERVICES OR OF MEDICAL PRODUCTS OR DEVICES.

Sec. 8. Conflicts with federal law

This act shall not be interpreted or applied so as to create any power or duty in conflict with federal law.

Sec. 9. Severability

If a provision of this act or its application to any person or circumstance is held invalid, the invalidity does not affect other provisions or applications of the act that can be given effect without the invalid provision or application, and to this end the provisions of this act are severable.

Sec. 10. Saving clause

This act applies prospectively only. Accordingly, it does not affect rights and duties that matured before the effective date of this act, contracts entered into before the effective date of this act or the interest rate on judgments that are based on a written agreement entered into before the effective date of this act.

Sec. 11. Legal defense

The People of Arizona desire that this initiative, if approved by the voters, be defended if it is challenged in court. They therefore declare that the political committee registered to circulate petitions and campaign in support of the adoption of the initiative, or any one or more of its officers, has standing to defend this initiative on behalf of and as the agent of the People of Arizona in any legal action brought to challenge the validity of this initiative.

Sec. 12. Short title

This act may be cited as the "Predatory Debt Collection Protection Act."

FILED
JUN - 8 2021
ARIZONA SECRETARY OF STATE



**E  X  H  I  B  I  T    2**

# ARIZONA COURT OF APPEALS

| | |
|---|---|
| ARIZONA CREDITORS BAR ASSOCIATION INC., an Arizona corporation; PROTECT OUR ARIZONA PAC, an Arizona political action committee; ABSOLUTE RESOLUTIONS INVESTMENTS, LLC, an Arizona limited liability company; HAMEROFF LAW GROUP, P.C., an Arizona corporation; DESERT RIDGE COMMUNITY ASSOCIATION, an Arizona non-profit corporation; AUGUSTA RANCH COMMUNITY MASTER ASSOCIATION, an Arizona non-profit corporation; BAUHINIA, LLC, a South Dakota limited liability company; and CASH TIME TITLE LOANS, INC., an Arizona corporation, | No. 1 CA-CV-22-0765 <br><br> Maricopa County Superior Court No. CV2022-015921 <br><br><br> **Appellants' Opening Brief** |

                    Plaintiffs-Appellants,

v.

STATE OF ARIZONA,

                    Defendant-Appellee,


ARIZONANS FED UP WITH FAILING HEALTHCARE (HEALTHCARE RISING AZ), an Arizona political action committee,


                    Intervenor-
                    Defendant
                    Appellees.

Brett W. Johnson (#021527)
Benjamin W. Reeves (#025708)
Tracy A. Olson (#034616)
Ryan Hogan (#036169)
Charlene A. Warner (#037169)
SNELL & WILMER L.L.P.
One East Washington Street
Suite 2700
Phoenix, Arizona 85004-2202
Telephone: (602) 382-6000
bwjohnson@swlaw.com
breeves@swlaw.com
tolson@swlaw.com
rhogan@swlaw.com
cwarner@swlaw.com


*Attorneys for Plaintiffs/Appellants*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................1

STATEMENT OF FACTS AND THE CASE .................................4

    I.    PERTINENT FACTS................................................4

        A.    Prop 209 and Its Enactment. ...........................4

        B.    The Legal Landscape Surrounding Post-Judgment
              Enforcement Actions. ....................................6

        C.    Confusion Began Even Before Prop 209 Took Effect.............10

        D.    Plaintiffs' Fears Prove True: Inconsistent Application
              Begins......................................................15

    II.    PROCEDURAL HISTORY ...........................................17

STATEMENT OF THE ISSUES.................................................23

STANDARD OF REVIEW ......................................................23

ARGUMENT .....................................................................24

    I.    THIS COURT SHOULD ENTER AN ORDER DECLARING
        THAT PROP 209 DOES NOT APPLY TO CONTRACTUAL
        DEBT AT ALL. .....................................................25

    II.    THE SAVINGS CLAUSE IS VOID FOR VAGUENESS OR
        (AT A MINIMUM) UNENFORCEABLE AS
        UNINTELLIGIBLE. ................................................28

        A.    The Savings Clause Is Unconstitutionally Vague Because
              Debt-Collectors Cannot Determine When They Will Run
              Afoul of Its Requirements, Triggering Significant
              Exposure to FDCPA Liability................................28

        B.    The Proffered Defenses of the Savings Clause Highlight
               Just How Vague the Savings Clause Truly Is.........................36

            1.    Interpretations by Courts, Agencies, and Litigants
                   Compound Confusion....................................37

            2.    The Examples of Other Savings Clauses Relied on
                   by the Superior Court Use Different, Clearer
                   Language than Prop 209. ...............................41

i

> 3.    Defendants' Remaining Arguments Are Based on an Analysis Legislative Council Never Undertook and a Legal Standard that No Longer Controls. ............43

C.    For These Same Reasons, the Savings Clause Is Unenforceable as Unintelligible. .............................................45

D.    Without Prop 209's Savings Clause, the Remaining Provisions Cannot Survive.......................................................50

III.    PLAINTIFFS SATISFIED ALL REQUIREMENTS FOR AN INJUNCTION. ....................................................................................52

IV.    ALTERNATIVELY, DECLARATORY JUDGMENT IS APPROPRIATE. .................................................................................54

V.    REQUEST FOR COSTS AND ATTORNEYS' FEES. ....................57

CONCLUSION ......................................................................................58

Case 3:23-bk-06089-DPC   Doc 16   Filed 11/09/23   Entered 11/09/23 11:47:18   Desc
Main Document    Page 17 of 157

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams v. Comm'n on Appellate Court Appointments*,
227 Ariz. 128 (2011) ............................................................................................13

*Aranda v. Indus. Comm'n of Ariz.*,
198 Ariz. 467 (2000) ............................................................................................55

*Arnold v. Arizona Department of Health Services*,
160 Ariz. 593 (1989) ............................................................................................58

*Bennett Blum, M.D., Inc. v. Cowan*,
235 Ariz. 204 (App. 2014) .................................................................... 7, 11, 31

*City of Phoenix v. Yates*,
69 Ariz. 68 (1949) .................................................................. 13, 32, 43, 53

*Clark v. Cap. Credit & Collection Servs., Inc.*,
460 F.3d 1162 (9th Cir. 2006) ...............................................................................9

*Cohen v. State*,
121 Ariz. 6 (1978) ................................................................................................48

*Doe ex rel. Doe v. State*,
200 Ariz. 174 (2001) ............................................................................................13

*eBay Inc. v. MercExchange, L.L.C.*,
547 U.S. 388 (2006) .............................................................................................52

*Elrod v. Burns*,
427 U.S. 347 (1976) .............................................................................................52

*Fann v. State*,
251 Ariz. 425 (2021) ............................................................................................51

*Focal Point, Inc. v. U-Haul Co. of Ariz.*,
155 Ariz. 318 (App. 1986) ...................................................................................10

*Fuenning v. Superior Court*,
139 Ariz. 590 (1983) ............................................................................................50

*Gietz v. Webster*,
46 Ariz. 261 (1935) ..............................................................................................54

*Goldman v. Sahl*,
248 Ariz. 512 (App. 2020) ...................................................................................10

iii

*Guerrero v. Whitaker*,
   908 F.3d 541 (9th Cir. 2018) .............................................................................44

*Hill v. Colorado*,
   530 U.S. 703 (2000) ................................................................... 24, 29, 38

*Horner v. Benedetto*,
   847 F.2d 814 (Fed. Cir. 1988) .............................................................................41

*Jordan v. De George*,
   341 U.S. 223 (1951) .........................................................................................1

*Kaiser v. Cascade Cap., LLC*,
   989 F.3d 1127 (9th Cir. 2021) ...........................................................................9

*KPNX Broad. v. Superior Court In & For Maricopa Cnty.*,
   139 Ariz. 246 (1984) ..........................................................................................40

*Kresos v. White*,
   47 Ariz. 175 (1936) ............................................................................................55

*Lytle v. Doyle*,
   326 F.3d 463 (4th Cir. 2003) .............................................................................29

*McCullough v. Virginia*,
   172 U.S. 102 (1898) .................................................................... 7, 11, 31

*Melendres v. Arpaio*,
   695 F.3d 990 (9th Cir. 2012) .............................................................................53

*Muscat v. Creative Innervisions LLC*,
   244 Ariz 194 (App. 2017) ..................................................................................15

*Nelson v. Nat'l Aeronautics & Space Admin.*,
   530 F.3d 865 (9th Cir. 2008) .............................................................................52

*Passmore v. McCarver*,
   242 Ariz. 288 (App. 2017) .................................................................................15

*Planned Parenthood Arizona, Inc. v. Brnovich*,
   2 CA-CV 2022 0-116, 2022 WL 18015858 (Ariz. Ct. App. Dec. 30, 2022) 34, 35

*Planned Parenthood of Ind. & Ky., Inc. v. Marion Cnty. Prosecutor*,
   7 F.4th 594 (7th Cir. 2021) ........................................................... 29, 33

*Protect Our Ariz. v. Fontes*,
   522 P.3d 678 (Ariz. 2023) ............................................................ 25, 26, 51, 57

*Randolph v. Groscost*,
   195 Ariz. 423 (1999) ..........................................................................................51

iv

*Regan v. First Nat'l Bank*,
55 Ariz. 320 (1940) ........................................................................................ 15

*Seila Law LLC v. Consumer Fin. Prot. Bureau*,
140 S. Ct. 2183 (2020) .................................................................................... 50

*Sessions v. Dimaya*,
138 S. Ct. 1204 (2018) ................................................................. 24, 29, 38, 44

*Shell Oil Co. v. United States*,
7 F.4th 1165 (Fed. Cir. 2021) ......................................................................... 41

*Shoen v. Shoen*,
167 Ariz. 58 (App. 1990) ................................................................................ 52

*State ex rel. Brnovich v. City of Phoenix*,
249 Ariz. 239 (2020) ................................................................................. passim

*State ex rel. Brnovich v. City of Tucson*,
242 Ariz. 588 (2017) ................................................................................. 45, 46

*State ex rel. Brnovich v. City of Tucson*,
251 Ariz. 45 (2021) ......................................................................................... 49

*State ex rel. Woods v. Block*,
189 Ariz. 269 (1997) ................................................................................. 30, 38

*State v. Estrada*,
201 Ariz. 247 (2001) ....................................................................................... 55

*State v. Harrod*,
218 Ariz. 268 (2008) ....................................................................................... 23

*State v. Jones*,
248 Ariz. 499 (App. 2020) .............................................................................. 26

*State v. Mutschler*,
204 Ariz. 520 (App. 2003) .............................................................................. 20

*State v. Pandeli*,
215 Ariz. 514 (2007) ....................................................................................... 50

*Sw. Eng'g Co. v. Ernst*,
79 Ariz. 403 (1955) ......................................................................................... 29

*Tektel, Inc. v. United States*,
121 Fed. Cl. 680 (2015) .................................................................................. 41

*Tillotson v. Frohmiller*,
34 Ariz. 394 (1928) ......................................................................................... 30

*TP Racing, L.L.L.P. v. Simms*,
   232 Ariz. 489 (App. 2013) ...................................................................23

*United States v. Davis*,
   139 S. Ct. 2319 (2019) ....................................................... 28, 29, 38

*United States v. Williams*,
   553 U.S. 285 (2008) .............................................................................29

*Vill. of Hoffman Estates v. Flipside, Hoffman Estates*,
   455 U.S. 489 (1982) .............................................................................33

*Whatley v. Zatecky*,
   833 F.3d 762 (7th Cir. 2016) ...............................................................33

**Statutes**

15 U.S.C. § 1692e ........................................................................................9

15 U.S.C. § 1692k ............................................................................. 10, 28

A.R.S. § 12-120 ...........................................................................................27

A.R.S. § 12-1572 .................................................................................. 7, 12

A.R.S. § 12-1574 .........................................................................................12

A.R.S. § 12-1579 .........................................................................................12

A.R.S. § 12-1584 .........................................................................................12

A.R.S. § 12-1593 .........................................................................................10

A.R.S. § 12-1598.03 ............................................................................. 7, 12

A.R.S. § 12-1598.04 ....................................................................................12

A.R.S. § 12-1598.06 ....................................................................................12

A.R.S. § 12-1598.10 ...................................................................................4, 7

A.R.S. § 12-1598.11 ....................................................................................12

A.R.S. § 12-1598.16 ........................................................................... 15, 49

A.R.S. § 12-1831 .........................................................................................27

A.R.S. § 12-2030 .........................................................................................58

A.R.S. § 12-2101 .........................................................................................22

A.R.S. § 12-341 ...........................................................................................58

A.R.S. § 13-3603 ................................................................................. 34, 35

A.R.S. § 1598.13 ...................................................................................10

A.R.S. § 19-111.01 .............................................................................43, 44

A.R.S. § 41-194.01 ...............................................................................46

A.R.S. § 44-1201 .............................................................................5, 7, 26

Ariz. Const. art. II, § 25 .......................................................................54

Ariz. Const. art. IV, pt. 1, § 1(6) .........................................................30

U.S. Const. art. I, § 10 .........................................................................54

**Rules**

Ariz. E.R. 1.3(1) ...................................................................................54

Ariz. R. Evid. 201(b) ...........................................................................15

Ariz. Sup. Ct. R. 111(c)(1)(C) ............................................................15

**Other Authorities**

Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 226 (2012)......................................................... 5, 46, 47

# INTRODUCTION

When laws require individuals to conform to a standard of conduct, the due process clauses of the State and Federal Constitutions command that they be written with sufficient clarity to provide ordinary citizens fair notice of what is prohibited so that all litigants will be treated equally by the judiciary. This clarity is especially needed when judges and court administrators provide conflicting guidance to litigants and their counsel. Not only does the absence of requisite clarity fail to give individuals an opportunity to conform their behavior to the law, but it also transforms judges charged with applying or enforcing the law into *ad hoc* lawmakers empowered to "condem[n] all that [they] personally disapprove and for no better reason than [they] disapprove it." *Jordan v. De George*, 341 U.S. 223, 242 (1951) (Jackson, J., dissenting). Put simply, people cannot be required to play a guessing game about what the law requires, especially when so many could have judgments go unpaid, have exempt property wrongfully withheld, or face strict liability penalties for guessing incorrectly.

Yet a guessing game is exactly what Proposition 209's ("Prop 209") Savings Clause creates. Prop 209 advertised that its changes—capping interest rates for medical debts, increasing the amount four statutory exemptions available to debtors, and limiting the amount of disposable earnings subject to garnishment—would apply "prospectively only." But the plain language of its Savings Clause muddles that

1

intended clarity. By instructing that Prop 209 does not apply to "rights and duties that matured" or "contracts entered into" before Prop 209's effective date, the Savings Clause provides conflicting answers to the same question: when does Prop 209 apply to post-judgment enforcement actions? One subpart tells the reader that the underlying contract date is controlling and to only apply Prop 209 to debt that arises out of contracts entered into after December 5, 2022 (the "Effective Date"). Yet, another subpart tells the reader that some undefined point in the post-judgment enforcement process (such as the date the money judgment was issued, the date the writ of garnishment is entered, or order of continuing liens is filed) is controlling, yielding vastly different answers to the above question.

The Savings Clause's conflicting directions force judgment creditors, garnishees, and judgment debtors in the many judgment enforcement actions currently underway across Arizona to guess which part of the Savings Clause to ignore. This is not a hollow prediction. Since the superior court issued its Verdict, courts across Arizona have applied the Savings Clause in different ways. Even worse, these approaches do not necessarily command consensus, meaning all litigants are left to speculate how this new law will apply to their case. The resulting *ad hoc*, disjointed patchwork is untenable.

The consequences for guessing wrong are dire. Under the Fair Debt Collection Practices Act ("FDCPA"), any debt collector who incorrectly attempts to collect on

2

consumer debt under preexisting law believing the Savings Clause affords protection faces strict-liability civil penalties. With those penalties on the line, the conflict inherent within the Savings Clause cannot be enforced, under the void-for-vagueness and unintelligibility doctrines.

Prop 209 cannot be saved by simply severing the Savings Clause. As declared in the text of the law itself, and as presented to voters and acknowledged by our Supreme Court, a core purpose of Prop 209 was that it applies *prospectively only*. This purpose is impossible if the Savings Clause were removed. It is simply a bridge too far to think that the voters approved a law applicable to existing contracts, when the approved law expressly included language that intended to avoid that result.

The harms to the consistent administration of justice, needless confusion of litigants, inconsistent results, loss of reputation and goodwill, and potential professional liability justify enjoining Prop 209. Meanwhile, on the other side of the scale, next to no harm will follow from enjoining Prop 209's application. Namely, if enjoined, the electorate can enact a constitutionally compliant law that truly applies "prospectively only," if it so chooses.

The Savings Clause does not save Prop 209 but sinks it as a matter of law. It foists hopeless confusion on everyone involved in post-judgment enforcement proceedings, exposes debt collectors to strict-liability penalties, and invites courts to develop *ad hoc* interpretations. The Court can and should take this opportunity to

provide clarity. Inconsistent applications of Prop 209 are already occurring. But, because the individual pending cases involve low monetary amounts, the misapplication of Prop 209 will likely evade appellate review. Thus, Plaintiffs respectfully request that this Court reverse the superior court's denial of a preliminary and permanent injunction and remand for entry of an order enjoining Prop 209 and declaring it unconstitutional.

## STATEMENT OF FACTS AND THE CASE

### I.     PERTINENT FACTS

#### A.     Prop 209 and Its Enactment.

Arizonans Fed up with Failing Healthcare (Healthcare Rising AZ) ("Intervenor") filed its initial initiative application with the Secretary of State on April 22, 2021. Intervenor's initiative, titled "Predatory Debt Collection Protection Act," was assigned serial number I-03-2022. APP-0274–81. Initially, the initiative did not attempt to directly change garnishments. *Id.* But upon suggestion from Legislative Council, Intervenor revised the initiative to amend the statute governing the amount of weekly disposable earnings subject to garnishment. *See* APP-0267–73, -0331–46. The amended initiative was assigned serial number I-05-2022 and became known as Prop 209. APP-0267–73. Prop 209 asked voters to approve various amendments to statutory provisions related to debt collection. A.R.S. §§ 12-

4

1598.10, 33-1101, 33-1123, 33-1125, 33-1126, 33-1131 and 44-1201.[1] Prop 209's 100-word summary promised potential petition signers that the law "[d]oes not affect existing contracts." APP-0267.

Similarly, when Prop 209 was placed on the ballot, Legislative Council explained to voters that "Proposition 209 would only apply to contracts and agreements entered into on or after the effective date of this measure." APP-0304. Prop 209's Savings Clause likewise promised voters that the law would apply "prospectively only." *Id.* Prop 209 was certified on December 5, 2022. APP-0347.

Despite the promise made to voters, the Savings Clause lists three—and only three[2]—situations where Prop 209 does not apply: "[1] rights and duties that matured before the effective date of this act, [2] contracts entered into before the effective date of this act or [3] the interest rate on judgments that are based on a written

---

[1] Unless otherwise noted, all citations are to the provisions of the Arizona Revised Statutes amended by Prop 209.

[2] At times, the superior court appeared to believe that the Savings Clause's first sentence operated as its own savings clause, so that the second sentence operated as a non-exclusive list. *See, e.g.*, APP-0092 at 22:8–15; APP-0222–24 at 13:22–25, 14:22–15:1. But there is no indication that the second sentence of the Savings Clause is exemplary, as opposed to exhaustive, meaning that these are the only three ways in which the Savings Clause does not apply retroactively. *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 226 (2012) ("When a definitional section says that a word 'includes' certain things, that is usually taken to mean that it may include other things as well . . . When, by contrast, a definitional section says that a word 'means' something, the clear import is that this is its *only* meaning.").

5

agreement entered into before the effective date of this act." APP-0273. Two of those situations rest on the date contractual agreements are entered into; the third ambiguously states that Prop 209 does not apply to "rights and duties that matured" before the Effective Date.

The Savings Clause's purpose seems superficially clear: limit Prop 209's application so that it is not retroactive. But the text provides hopelessly conflicting guidance on how Prop 209 actually applies in post-judgment enforcement contexts. Even those with extensive familiarity in this area cannot determine which part of the Saving Clause governs post-judgment enforcement actions. Thus, the Savings Clause has (and will continue to) cause widespread confusion among courts and litigants.

## B. The Legal Landscape Surrounding Post-Judgment Enforcement Actions.

The laws amended by Prop 209 impact many money judgments entered in Arizona and efforts to collect on those judgments. The statutory framework governing this process is important to understand Prop 209's context.

Collection cases typically begin with someone seeking redress for another's failure to pay. APP-0041 ¶ 9. These lawsuits are numerous, and even a smaller size collection law firm will mail hundreds of letters, file hundreds of lawsuits, and process hundreds of applications for default judgment in a given month. APP-0041–42 ¶¶ 10–11. In fact, just this last fiscal year, there were over 14,000 debt-collection

6

cases filed in the superior court alone. APP-0403. Prop 209 increased the exemptions available to judgment debtors, which alters the rights, duties, and expectations of those involved in post-judgment enforcement actions. *See* A.R.S. §§ 12-1598.10, 33-1101, 33-1123, 33-1125, 33-1126, 33-1131 and 44-1201.

After obtaining a final money judgment, a plaintiff has the right to pursue a post-judgment remedy such as garnishment. Marilee Miller Clark, *Arizona Civil Remedies* § 3.13.1.3; *see also McCullough v. Virginia*, 172 U.S. 102, 123 (1898). Garnishments are legal proceedings where a garnishee (a third party who holds property belonging to the debtor) is ordered to hold a judgment debtor's property and, if appropriate, turn it over to the judgment creditor in satisfaction of the underlying judgment. These are purely statutory proceedings, treated in all respects as independent from the underlying lawsuit. *Bennett Blum, M.D., Inc. v. Cowan*, 235 Ariz. 204, 207 ¶ 13 (App. 2014).

Garnishment actions begin with an application for a writ of garnishment that includes statements about the amount of the judgment and the belief that a garnishee is holding nonexempt assets. A.R.S. §§ 12-1572, 12-1598.03. A writ is then issued, and the judgment creditor must serve the writ and other required documents on the garnishee. *Id.* §§ 12-1574 (garnishment of monies or property), 12-1598.04 (garnishment of earnings). After service, the garnishee must hold the nonexempt assets—monies, property, or earnings—until the garnishment ends. *Id.* §§ 12-1578

7

(requiring a garnishee to keep nonexempt monies or property out of the judgment debtor's control), 12-1598.05 (creating an initial lien on the judgment debtor's nonexempt earnings).

Shortly after being served, the garnishee must answer the writ. *Id.* §§ 12-1579 (information that must be included in answer for garnishments of monies or property), 12-1598.08 (same for garnishments of earnings), 12-1578.01 (time limit for garnishee's answer), 12-1598.06 (same for garnishments of earnings). Each party may then object, and the court must hold an expedited hearing to resolve any objection. *Id.* §§ 12-1580, 12-1598.07. If no one objects and the garnishee's answer shows the garnishee is holding nonexempt assets, then the court will enter: (a) a judgment against garnishee; (b) an order of continuing lien; or (c) an order directing the garnishee to hold the personal property. *See id.* §§ 12-1584 (judgments against garnishee), 12-1585 (orders regarding personal property), 12-1598.10 (orders of continuing lien).

From there, garnishees must turn over some or all of the property in their possession to the judgment creditor. With an order of continuing lien, for example, the garnishee must continue to complete nonexempt earnings statements for each pay period and turn over all nonexempt earnings to the judgment creditor. *See id.* § 12-1598.11 (earnings garnishment); *see also* §§ 12-1584 (monies garnishment), 12-1585 (personal property garnishment).

8

This process, from filing of an application for writ of garnishment to the entry of the order or judgment, takes on average 75 days (although some continuing liens remain in place for months or years), meaning thousands of garnishment actions were in process on the Effective Date and many more will be filed in the future that are based on preexisting contracts or money judgments. *See* APP-0403. Many more cases had active orders of continuing lien in place, requiring garnishees to identify and apply the applicable exemptions for each pay period.

If the judgment creditor, or its attorney, are debt collectors, then garnishment actions must comply with the FDCPA. The FDCPA is a federal law broadly prohibiting debt collectors from making false representations about "the character, amount, or legal status of any debt," 15 U.S.C. § 1692e(2)(A), threatening "to take any action that cannot legally be taken," *id.* § 1692e(5), or attempting to collect any amount "unless such amount is expressly authorized by the agreement creating the debt or permitted by law." *Id.* § 1692f(1). Debt collectors, including attorneys representing debt collectors, face strict liability for violating any of the FDCPA's prohibitions. *Clark v. Cap. Credit & Collection Servs., Inc.*, 460 F.3d 1162, 1175 (9th Cir. 2006). Mere "litigation conduct . . . without a violation of the rules of civil procedure, let alone a sanctionable violation of those rules," can cause a debt collector to run afoul of the FDCPA. *Kaiser v. Cascade Cap., LLC*, 989 F.3d 1127, 1136 (9th Cir. 2021). Notably, the FDCPA also authorizes class actions, with severe

9

additional statutory penalties. 15 U.S.C. § 1692k(a)(2)(B). This creates an acute need for clarity in the state law governing post-judgment enforcement actions and exempt property; without clarity, debt collectors can easily face liability stretching into the hundreds of thousands of dollars.[3]

### C. Confusion Began Even Before Prop 209 Took Effect.

Prop 209 declares that it "does not affect": "[1] rights and duties that matured before the effective date of this act, [2] contracts entered into before the effective date of this act or [3] the interest rate on judgments that are based on a written agreement." APP-0273. Confusingly, the Saving Clause's first and second subparts provide different instructions regarding when and how Prop 209 applies to post-judgment enforcement actions.

Reading the second subpart of the Savings Clause in isolation, an ordinary person would understand that Prop 209 does not apply to any contract entered into before the Effective Date. An ordinary person would likewise understand that Prop 209 also does not apply to post-judgment enforcement actions based on debts related to those contracts. After all, a contract is of little value without a viable enforcement

---

[3] The law may impose other penalties too. For instance, garnishees face sanctions under A.R.S. §§ 12-1593 or -1598.13. And if a garnishee holds exempt property from the judgment debtor, the garnishee may be liable for abuse of process or conversion. *See Goldman v. Sahl*, 248 Ariz. 512, 522 ¶ 27 (App. 2020) (abuse of process); *Focal Point, Inc. v. U-Haul Co. of Ariz.*, 155 Ariz. 318, 319–20 (App. 1986) (conversion).

mechanism; the two are part and parcel. The superior court and Intervenor actually appeared to understand the second subpart of the Savings Clause that way. APP-0093 at 23:11–24; APP-0234 at 25:7–13.

Under this logic, it is easy to ignore the rest of the Savings Clause and assume that the second subpart of the Savings Clause applies to all post-judgment enforcement actions involving contracts antecedent to the Effective Date. When post-judgment enforcement actions are placed in appropriate context, however, the first subpart of the Savings Clause (related to matured "rights and duties") is also applicable to post-judgment enforcement actions. If that subpart applies, then Prop 209 affects a different swath of cases.

Generally, the right to collect a money judgment vests upon the entry of that judgment. *McCullough*, 172 U.S. at 123. But garnishments are viewed as independent from the underlying lawsuit. *Bennett Blum, M.D.*, 235 Ariz. at 207 ¶ 13. So, under the first subpart of the Savings Clause, the right to collect on a contractual debt—or to garnish at a particular rate in a post-judgment enforcement action—is separate and distinct from the debt's contract date. In other words, the contract's date may be irrelevant under the first subpart.

Compounding the problem, the standard "rights and duties that matured before" the Effective Date is ambiguous. This phrase has no settled legal meaning in the context of post-judgment enforcement actions and Prop 209 does not provide

11

one. During garnishment proceedings, myriad potential points could mark when rights or duties become mature:

- When the underlying money judgment is entered;

- When the garnishment application is filed (A.R.S. §§ 12-1572, 12-1598.03);

- When the writ of garnishment is issued (A.R.S. §§ 12-1574, 12-1598.04);

- When the writ of garnishment is served (A.R.S. §§ 12-1574, 12-1598.04);

- When the garnishee answers the writ (A.R.S. §§ 12-1579, 12-1598.08, 12-1578.01, 12-1598.06);

- When the judgment against the garnishee or order of continuing lien is entered (A.R.S. §§ 12-1584, 12-1585, 12-1598.10);

- When each pay periods' nonexempt earnings statements are calculated (A.R.S. § 12-1598.11); or

- Some other undetermined point.

The many stages of garnishment proceedings and sheer number of garnishment proceedings underway across the state, APP-0403, ratchet up the stakes for debt collectors and garnishees trying to interpret and apply the Savings Clause. Each possible answer increases the chances they might guess incorrectly.

12

When the first subpart and second subpart of the Savings Clause are read together, and they must be read together, they provide different answers to the same question. *See Doe ex rel. Doe v. State*, 200 Ariz. 174, 178 ¶ 12 (2001) ("[Courts] read statutes as a whole and seek to give meaningful effect to all of their provisions."). The differing answers put those governed by the law, and those charged with applying it, in the impossible position of choosing which part of the Savings Clause to ignore. *See Adams v. Comm'n on Appellate Court Appointments*, 227 Ariz. 128, 135 ¶ 34 (2011) ("[I]t is a fundamental principle of statutory construction (and, indeed, of language itself) that the meaning of a word cannot be determined in isolation, but must be drawn from the context in which it is used." (internal quotations omitted)); *see also City of Phoenix v. Yates*, 69 Ariz. 68, 72 (1949) ("Each word, phrase, and sentence must be given meaning so that no part will be [void], inert, redundant, or trivial.").

Unsurprisingly, the ordinary people who will need to interpret and apply Prop 209 every day are hopelessly confused as to when and how it applies. Shortly before the Effective Date, one justice of the peace advised a working group tasked with updating statutorily required self-service forms that, based on their reading of the Savings Clause, he and other judicial officers believed that Prop 209 would apply to any garnishment actions filed after the Effective Date. APP-0395–99. Another justice of the peace stated that under his reading of the Savings Clause, Prop 209

13

would not apply to a garnishment action if the underlying judgment or garnishment action predated the Effective Date. APP-0400–01. These statements exemplify the seriousness of the Savings Clause's flaws and portended the inconsistent application that has followed.

Worse, the Administrative Office of the Courts ("AOC") has apparently endorsed the patchwork guessing game approach. AOC published a "Proposition 209 Information Sheet" on its website on December 1, 2022, informing litigants that they would be subject to non-uniform application of Prop 209:

> The proposition was **unclear** on when the changes to the garnishment rates would take effect, but if a debtor was being garnished on December 5, 2022, the previous rates would be continued. If a Writ of Garnishment is filed on or after December 5, 2022, **most courts will likely impose the new lower rates; other courts may impose the higher garnishment rates** for contracts entered into before December 5, 2022.
>
> A debtor can file an objection to a writ of garnishment and ask for the lowest garnishment rate. If the creditor does not agree to lower the rate, the debtor can present evidence of financial hardship at a court hearing to ask the court to lower the rate.

APP-0348–51; *see also* APP-0035–36 ¶ 22. A few days later, the "guidance" changed and became more troubling, warning litigants that the version of the law applicable to their case would turn entirely on who hears it:

> If a garnishment was in place prior to December 5, 2022, the previous rates of garnishment would be continued. If a Writ of Garnishment is filed on or after December 5, 2022, **a judicial officer may impose the new lower rates based on their reading of Proposition 209; another judicial officer may impose the higher garnishment rates for contracts entered into before December 5, 2022, based on their interpretation.**
>
> A debtor can file an objection to a writ of garnishment and ask for the lowest garnishment rate.

14

APP-0352–53; *see also* APP-0036 ¶ 23. On December 8, 2022, AOC abandoned any attempt to advise how the Savings Clause applies. APP-0354–55. Not only are these interpretations the antithesis of uniform application of law, but also AOC's demonstrated confusion is especially problematic here because the judiciary is charged with creating the forms used in garnishments, and litigants must use those or substantially similar forms. *See* A.R.S. § 12-1598.16.

### D. Plaintiffs' Fears Prove True: Inconsistent Application Begins.

While the superior court minimized Plaintiffs' concerns over inconsistent application of Prop 209, those concerns have already come to pass. Courts across Arizona have interpreted the Savings Clause inconsistently, and Prop 209 is impacting similarly-situated people differently. For example, several Maricopa County justice courts appear to be following a "bench best practices" memo and applying Prop 209 to any case where the writ of garnishment is filed on or after December 5, 2022. *See, e.g.*, APP-0412–20.[4] In other words, these courts appear to

---

[4] It is appropriate for this court to take judicial notice of these lower court documents at this stage of the proceeding. Ariz. R. Evid. 201(b) (a court "may judicially notice a fact that is not subject to reasonable dispute . . ."); *id.* at 201(d) (Judicial notice is appropriate "at any stage of the proceeding."); *Regan v. First Nat'l Bank*, 55 Ariz. 320, 327 (1940) (taking "judicial notice of other actions involving similar parties and issues and of the pleadings therein"); *Muscat v. Creative Innervisions LLC*, 244 Ariz. 194, 196 ¶ 5 n.2 (App. 2017) (taking judicial notice of a minute entry in a related case that was "filed along with [the appellant's] opening brief."); *Passmore v. McCarver*, 242 Ariz. 288, 290 n.1 (App. 2017) (taking judicial notice of orders not included in the record on appeal); *cf.* Ariz. Sup. Ct. R. 111(c)(1)(C) (permitting

15

focus on the Saving Clause's first subpart ("rights and duties that matured") without regard to the underlying contract date. *Id.* But the Maricopa County superior courts have applied Prop 209 differently. That court has declined to apply Prop 209's new protections in cases where the "garnishment is predicated . . . []on a contract/agreement entered into before December 5, 2022." APP-0421–0434. Thus, Maricopa County superior courts appear to be focusing on the Saving Clause's second subpart ("contracts entered into before the effective date of this act") without regard to the date garnishment proceedings began. *See id.*

Still other justice and superior courts in Pima, Yuma, Maricopa, and Pinal Counties have—without explanation—declined to apply Prop 209 even where the writ of garnishment was filed on or after December 5, 2022, leaving litigants to speculate on the reasons supporting this conclusion. APP-00435–73. Finally, at least one justice court in Maricopa County has applied Prop 209 to a case where the writ of garnishment was filed before December 5, 2022, evidently deciding that Prop 209 is triggered when the judgment creditor applies for or amends an order of continuing lien. APP-0474–78.

---

citation to state court memorandum decisions issued after January 1, 2015 for persuasive value).

While the superior court discounted Plaintiffs' concerns that the Savings Clause would "caus[e] confusion and chaos," APP-0140, the sampling of orders cited above defied the superior court's prediction. Prop 209 is being applied differently across Arizona, based on different analysis, and sometimes without explanation. This leaves litigants guessing and groping in the dark about when how Prop 209 applies going forward. The Savings Clause deprives litigants of the fair notice guaranteed by the Constitution.

## II. <u>PROCEDURAL HISTORY</u>

On December 5, 2022, Plaintiffs filed their Verified Special Action Complaint, requesting a declaration that Prop 209 is unconstitutionally void for vagueness or unenforceable as unintelligible, and an order permanently enjoining the unconstitutional law. APP-0028 ¶¶ A, B. As an alternative, the Complaint also sought a declaration that Prop 209: (a) does not apply to contracts entered into before the Effective Date; (b) does not apply to post-judgment enforcement actions occurring after the Effective Date where the underlying contracts were entered into before the Effective Date, regardless of when the underlying judgment was entered; and (c) does not apply to non-contract judgments where the underlying harm accrued

17

before the Effective Date; but (d) does apply to both contracts entered into and non-contract judgments entered after the Effective Date.[5] APP-0028–29 ¶ D.1–4.

A concurrently filed Application for Order to Show Cause and a Motion for Temporary Restraining Order ("TRO") and Preliminary Injunctive Relief, requested that Prop 209 be enjoined in its entirety. APP-0052–70. At a hearing held on December 7, 2022, the superior court granted Intervenor's unopposed motion to intervene. APP-0076 at 6:5–11.

During that hearing, the superior court noted that Prop 209 had created significant confusion in the field. APP-0105–06 at 35:7–20, 36:7–13. It also acknowledged the confusion and attendant hardship supported entry of a TRO. *Id.* Intervenor admitted that as "to some facts, [the Savings Clause is] going to be interpreted differently." APP-0092–93 at 22:25–23:1. Accordingly, the superior court found that (1) Prop 209 is causing "a lot of confusion"; and (2) balancing the hardships, a TRO adopting Plaintiffs' requested declaratory relief would "alleviate some of that confusion" until a ruling on the merits could be issued. APP-0105 at 35:7–20. The superior court's TRO provided parties in debt-collection proceedings the clarity they desperately needed, ordering Prop 209:

---

[5] Plaintiffs also requested that the declaration state Prop 209 requires a bifurcated application for completing the mandatory documents for post-judgment enforcement actions depending on their relation to the Effective Date. APP-0028–29 ¶ D.5.

a.   Does not apply to contracts entered into before December 5, 2022;

b.   Does not apply to post-judgment enforcement actions occurring after December 5, 2022 where the underlying contracts were entered into before December 5, 2022, regardless of when the underlying judgment was entered;

c.   Does not apply to non-contract judgments where the underlying harm accrued before December 5, 2022

d.   Does apply to both contracts entered into, and non-contract judgments entered after, December 5, 2022; and

e.   A bifurcated application for completing the mandatory documents must be implemented for post-judgment enforcement actions depending on their relation to December 5, 2022.

APP-0106 at 36:20–23; *see also* APP-0009 ¶ 10. Intervenor did not dispute that paragraphs (a), (b), or (d) of the TRO were consistent with its reading of the Savings Clause. APP-0093 at 23:9–24; APP-0095 at 25:7–17.

The superior court set an expedited briefing schedule and preliminary injunction hearing consolidated with a trial on the merits for December 16, 2022. APP-0103–05 at 33:15–35:3. Later, Intervenor and Defendant State of Arizona urged the court to dismiss Plaintiffs' claims as non-justiciable. APP-0118–22, -0131–33, -0136–47. While trying to defend the constitutionality of the Savings

19

Clause, Intervenor myopically focused solely on the meaning of the first subpart of the Savings Clause. APP-0122–31.

On December 22, 2022, the superior court rendered its verdict, denying Plaintiffs' requested relief. APP-0411. The court denied the motions to dismiss on non-justiciability grounds. APP-0408. The court correctly observed that, Plaintiffs had standing based on their well-pled allegations that "the 'terms within [Prop 209] are subject to varying interpretations and/or meanings' and that Prop 209 'does not reasonably define exactly what conduct is prohibited.'" (*Id.* (alteration in original) (quoting *State v. Mutschler*, 204 Ariz. 520, 523 ¶ 5 (App. 2003))).

On the merits, the superior court misconstrued and artificially narrowed Plaintiffs' challenge as relating to only the ambiguity of the first subpart of the Savings Clause ("rights and duties that matured"). APP-0409. While the first subpart is ambiguous and confusing on its own, that is only part of Prop 209's shortcomings. Instead, Plaintiffs' claims are primarily premised on the conflict *between* the Saving Clause's first and second subparts: both subparts can be reasonably read to apply to post-judgment enforcement actions but provide *different* answers to the same question of whether Prop 209 applies. *See* APP-0059–60, -0157–58; *see also* APP-0018–19. The superior court, Intervenor, and Defendant improperly focused on only one subpart of the Savings Clause and never addressed this clear inherent conflict.

After excluding most of Plaintiffs' argument, the superior court then held the Savings Clause was not unconstitutionally vague, relying on differently worded savings clauses in other enactments that have also used the phrase "rights and duties that matured." APP-0409–10. Unfortunately, the superior court overlooked that the "comparable" savings clauses were not good comparisons to Prop 209's Saving Clause at all. Namely, those savings clauses explicitly stated that the new law would not apply to writs of garnishment issued before the effective date of those laws or to "proceedings that were begun before the effective date of" those laws—language conspicuously absent from the Savings Clause. *Id.* (emphasis omitted). Accordingly, theses clauses lacked the internal inconsistency that dooms the present Savings Clause. Despite the supposed clarity of the phrase "rights and duties that matured," neither the court nor the parties have been able to identify when garnishment "rights" actually become "mature." *See id.*

Acknowledging confusion surrounding Prop 209, the superior court nonetheless reasoned that "thought" and "hard work" of those involved in judgment enforcement actions would resolve that confusion. APP-0410. By refusing to act, the court simply allowed the harms flowing from the Savings Clause to proceed unabated toward disaster and, as expected, variable judicial opinions throughout Arizona.

On Plaintiffs' claim that Prop 209 is unenforceable as unintelligible, the superior court summarily concluded that the law was sufficiently complete and intelligible. *Id.* But the superior court declined to identify when Prop 209 applies to garnishment actions and did not explain how other courts should handle cases where a debt collector innocently, but mistakenly, attempts to collect on a debt under preexisting law.

The superior court also declined to issue the declaratory relief Plaintiffs sought or preserve the TRO. *Id.* Despite the parties' substantial agreement on the terms of the TRO, the superior court reasoned that, "[i]n essence," Plaintiffs asked it to re-write the statute. *Id.*

Finally, the superior court did not address the other injunctive relief factors.

The superior court's verdict was a Rule 54(c) judgment denying Plaintiffs' motion. APP-0411. Plaintiffs timely appealed. Electronic Index of Record ("ER") No. 30. This Court has jurisdiction under A.R.S. § 12-2101(A)(1) and (5)(b).

# STATEMENT OF THE ISSUES

The overarching issue raised by Plaintiffs' appeal is whether the superior court erred by denying Plaintiffs' request for declaratory and injunctive relief against Prop 209's application. Subsumed within this issue are the following constitutional issues:

1. Does Prop 209's Savings Clause violate constitutionally required due process by providing inherently conflicting and vague guidance as to when and how it applies to the many thousands of post-judgment enforcement actions already underway and, if so, would rational voters have adopted Prop 209 without the Savings Clause?

2. Is Prop 209's Savings Clause so incomplete as to be unintelligible and therefore unenforceable under the doctrine articulated in *State ex rel. Brnovich v. City of Phoenix*, 249 Ariz. 239, 247–48 ¶ 35 (2020)?

# STANDARD OF REVIEW

"All legal and constitutional questions are reviewed de novo." *State v. Harrod*, 218 Ariz. 268, 279 ¶ 38 (2008). Similarly, this Court reviews the denial of a preliminary and permanent injunction for abuse of discretion, which "exists if the superior court applied the incorrect substantive law or . . . injunction standard, [or] based its decision on an erroneous material fact . . ." *TP Racing, L.L.L.P. v. Simms*, 232 Ariz. 489, 492 ¶ 8 (App. 2013).

23

## <u>ARGUMENT</u>

Prop 209's Savings Clause violates the Arizona and U.S. Constitutions. It fails to "provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits," and instead invites "arbitrary and discriminatory enforcement." *Hill v. Colorado*, 530 U.S. 703, 732 (2000). Specifically, the Savings Clause's conflicting language forces people to guess when Prop 209 applies to post-judgment enforcement actions and invites courts across the state to develop their own divergent interpretations. Considering the severe consequences of erroneously applying Prop 209, due process requires more. *See Sessions v. Dimaya*, 138 S. Ct. 1204, 1229 (2018) (Gorsuch, J., concurring) (explaining that the severity of today's civil penalties warrants stringent vagueness review). Even if it is not unconstitutionally vague, however, Prop 209 must still be declared unenforceable for being so incomplete as to be unintelligible. *City of Phoenix*, 249 Ariz. at 247–48 ¶ 35.

Here, the superior court erred by misreading and then failing to address the actual merits of Plaintiffs' claims. Plaintiffs' claims were premised on the *conflict* between two subparts of the Savings Clause, not just the *meaning* of one of those subparts. The superior court further erred by relying on savings clauses from other enactments to interpret the Savings Clause while ignoring the meaningfully different language used in those enactments when compared to Prop 209's text. The superior

24

court's chosen solution—allowing courts and parties in post-judgment enforcement proceedings to resolve the Savings Clause's failings—only makes the problem worse. As has now been shown, it only increases confusion and violates the separation of powers.

This Court should reverse and issue an order directing the superior court to declare Prop 209 unconstitutionally vague and unintelligible in its entirety and enter a permanent injunction preventing the law's application.

## I. THIS COURT SHOULD ENTER AN ORDER DECLARING THAT PROP 209 DOES NOT APPLY TO CONTRACTUAL DEBT AT ALL.

Shortly after Plaintiffs filed their notice of appeal in this case, the Arizona Supreme Court published its opinion resolving the pre-election challenge to Prop 209's 100-word description. *Protect Our Ariz. v. Fontes*, 522 P.3d 678 (Ariz. 2023). Although Plaintiffs did not have the opportunity to rely on that case before the superior court, the opinion may assist this Court in resolving some of Plaintiffs' void-for-vagueness arguments.

There, the Supreme Court considered whether Prop 209's 100-word description communicated objectively false and misleading information by stating it did not "change existing law regarding secured debt." *Id.* at 681 ¶ 3. The proviso came under attack because Prop 209 pervasively changes existing law regarding involuntarily secured debt. *Id.*

Reading the final sentence of the 100-word description in context, the Supreme Court found that it was not misleading specifically because Prop 209 does *not* affect any "debts secured through voluntary financing arrangements" or "'existing contracts' regarding debt[] which are themselves voluntarily entered into." *Id.* at 684–85 ¶¶ 18–21. After observing that Prop 209 did not impact existing contracts regarding debt, the Supreme Court concluded that Prop 209 does *not* change the law "regarding debt secured by a consensual lien or pledge." *Id.*

Revealingly, the Supreme Court did not discuss or even cite Prop 209's amendments to A.R.S. § 44-1201, a statute that applies to medical debt arising from a contract for medical care or that is otherwise contractually secured. *See* A.R.S. § 44-1201(A)(1) (lowering the interest rate on "loan[s], indebtedness or other obligation[s]" arising from the receipt of medical care). This absence strongly suggests that the Supreme Court believed that Prop 209 actually does not apply to debt arising out of contracts whatsoever. Put simply, the Supreme Court reads Prop 209 as having no retroactive or prospective effect on contractual debt and has included that interpretation in a published opinion that courts and litigants will rely on going forward.

While that observation may be *dicta*, the statement was still clearly meant as a guide for future conduct and "should be followed in the absence of some cogent reason for departing therefrom." *State v. Jones*, 248 Ariz. 499, 501 ¶ 10 (App. 2020).

Moreover, this observation was necessary to decide the case: if Prop 209 applies to preexisting contracts or debts related to those contracts, then the 100-word summary *would have* been false and misleading.

A declaration that Prop 209 does not apply to contracts or debts related to those contracts is necessary and appropriate at this time for three reasons. <u>First</u>, numerous readings of Prop 209's applicability have emerged. But so far, no court has read Prop 209 the same way as *Protect Our Arizona*. Without a judicial decision directly addressing the proper reading of Prop 209, *Protect Our Arizona* heightens the confusion regarding the Savings Clause. <u>Second</u>, because the Supreme Court's conclusions regarding Prop 209's scope are *dicta*, a direct ruling on Prop 209's applicability will alleviate the confusion. <u>Third</u>, adopting the Supreme Court's reading in a declaratory judgment is permissible, as any court of record, including the court of appeals, may issue a declaratory judgment. A.R.S. §§ 12-120(A), 12-1831.

This Court may avoid the void-for-vagueness challenge by following the insights of *Protect Our Arizona* and entering an order declaring that Prop 209 does not apply to any debt arising out of a contract (retrospectively or prospectively) or remand with instructions to the superior court to enter that declaration.

27

## II. THE SAVINGS CLAUSE IS VOID FOR VAGUENESS OR (AT A MINIMUM) UNENFORCEABLE AS UNINTELLIGIBLE.

If this Court does not find *Protect Our Arizona* persuasive, it should still reach the merits, hold that the Savings Clause is unconstitutionally confusing, and order the superior court to enjoin its operation.

### A. The Savings Clause Is Unconstitutionally Vague Because Debt-Collectors Cannot Determine When They Will Run Afoul of Its Requirements, Triggering Significant Exposure to FDCPA Liability.

As shown by the disjointed application in courts across Arizona, Prop 209 violates due process by failing to provide any meaningful clarity as to when it applies to the numerous post-judgment enforcement actions already underway across Arizona. With two conflicting options for judgment creditors, garnishees, judgment debtors, courts, and lawyers to follow, Prop 209's Savings Clause forces involuntary players into a high-stakes and unconstitutional guessing game. The penalties for guessing wrong range from liability under Arizona's garnishment statutes to strict liability monetary under the FDCPA—potentially on a class-wide basis. *See* 15 U.S.C. § 1692k. Because due process demands far more clarity, this Court should reverse and hold the Savings Clause void for vagueness.

A vague law "is no law at all." *United States v. Davis*, 139 S. Ct. 2319, 2323 (2019). Laws may be unconstitutionally vague for one of two reasons: "*[f]irst*, if it fails to provide people of ordinary intelligence a reasonable opportunity to

understand what conduct it prohibits. *Second*, if it authorizes or even encourages arbitrary and discriminatory enforcement." *Hill*, 530 U.S. at 732 (emphasis added). Put differently, "[w]hat renders a statute vague is not the possibility that it will sometimes be difficult to determine whether the incriminating fact it establishes has been proved; but rather the indeterminacy of precisely what that fact is." *United States v. Williams*, 553 U.S. 285, 306 (2008). Even when a term has an ordinary meaning in some contexts, a law may be unconstitutionally vague for failure to explain "what specific conduct is covered . . . and what is not." *Lytle v. Doyle*, 326 F.3d 463, 469 (4th Cir. 2003).

The vagueness doctrine "rests on the twin constitutional pillars of due process and separation of powers." *Davis*, 139 S. Ct. at 2325. Individuals must have "fair notice of what the law demands of them." *Id.* Otherwise, a law might "pose[] a trap for the person acting in good faith, who is given no guidepost by which he can divine what sort of conduct is prohibited." *Planned Parenthood of Ind. & Ky., Inc. v. Marion Cnty. Prosecutor*, 7 F.4th 594, 603 (7th Cir. 2021) (collecting cases). Likewise, those charged with enforcing or applying the law must be given adequate standards to guide their decision. *Sw. Eng'g Co. v. Ernst*, 79 Ariz. 403, 414 (1955); *see also Dimaya*, 138 S. Ct. at 1212. Otherwise, the law impermissibly transfers lawmaking power from the people's hands to the judges and lawyers applying that law. *See Davis*, 139 S. Ct. at 2325.

29

For voter initiatives like Prop 209, these principles loom large. With a constitutional separation of powers clause, respect for separation of powers has a special solicitude in Arizona. *See State ex rel. Woods v. Block*, 189 Ariz. 269, 275 (1997). The Arizona Constitution also explicitly reserves direct legislative power to the people through the initiative process. *See Tillotson v. Frohmiller*, 34 Ariz. 394, 401–02 (1928). Under the Voter Protection Act ("VPA"), the Legislature cannot easily amend voter-initiated laws to fill in any gaps. Ariz. Const. art. IV, pt. 1, § 1(6) (amending popularly enacted measures requires a 3/4 majority of both houses and that the amendment "further[] the purposes" of the measure).

As the superior court found, Prop 209 works a "comprehensive change to an established statutory process." APP-0410. Yet the Savings Clause's murky language has even seasoned lawyers and judges familiar with post-judgment enforcement actions guessing how, when, and if Prop 209 applies to garnishment actions. Generally, these gray areas include situations where: (1) the underlying contract and money judgment are entered before the Effective Date, but the garnishment action begins afterward; (2) the underlying contract is entered into before the Effective Date, but the money judgment is entered and the garnishment action begins afterward; or (3) the underlying claim is not based on a contract, and the money judgment is entered before the Effective Date, but the garnishment action begins afterward.

Some would assume (like the superior court), that the Saving Clause's second subpart governs at least the first and second categories just mentioned. APP-0234 at 25:7–15; APP-0255 46:15–20; APP-0409.[6] Prop 209's 100-word summary and Legislative Council's analysis told voters as much. APP-0267, -0304. If so, then parties to those types of post-judgment enforcement actions may continue to apply the law as it existed before Prop 209 without penalty.

That assumption, however, conflicts with the rest of the Savings Clause when it is read in the context of post-judgment enforcement actions. A judgment creditor's right to pursue collection of the money judgment is generally triggered by the issuance of that money judgment. Clark, *supra*, § 3.13.1.3; *see also McCullough*, 172 U.S. at 123. However, garnishments have long been viewed as wholly independent actions from the underlying lawsuit. *Bennett Blum, M.D.*, 235 Ariz. at 207 ¶ 13. Thus, the statutory remedy of garnishment and the right to enforce a money judgment are technically different than, and "independent" from, those underlying contracts entirely. Because the rights to collect and garnish mature separately from the rights and duties under the contract, the Savings Clause's first subpart becomes

---

[6] Even Intervenor acknowledged that Plaintiffs should be able to apply preexisting law to the first two categories. APP-0093–95 at 23:3–25:17, APP-0098–99 at 28:21–24, 29:13–14.

relevant: Prop 209 does not apply to "rights and duties that matured before the effective date of this act."

In this context, the Savings Clause subjects judgment creditors, garnishees, and judgment debtors to contradictory statutory requirements. Subpart one of the Savings Clause tells a reader of ordinary intelligence that Prop 209 attaches to a post-judgment enforcement action in process after the Effective Date sometime after a judgment is entered (*e.g.*, date the writ of garnishment or order of continuing lien was filed), even if it arises out of a contractual debt. Subpart two tells a reader of ordinary intelligence that Prop 209 does not attach to a post-judgment enforcement action in process after the Effective Date if it arises out of pre-existing contractual debt, regardless of whether a judgment or writ of garnishment (or some other post-judgment act) is entered into after the Effective Date. Readers must, therefore, guess which statutory language to ignore. This is an untenable result under long-standing rules of statutory interpretation. *Yates*, 69 Ariz. at 72.

Without clarity, judgment creditors, judgment debtors, garnishees, and judges must first guess which of the Savings Clause's subparts apply. Assuming the first subpart of the Savings Clause applies to a particular case, the guessing game continues. When does the right to collect on a judgment "mature"? The phrase "rights and duties that matured" has no settled legal meaning in the context of post-judgment enforcement actions and Prop 209 contains no guidance for divining that

meaning. The right to enforce a judgment on a particular part of the judgment debtor's nonexempt earnings could "mature" at various points of a garnishment action: the entry of the judgment, the filing of the application, the issuance of the writ, the service of the writ, the entry of the judgment or order of continuing lien, the calculation of the debtor's nonexempt earnings statement, or some other unspecified point.

For debt collectors pursuing consumer debts, including some lawyers representing judgment creditors, a single wrong guess means liability under Arizona's garnishment statutes and potentially significant strict-liability consequences under the FDCPA. The FDCPA's strict liability penalties means that due process tolerates less vagueness here. *See Vill. of Hoffman Estates v. Flipside, Hoffman Estates*, 455 U.S. 489, 499 (1982) (recognizing "that a scienter requirement may mitigate a law's vagueness, especially with respect to the adequacy of notice to the complainant that his conduct is proscribed"); *Whatley v. Zatecky*, 833 F.3d 762, 780 (7th Cir. 2016) (noting that courts have long recognized that the constitutionality of a vague statute is closely related to the existence of a scienter requirement) (collecting cases). Without so much as a negligence standard to protect from significant monetary penalties, the notice that due process guarantees is completely missing from Prop 209's Savings Clause. *See Planned Parenthood of Ind. & Ky., Inc.*, 7 F.4th at 608 (Wood, J., dissenting) ("People cannot be required to play a game

33

of 'Twenty Questions' to figure out what exactly they have done (or perhaps someone else has done) that might, or might not, violate a particular law.").

This Court recently highlighted how subjecting citizens to contradictory statutory requirements violates the void-for-vagueness doctrine. *Planned Parenthood Arizona, Inc. v. Brnovich* concerned an appeal from the reinstatement of Arizona's territorial-era law imposing criminal penalties on providers who provided, supplied, or administered an abortion unless necessary to save the life of the mother. 2 CA-CV 2022 0-116, 2022 WL 18015858, at *1 ¶ 1 (Ariz. Ct. App. Dec. 30, 2022) (citing A.R.S. § 13-3603). After a permanent injunction restrained enforcement of that law in the 1970s, however, the Legislature enacted numerous laws to regulate abortions and codified them in Title 36, including placing criminal restrictions on abortion services by licensed physicians up to fifteen weeks. *Id.* ¶ 4; *see* A.R.S. § 13-3603.

Following the United States Supreme Court's decision in *Dobbs v. Jackson Women's Health Organization*, the Arizona attorney general moved to lift the injunction against A.R.S. § 13-3603. *Id.* at *3 ¶ 10. But, opponents urged the court to instead harmonize the statutes in question so that no enforcement actions could be brought against licensed providers who performed abortions in compliance with Title 36. *Id.* The attorney general countered that even if the statutes could be

harmonized, prosecutions should still be permitted under A.R.S. § 13-3603. *Id.* at *4 ¶ 17.

This Court turned that view aside, however, because it would "violate[] due process by promoting arbitrary enforcement." *Id.* In other words, accepting the attorney general's argument would expose licensed abortion providers to two inconsistent statutes. One statute permitted abortion under certain circumstances; the other criminalized abortion in nearly every circumstance. "[T]he resulting uncertainty for licensed physicians who provide abortion services would violate due process, which requires that the law must be sufficiently definite to avoid arbitrary enforcement." *Id.* at *5 ¶ 20 (internal quotations omitted). Accepting the attorney general's argument thus "would not merely invite arbitrary enforcement, it would practically demand it." *Id.* Prosecutorial discretion did not alleviate the need to avoid arbitrary enforcement. *Id.* ¶ 21. The due process problem remained—"physicians performing elective abortions would not know if their conduct would be criminally prosecuted . . . or if they could avoid liability by complying with Title 36." *Id.* Because this Court has a duty to avoid unconstitutional constructions of statutes, it rejected the attorney general's argument. *Id.* ¶ 20.

Like *Planned Parenthood*, Plaintiffs in this case are faced with contradictory statutory requirements. While the Savings Clause appears to allow at least some post-judgment enforcement actions to proceed under preexisting law, Prop 209 may

35

apply to post-judgment enforcement actions at different, conflicting points. No one, including Plaintiffs, knows if applying preexisting law will expose them or their clients to liability. When people are exposed to significant liability for incorrectly applying the law, due process does not tolerate this much indefiniteness. This Court should take heed of *Planned Parenthood*'s insights and hold the Savings Clause void for vagueness.

**B.      The Proffered Defenses of the Savings Clause Highlight Just How Vague the Savings Clause Truly Is.**

The superior court accepted Intervenor's flawed attempt to give meaning to the Savings Clause where none exists. In doing so, they overlooked the judiciary's conflicting interpretations regarding when (and how) Prop 209 would apply. Instead, both Intervenor and the superior court relied on examples of previous savings clauses without considering that each of those examples provided necessary clarity by using vastly different language than Prop 209. Despite asserting repeatedly that the Savings Clause is "clear," Intervenor (who drafted the law) has never explained when Prop 209 actually applies to garnishments or other post-judgment enforcement efforts. The attempted defense of the Savings Clause only betrays its unconstitutional vagueness.

1. <u>Interpretations by Courts, Agencies, and Litigants Compound Confusion.</u>

Intervenor suggested Plaintiffs' entire challenge is "absurd[]" because the judicial branch "has already executed its duties . . . related to garnishment proceedings . . . and established guidance as to its implementation." APP-0124. This argument is contrary to the evidence.

Far from "establish[ing] guidance," AOC and other members of the judiciary have differing opinions on when and how the Savings Clause applies to post-judgment enforcement actions. One justice of the peace opined that the Savings Clause changed the garnishment calculation for all money judgments, even those entered before December 5, 2022. APP-0395–99. Another opined that the Savings Clause would likely protect garnishment actions where the underlying judgment or the application for a writ of garnishment were entered prior to the Effective Date. APP-0400–01.

AOC has changed its position multiple times: first AOC advised that the Savings Clause was unclear, then it advised that the Savings Clause's application would depend on the judicial officer hearing the case, and finally it refused to try to explain the Savings Clause's scope. APP-0348–55; *see also* APP-0035–36 ¶¶ 22–23. The Legislature is similarly confused and has posted two competing versions of some (but not all) statutes amended by Prop 209 without explanation regarding which one applies. APP-0356–63.

Intervenor's "guidance" consists of contradictory pronouncements that underscore the Savings Clause's constitutionally flawed language. AOC's changing position on Prop 209's applicability is striking evidence that arbitrary enforcement has occurred and will continue to occur unless Prop 209 is enjoined. *See Hill*, 530 U.S. at 732.

The superior court did not consider AOC's conflicting "guidance," and instead reasoned that forthcoming "thought" and "hard work" of superior and justice courts would somehow yield a constitutional meaning of the Savings Clause. APP-0410. This reasoning is constitutionally unacceptable and puts the cart before the horse. Suggesting that courts and administrators can give meaning to the Savings Clause violates a core purpose of the void-for-vagueness doctrine: to avoid giving the power to define what the law means to those supposed to be enforcing it. *Dimaya*, 138 S. Ct. at 1212. It is the people, not courts, who give meaning to the laws that they are expected to abide by. *Davis*, 139 S. Ct. at 2325. Requiring "the Court or agencies to effectively 'legislate' by supplying material and necessary missing terms not suggested, either expressly or impliedly, by the statutory language . . . would violate separation-of-powers principles." *City of Phoenix*, 249 Ariz. at 247 ¶ 35. These concerns are even more potent in Arizona. *See Block*, 189 Ariz. at 275. The superior court's decision to punt the "hard work" to others unacceptably tells

debtors, creditors, and otherwise disinterested garnishees, that the law differs depending on what court they draw.[7]

Not only does the superior court's "hard work" reasoning violate the separation of powers, but it also leads to patently inequitable results. Despite the short amount of time since the TRO was vacated, courts are already giving debtors, garnishees, and creditors different reasons, results, and guidance. For instance, it appears that several justice courts in Maricopa County are following a "bench best practice," which appears to rely on the first subpart of the Savings Clause and apply Prop 209 to any case where the writ of garnishment is *filed* on or after December 5, 2022. APP-0412–20.

However, superior court commissioners in Maricopa County have declined to apply Prop 209 to cases where the writ of garnishment is filed or issued after December 5, 2022, so long as the "garnishment is predicated . . . []on a contract/agreement entered into before December 5, 2022," evidently relying on the second subpart of the Savings Clause to find the underlying contract's date dispositive as to Prop 209's application. APP-0421–0434. Other justice and superior

_____

[7] In addition, leaving the task of defining the Savings Clause to individual courts and administrators virtually ensures that debt collectors will be forced to accept harsh penalties under the FDCPA. Given all the consequences flowing from those penalties, debt collectors cannot be asked to cross their fingers and hope that a particular judicial officer interprets the Savings Clause in their favor.

courts in Pima, Yuma, Maricopa, and Pinal Counties have also declined to apply Prop 209 to cases where the writ of garnishment is filed or issued after December 5, 2022, presumably relying on some other undefined event to trigger Prop 209's application. APP-00435–73. And at least one justice court in Maricopa County is applying Prop 209 to a case where the writ of garnishment was filed *before* December 5, 2022, ignoring the bench best practice and seemingly relying on a reapplication for a continuing lien as the relevant trigger. APP-0474–78.

These post-judgment enforcement proceedings will evade appellate review for several reasons, including but not limited to the low dollar amounts at issue in most of these cases and the rapid pace of post-judgment enforcement proceedings. Continuing down this path will cement inconsistent application of Prop 209 across Arizona. Thus, the superior court's attempt to avoid the constitutional question and implicit suggestion that Plaintiffs needed to wait for these issues to work through the courts misses the mark. *See* APP-0409–10. These matters are percolating through the courts now and have adversely affected Plaintiffs who are involved in litigating these cases every day. The diverging orders highlight that this issue is ripe for review and clarification now. *See, e.g.*, *KPNX Broad. v. Superior Court In & For Maricopa Cnty.*, 139 Ariz. 246, 250 (1984) (finding jurisdiction where underlying dispute was capable of repetition but evading review).

This Court should reverse and repudiate the superior court's novel theory.

40

2.    The Examples of Other Savings Clauses Relied on by the Superior Court Use Different, Clearer Language than Prop 209.

Intervenor asserted that the Savings Clause is constitutionally clear because the phrase "rights and duties that matured appears numerous times in Arizona [and federal] law." APP-0125 (quotation omitted). The superior court relied on this argument in concluding that the Savings Clause was not vague. APP-0409–10. But this misses the point—the Savings Clause's subparts conflict with each other. While it may be possible to interpret each of the three subparts individually, they are in irreconcilable conflict when read together and in context. In fact, each of the Intervenor's examples highlight the lack of clarity in the Savings Clause.[8]

The Intervenor's examples use different and clearer language than the Savings Clause. Many examples state the new law "does not affect rights and duties that matured, penalties that were incurred and *proceedings that were begun* before the

---

[8] Intervenor also relied on federal cases, but these do not show whether the Savings Clause passes constitutional muster either. Two cases concern "rights and duties that matured" under a savings clause in the 2011 repeal of the Contract Settlement Act of 1944. In those cases, the underlying contract specified when the right to repayment matured. *See Shell Oil Co. v. United States*, 7 F.4th 1165, 1174–75 (Fed. Cir. 2021) (citing contract's indemnification provision); *Tektel, Inc. v. United States*, 121 Fed. Cl. 680, 685–86 (2015) (citing exhaustion of administrative remedies provision). The third case held only that the right to receive an annuity under federal law did not mature until retirement. *See Horner v. Benedetto*, 847 F.2d 814, 818 (Fed. Cir. 1988). That the phrase "rights and duties that matured" can be interpreted in the contractual and annuity contexts does not speak to when rights mature in the post-judgment enforcement context, including many procedural steps absent in other contexts.

effective date of this act." *See, e.g.*, Laws 1999, Ch. 195, § 26 (emphasis added); Laws 1992, Ch. 148, § 5(B); Laws 1988, Ch. 161, § 16; Laws 1981, Ch. 244, § 7; Laws 1971, Ch. 163, § 3; Proposition 206, § 6 (2016). The emphasized language is conspicuously absent from the Savings Clause. If it had been included in the Savings Clause, that language would have protected judgment creditors who had begun proceedings before the Effective Date and expressly notified garnishees and judgment debtors of this protection. Thus, these examples are easily distinguished and fail to show the Savings Clause is constitutionally clear.

Intervenor's final example—and the lynchpin of the superior court's decision—makes this apparent. APP-0409–10. When the garnishment statutes were amended in 1986, the Legislature included a savings clause stating: "This act applies to *all writs of garnishment issued on or after the effective date of this act*. This act does not affect the rights and duties that matured *or proceedings that were begun* before the effective date of this act." Laws 1986, Ch. 4 § 29(A) (emphasis added).[9] The Legislature's explicit mention of "writs of garnishment issued" *and*

_____

[9] Highlighting the 1986's Legislature's understanding that changing the garnishment statutes is hard business because of just how many proceedings are active at a time, the Legislature further provided for a moratorium on the issuance of all writs of garnishment for nearly a month after the legislation became effective. Laws 1986, Ch. 4, § 209(B).

"proceedings that were begun" shows that the language protecting "rights and duties that matured" lacked sufficient clarity standing alone. *Yates*, 69 Ariz. at 72.

The savings clause in the 1986 amendments left no doubt: the amendments did not apply to ongoing garnishment actions. But that is the very thing that the Savings Clause leaves unsaid. Without this language, reasonable judges, debtors, and creditor could conclude that Prop 209 applies to garnishment proceedings already underway. Yet, those same people must also guess about when garnishment rights and duties become "mature." The 1986 amendments are the least apt comparator for the Savings Clause.

Despite having myriad examples to accomplish the promised "prospective" application, Prop 209 used language so ill-suited to the post-judgment enforcement context that it is completely unclear when and how the new law applies to existing proceedings and proceedings based on contracts entered into before the Effective Date. These examples confirm the facial vagueness of the Savings Clause.

3. <u>Defendants' Remaining Arguments Are Based on an Analysis Legislative Council Never Undertook and a Legal Standard that No Longer Controls.</u>

Intervenor also claimed the Savings Clause cannot be vague because Legislative Council analyzed the Act under A.R.S. § 19-111.01(B). APP-0126. But Legislative Council was *not* reviewing the legality of Prop 209's text as passed by the voters. APP-0331–46. Nor could it undertake that review. The revisions to the

43

garnishment statute came only *after* Legislative Council's review. *See id.*; *see also* APP-0267. Intervenor's late inclusion of amendments to the garnishment statutes demonstrate its failure to consider this long-standing statutory process while crafting the Savings Clause. Additionally, it is of no significance that Legislative Council did not render an opinion on whether the Savings Clause was facially vague—a matter beyond the scope of its review.

Finally, Defendant and Intervenor have argued that Plaintiffs' facial challenge is inappropriate unless Plaintiffs showed that the Savings Clause was vague in all instances and applications. APP-0125, -0138. This is not the law. The United States Supreme Court has "expressly rejected the notion that a statutory provision survives a facial vagueness challenge merely because some conduct clearly falls within the statute's scope." *Guerrero v. Whitaker*, 908 F.3d 541, 544 (9th Cir. 2018). Put more pithily, "one simple application does not a clear statute make." *Dimaya*, 138 S. Ct. at 1222 n.7. This attempt to hold Plaintiffs to an outdated requirement should be swiftly rejected.

\* \* \*

The superior court's refusal to enjoin Prop 209 was based upon a series of grievous errors. It failed to address the real merits of Plaintiffs' challenge and relied only on distinguishable savings clauses in other enactments that also used the phrase "rights and duties that matured." The court's solution—to let the "hard work" of

44

interpreting Prop 209 continue—only makes the problem worse by explicitly inviting judicial officers and administrators to develop *ad hoc* interpretations of the new law. Plaintiffs' fear of non-uniform application has already manifested itself.

This is an anathema both to the fair notice and fundamental fairness that due process requires and to separation-of-powers principles. This Court must reverse and enter an order directing the superior court to enter an order enjoining Prop 209.

**C.    For These Same Reasons, the Savings Clause Is Unenforceable as Unintelligible.**

A statute is unenforceable when it "is so incomplete or unintelligible that [courts] cannot divine its purpose and intent, or how to implement it." *City of Phoenix*, 249 Ariz. at 247–48 ¶ 35 (noting that the unintelligibility doctrine is rooted in the same constitutional principles as vagueness).[10] When a law is unintelligible, courts must refrain from attempting to enforce it "unless and until the [electorate] completes it." *Id*. at 248 ¶ 37 (citation omitted). By refusing to enforce incomplete laws, courts properly "observe[] [their] constitutional role under the separation of powers." *State ex rel. Brnovich v. City of Tucson*, 242 Ariz. 588, 611 ¶ 102 (2017)

---

[10] While Intervenor suggested that the unintelligibility doctrine applies only to circumstances where a duty is imposed on a court or commissioner, it ultimately did not contest its application here. APP-0128. No authority limits the doctrine to only that circumstance.

(Gould, J., concurring). A refusal to enforce an incomplete, unfinished statute avoids an impermissible judicial re-write of the law. *Id.*

The superior court summarily denied this claim. APP-0410. Critically important questions surround the proper implementation of Prop 209, with deep and lasting consequences for judgment creditors, garnishees, judgment debtors, and the courts. But the court rejected Plaintiffs' unintelligibility challenge with a single citation. *Id.* If this Court does not find Prop 209's Savings Clause void for vagueness (although it should), this Court should reverse and declare the Savings Clause unenforceable for unintelligibility.

The Savings Clause offers two conflicting instructions on when Prop 209's amendments apply to post-judgment enforcement actions. The doctrine of unintelligibility should be "readily applicable" here. *See* Scalia & Garner, *supra,* 134–39 (explaining that the unintelligibility canon "is readily applicable . . . when two provisions are irreconcilable"). "After all, if we cannot make a valid choice between two differing interpretations, . . . we are left with the consequence that a text means nothing in particular at all." *Id.* at 189 (internal citation and quotation marks omitted).

In *State ex rel. Brnovich v. City of Phoenix*, the Arizona Supreme Court held unenforceable A.R.S. § 41-194.01(B)(2), a law which required local governments to post a bond equal to the state revenue paid to the local government in the preceding

46

six months upon a petition from the attorney general to determine the legality of a local law. 249 Ariz. at 247 ¶ 32. The Court reasoned that the bond statute failed to answer important questions, including: whether the local government had to "post the bond to defend its challenged law in this Court"; "[w]hat happens if no bond is posted"; "what does [the local government] have to do or refrain from doing to avoid forfeiture"; "what conditions must exist to exonerate the bond"; and whether exoneration would occur when the Court "issue[d] [its] decision or, assuming [it found] a violation, when the local government resolves the violation." *Id.* at 248 ¶ 36.

The Savings Clause is just as incomplete as the bond statute in *City of Phoenix*, if not more so. Conflicting provisions instructing when Prop 209 does, or does not, apply render the Savings Clause unenforceable as unintelligible. *See* Scalia & Garner, *supra*, at 134–39. Further, the Savings Clause leaves other important questions regarding Prop 209's implementation unanswered.

- Does Prop 209 apply differently to judgments based on non-contract claims? Do judgments based on contracts implied in law fall within the first or second subpart of the Savings Clause?

- What is a court to do when a judgment creditor innocently but mistakenly attempts to collect on a debt under preexisting law?

47

- What if a garnishee mistakenly fails to apply Prop 209—is that sufficient to hold that garnishee in contempt?

- In garnishment actions already underway, must the debtor object before it receives the benefits of Prop 209 or is a court, or garnishee, to impose those benefits on its own?

The Savings Clause impermissibly leaves courts to ponder all these questions and more. It must be declared unenforceable as a result.

Neither courts nor administrators can simply assign meaning to the Savings Clause on an *ad hoc* basis. Otherwise, courts and administrators would impermissibly be legislating "by supplying material and necessary missing terms not suggested, either expressly or impliedly, by the statutory language . . ." *City of Phoenix*, 249 Ariz. at 247 ¶ 35. By delegating implementation to courts and agencies to support its rejection of Plaintiffs' unintelligibility claims, the superior court impermissibly transgressed the separation of powers. *See* APP-0410.

Remarkably, Intervenor defended the intelligibility of the Savings Clause by conceding that the law is incomplete. APP-0130. But Intervenor boldly asserted that Prop 209 was not required to provide any guidance to courts and parties involved in post-judgment enforcement actions "to allow for implementation of Prop 209 in 'a rational and reasoned manner.'" *Id.* (citing *Cohen v. State*, 121 Ariz. 6, 9 (1978)). This rationale is wrong for two reasons.

48

First, Intervenor completely ignores AOC's duty to create forms and that litigants must use those forms, or substantially similar forms, in garnishments. *See* A.R.S. § 12-1598.16. Legislation impacting garnishments must provide sufficient guidance for AOC to fulfill that duty. Here, however, AOC endorsed individual courts' contradictory interpretations of the Savings Clause and that process has already begun to play itself out as Prop 209 is applied differently in courts statewide. APP-0348–55, -0394–401, -0412–78; *see also* APP-0035–36 ¶¶ 22–23. AOC believes the law is unclear and has not been able to carry out its duty to provide guidance to litigants. APP-0035–36 ¶¶ 22–23. With the confusion stemming from Prop 209 already causing the statutory scheme governing garnishments to breakdown, Intervenor cannot reasonably say that the law is being implemented in a rational and reasoned manner.

Second, statewide initiatives establish uniformly applicable laws for all Arizonans to follow. With rare exception, local jurisdictions are not allowed to deviate from those uniform rules. *See, e.g.*, *State ex rel. Brnovich v. City of Tucson*, 251 Ariz. 45, 48 ¶ 12 (2021) (discussing conflicts between charter cities and statewide statutes). Allowing this *statewide* initiative to be governed by the various patchwork interpretations of *local* courts while debt collectors incur strict liability penalties depending on those interpretations is an irrational and unreasoned application of a new law. Arguing otherwise is like claiming that a law makes

49

speeding illegal, but that applicable speed limits will be determined after-the-fact on a case-by-case basis depending on where charges are brought. *Cf. Fuenning v. Superior Court*, 139 Ariz. 590, 602 (1983) (explaining, in context of statewide DUI law, "[n]othing would defeat the legislative objective more rapidly than to permit the various jurisdictions in Arizona to 'go their own way' . . . . Guilt or innocence should not depend upon whether defendant was arrested on the north or south side of Baseline Road."). This fear is no longer hypothetical. As demonstrated above, the law applicable to debtors and creditors depends entirely on which court their case is filed. *See* APP-0412–78.

Even if this Court finds the Savings Clause survives the void-for-vagueness challenge, it remains so unintelligible as to be unenforceable.

### D. Without Prop 209's Savings Clause, the Remaining Provisions Cannot Survive.

Defendants have <u>never</u> claimed that Prop 209's Savings Clause is severable. Even so, the Savings Clause is not severable and its unconstitutionality condemns the entire Act.[11]

---

[11] This is a legal issue that this Court can and should resolve now. *See State v. Pandeli*, 215 Ariz. 514, 530 ¶ 61 (2007) (reviewing de novo severability of statute); *see also, e.g.*, *Seila Law LLC v. Consumer Fin. Prot. Bureau*, 140 S. Ct. 2183, 2208 (2020) (addressing severability as "a pure question of law" for the first time on appeal).

Two conditions must be satisfied before severability is available: (1) the valid portion of the law must be "workable," meaning that the law can accomplish its purpose without further action, and (2) the remaining provisions cannot be "so irrational or absurd as to compel the conclusion that an informed electorate would not have adopted one portion without the other." *Fann v. State*, 251 Ariz. 425, 436 ¶ 36 (2021) (citing *Randolph v. Groscost*, 195 Ariz. 423, 427 ¶ 15 (1999)).[12] Although either is sufficient, Prop 209 fails both conditions.

On the first condition, prospective application was of paramount importance to Prop 209's proponents and the electorate that voted for it and, further, a stated purpose of the Act. APP-0129 (stating Prop 209 "clearly spells out" its purpose "to prospectively enhance protections for debtors"); -0267 ("*Does not affect existing contracts. Does not change existing law regarding secured debt*." (emphasis added)); -0304 (Legislative Council analysis stating that Prop 209 would "only apply to contracts and agreements *entered into on or after the effective date of the measure*." (emphasis added)); *see also Protect Our Ariz.*, 522 P.3d at 684–85 ¶¶ 18, 21 (noting that Prop 209 does not "change existing law regarding debt secured by a consensual lien or pledge"). Without the Savings Clause, Prop 209 would apply to existing contracts, in clear derogation of this voter-endorsed purpose.

---

[12] The same test applies even when, as here, the law includes a severability clause. *Fann*, 251 Ariz. at 439–40 ¶ 51.

51

On the second condition, it is undisputed that an informed electorate would never have adopted the law absent the Savings Clause. To the contrary, it would be absurd to believe that a well-informed electorate would have approved a law applicable to existing contracts, when the approved law expressly included language intended to avoid that result.

Because Prop 209's remaining provisions cannot operate independently of the Savings Clause, this Court should hold that the remaining provisions are not severable.

## III. PLAINTIFFS SATISFIED ALL REQUIREMENTS FOR AN INJUNCTION.

In addition to the merits, Plaintiffs also established the other requirements for a permanent injunction: (1) irreparable injury; (2) a balance of hardships favoring Plaintiffs; and (3) public policy weighing in favor of injunctive relief. *Shoen v. Shoen*, 167 Ariz. 58, 63 (App. 1990); *see also eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006) (elements of a permanent injunction).

The infringement of a constitutional right, such as Plaintiffs' due-process rights, "unquestionably constitutes irreparable injury." *See Elrod v. Burns*, 427 U.S. 347, 373 (1976); *see also Nelson v. Nat'l Aeronautics & Space Admin.*, 530 F.3d 865, 881–82 (9th Cir. 2008), *rev'd and remanded on other grounds*, 562 U.S. 134 (2011) (reasoning that even if money damages could be repaid, plaintiffs still have an irreparable injury from the constitutional violation). Likewise, "it is always in the

public interest to prevent the violation of a party's constitutional rights." *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (citation omitted). Thus, where, as here, Plaintiffs have established a constitutional injury, both irreparable harm and the public interest are established.

But Plaintiffs have established even more here. As Plaintiffs argued before the superior court, they will face a host of harms, including significant strict liability penalties under the FDCPA, potential loss of customers, substantially increased malpractice premiums, and costs to recalculate withholding amounts, re-drafting court filings, and re-running their payrolls. *See* APP-0037 ¶¶ 28, 32; APP-0045 ¶¶ 30, 39; APP-0051 ¶ 14; *see also* APP-0403 (evidencing more than 14,000 debt-collection lawsuits statewide in one year).

Instead of responding to these harms, Intervenor sought to place the burden on judgment creditors by arguing these consequences could be avoided if the judgment creditors applied "the enhanced protections of Prop 209 to the close cases." APP-0133. This inequitable position asks debt-collector Plaintiffs to forfeit all protections they were entitled to under the Savings Clause and has three untenable consequences.

First, it would render the Savings Clause superfluous by denying judgment creditors the protections they were meant to receive. Reading statutes in such a manner is highly disfavored. *Yates*, 69 Ariz. at 72. Second, it would cause Prop 209

to apply retroactively. Reading statutes this way is equally disfavored, *Gietz v. Webster*, 46 Ariz. 261, 267 (1935), and has the added consequence of impairing vested substantive rights of creditors with claims based on contracts or judgments entered into before the Effective Date to obtain an effective remedy. U.S. Const. art. I, § 10; Ariz. Const. art. II, § 25. <u>Third</u>, it essentially asks attorney Plaintiffs to stop diligently advancing their clients' interests in contravention of their ethical obligations. Ariz. E.R. 1.3(1) ("A lawyer should pursue a matter on behalf of a client despite opposition, obstruction or personal inconvenience to the lawyer, and take whatever lawful and ethical measures are required to vindicate a client's cause or endeavor.").

Ironically, Intervenor's argument only confirms that injunctive relief is warranted. This Court should find that Plaintiffs satisfy all remaining requirements to obtain injunctive relief.

## IV. <u>ALTERNATIVELY, DECLARATORY JUDGMENT IS APPROPRIATE.</u>

The superior court also denied Plaintiffs' request for declaratory relief, reasoning that Plaintiffs were requesting the Court to "change the words of the law to confirm a more favorable interpretation." APP-0410. This is a mischaracterization for two different reasons. <u>First</u>, Plaintiffs sought a declaratory judgment only if the court gave the law a constitutional reading. <u>Second</u>, the declaratory judgment that Plaintiffs seek clarifies that Prop 209 will be administered consistent with the

promise that it would apply "prospectively only." APP-0304. What Plaintiffs sought as declaratory relief was simply an explanation of the court's reading of Prop 209 so that they could rely upon and apply that reading to their cases going forward.

It is not an impermissible judicial re-write of a voter-initiated law to give meaning by placing "a reasonable interpretation on 'the intent of the electorate that adopted it.'" *State v. Estrada*, 201 Ariz. 247, 250 ¶ 15 (2001) (citation omitted). As explained above, Prop 209 was meant to apply prospectively and not affect existing contracts or substantive rights that vested before the Effective Date, which would be impermissible. *See Aranda v. Indus. Comm'n of Ariz.*, 198 Ariz. 467, 471 ¶ 16 (2000); *see also Kresos v. White*, 47 Ariz. 175, 178–79 (1936).

Thus, the fairest and most reasonable construction of the Savings Clause is one that gives meaning to this express purpose by instructing that preexisting law applies to: (a) contracts entered into before the Effective Date and (b) post-judgment enforcement actions initiated after the Effective Date based on contracts entered into before the Effective Date, regardless of when the underlying judgment was entered.

55

*See* APP-0027–28 ¶ 110.[13] If this Court does not find Prop 209 unconstitutionally vague or unintelligible, it should at least grant Plaintiffs' request for declaratory relief. This solution would harmonize the text and purpose of Prop 209 while avoiding difficult constitutional questions posed by retroactive application.

For the most part, neither Intervenor nor the superior court disputed that Plaintiffs' requested relief was consistent with Prop 209's declared purpose. In fact, as recognized at the TRO hearing and reflected in the TRO issued by the court, all parties agreed that Prop 209 should not apply to (a) debt arising out of agreements entered into before the Effective Date and (b) post-judgment enforcement actions occurring after the Effective Date where the underlying contracts were entered into before the Effective Date; but does apply to (c) both debt arising out of contracts entered into and non-contract judgments entered after the Effective Date. APP-0093–95 at 23:3–25:17, APP-0098–99 at 28:21–24, 29:13–14. As explained above, this reading finds support in *Protect Our Arizona*, which twice recognized that Prop

---

[13] In the superior court proceedings, Plaintiffs also requested that the court declare that Prop 209 does not apply to non-contract judgments where the underlying harm accrued before December 5, 2022. *See* APP-0027–28 ¶ 110. However, this request appeared to distract the Intervenor, Defendant, and superior court from the Savings Clause's internal conflict in favor of focusing on when a tort claim matures. To avoid this confusion, Plaintiffs focus their present request for declaratory relief on Prop 209's application to contractual debt, which is the subject of the majority of cases causing a lack of uniformity in the lower courts.

56

209 was not meant to change the law regarding debt secured through voluntary agreement. 522 P.3d at 684–85 ¶¶ 18–21.

Should this Court not find the Savings Clause void for vagueness or unintelligible, it should still enter an order directing the superior court to grant Plaintiffs' request for declaratory relief stating that Prop 209:

    a. Does not apply to contracts entered into before December 5, 2022;

    b. Does not apply to post-judgment enforcement actions occurring after December 5, 2022 where the underlying contracts were entered into before December 5, 2022, regardless of when the underlying judgment was entered;

    c. Does apply to both contracts entered into, and non-contract judgments entered after, December 5, 2022; and

    d. Requires implementation of a bifurcated application for completing the mandatory documents for post-judgment enforcement actions depending on their relation to December 5, 2022.

## V.   <u>REQUEST FOR COSTS AND ATTORNEYS' FEES.</u>

Plaintiffs move for costs and attorneys' fees pursuant to ARCAP 21, A.R.S. §§ 12-341, 12-348, 12-1840, 12-2030, and the private attorney general doctrine as established by *Arnold v. Arizona Department of Health Services*, 160 Ariz. 593, 609

(1989), because the rights sought to be vindicated here benefit many people, require private enforcement, and are of societal importance.

## **CONCLUSION**

Prop 209 violates the Arizona Constitution in several ways. Because the merits of this constitutional challenge are clear, Plaintiffs need show little else in the way of irreparable harm, balance of hardships, and public interest. Yet each of those factors also favors a permanent injunction to protect Plaintiffs and, more importantly, to vindicate the importance of constitutional guaranties. The Court should reverse and remand with instructions to enter the requested injunction and declaratory relief.

RESPECTFULLY SUBMITTED this 6th day of March, 2023.

SNELL & WILMER L.L.P.

By: */s/ Brett W. Johnson*
   Brett W. Johnson
   Benjamin W. Reeves
   Tracy A. Olson
   Ryan Hogan
   Charlene A. Warner
   One East Washington Street
   Suite 2700
   Phoenix, Arizona 85004-2202

# PARTY CONTACT INFORMATION

Brian M. Bergin
Kevin M. Kasarjian
Anthony R. Napolitano
Bergin, Frakes, Smalley & Oberholtzer, PLLC
4343 E. Camelback Rd., Ste. 201
Phoenix, Arizona 85018
Bbergin@bfsolaw.com

*Attorneys for Defendant State of Arizona*

James E. Barton, II
Jacqueline Mendez Soto
Barton Mendez Soto PLLC
401 W. Baseline Rd., Ste. 295
Tempe, AZ 85283
james@bartonmendezsoto.com
jacqueline@bartonmendezsoto.com

*Attorneys for Intervenor-Defendants Arizonans Fed Up with Failing Healthcare (Healthcare Rising AZ)*



*E X H I B I T       3*

# ARIZONA COURT OF APPEALS

ARIZONA CREDITORS BAR
ASSOCIATION INC., an Arizona
corporation; PROTECT OUR ARIZONA
PAC, an Arizona political action
committee; ABSOLUTE RESOLUTIONS
INVESTMENTS, LLC, an Arizona limited
liability company; HAMEROFF LAW
GROUP, P.C., an Arizona corporation;
DESERT RIDGE COMMUNITY
ASSOCIATION, an Arizona non-profit
corporation; AUGUSTA RANCH
COMMUNITY MASTER
ASSOCIATION, an Arizona non-profit
corporation; BAUHINIA, LLC, a South
Dakota limited liability company; and
CASH TIME TITLE LOANS, INC., an
Arizona corporation,

          Plaintiffs-Appellants,

v.

STATE OF ARIZONA,

          Defendant-Appellee,


ARIZONANS FED UP WITH FAILING
HEALTHCARE (HEALTHCARE RISING
AZ), an Arizona political action committee,


          Intervenor-Defendant
          Appellees.

No. 1 CA-CV-22-0765

Maricopa County Superior Court
No. CV2022-015921


**Appellants' Consolidated
Reply Brief And Cross-
Answering Brief**

Brett W. Johnson (#021527)
Benjamin W. Reeves (#025708)
Tracy A. Olson (#034616)
Ryan Hogan (#036169)
Charlene A. Warner (#037169)
SNELL & WILMER L.L.P.
One East Washington Street
Suite 2700
Phoenix, Arizona 85004-2202
Telephone: (602) 382-6000
bwjohnson@swlaw.com
breeves@swlaw.com
tolson@swlaw.com
rhogan@swlaw.com
cwarner@swlaw.com


Attorneys for Plaintiffs/Appellants

# TABLE OF CONTENTS

Page

REPLY BRIEF ON APPEAL.................................................................1

I.     THE SAVINGS CLAUSE IS VOID FOR VAGUENESS. ..........................4

       A.     The Text of the Savings Clause Gives Conflicting Instructions..........4

       B.     Non-Uniform Application of Prop 209 Grows Worse.........................7

       C.     None of Defendants' Counterarguments Overcome This Legal
              Infirmity and Demonstrated Vagueness...........................................11

              1.     Defendants' Interpretations of the Savings Clause Are
                     Divorced from Its Text..........................................................11

                     a.     The Savings Clause Subparts Must Be Applied
                            Disjunctively................................................................11

                     b.     Neither Defendant can Explain When a "Right or
                            Duty" Matures Under the Savings Clause.....................14

              2.     A Facial Challenge Is Available and Does not Require a
                     Showing that the Savings Clause Is Vague in All
                     Applications. ........................................................................20

              3.     Arizona Law Does Not Tolerate Vague Laws that
                     Subject Individuals to Penalties............................................24

                     a.     The Penalties Associated with Misapplying Prop
                            209 Are Significant.......................................................24

                     b.     The Penalties for Applying Prop 209 Incorrectly
                            Justify a Stringent Vagueness Standard. .....................26

                     c.     Because Misapplication of Prop 209 Comes with
                            Severe Penalties, It Must Be Declared
                            Unconstitutional............................................................30

II.    THE SAVINGS CLAUSE IS UNENFORCEABLE AS
       UNINTELLIGIBLE. .........................................................................32

III.   WITHOUT PROP 209'S SAVINGS CLAUSE, THE REMAINING
       PROVISIONS CANNOT SURVIVE.......................................................34

IV.    PLAINTIFFS SATISFIED ALL REQUIREMENTS FOR AN
       INJUNCTION..................................................................................36

# TABLE OF CONTENTS

(continued)

**Page**

V.    ALTERNATIVELY, DECLARATORY JUDGMENT IS
      APPROPRIATE. ...................................................................38

    A.    Plaintiffs' Request for Declaratory Relief Is Appropriate. ................39

    B.    This Court May Alternatively Declare that Prop 209 Does Not
      Apply to Contractual Debt at All. ......................................................42

VI.   CONCLUSION...........................................................................46

-ii-

# TABLE OF CONTENTS

(continued)

**Page**

ANSWERING BRIEF ON CROSS-APPEAL ......................................................47

I.    PLAINTIFFS HAVE STANDING TO BRING A FACIAL
      CONSTITUTIONAL CHALLENGE. ..........................................................48

II.   THE PRE-ENFORCEMENT CHALLENGE TO PROP 209
      PRESENTS AN ACTUAL CONTROVERSY. ...........................................53

III.  PLAINTIFFS PLED SUFFICIENT INJURY-IN-FACT. ...........................56

IV.   THIS COURT SHOULD DETERMINE THE CASE ON THE
      MERITS. .....................................................................................................59

V.    CONCLUSION. ..........................................................................................60

-iii-

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*34 Degrees North LLC v. Mountain View Constr. LLC,*
2016 WL 7209664 (Ariz. Ct. App. 2016)..........................................................44

*Adams v. Comm'n on App. Ct. Appointments,*
227 Ariz. 128 (2011)................................................................................19

*Alphonsus v. Holder,*
705 F.3d 1031 (9th Cir. 2013) ...................................................................23

*Am. Meat Inst. v. Pridgeon,*
724 F.2d 45 (6th Cir. 1984) ......................................................................34

*Aranda v. Indus. Comm'n,*
198 Ariz. 467 (2000).................................................................................19

*Arcia v. Fla. Sec'y of State,*
772 F.3d 1335 (11th Cir. 2014) .................................................................59

*Ariz. Ass'n of Providers for Persons with Disabilities v. State,*
223 Ariz. 6 (App. 2009) (per curiam)................................................7, 53, 57, 58

*Ariz. Elec. Power Coop. v. Ariz. Dep't of Rev.,*
242 Ariz. 85 (App. 2017)...........................................................................12

*AZ Petition Partners LLC v. Thompson,*
--- P.3d -----, 2023 WL 4104100 (Ariz. 2023) ...........................................23

*Baldino v. Greenberg Traurig, LLP,*
2015 WL 157250 (Ariz. Ct. App. 2015)......................................................43

*Barkhurst v. Kingsmen of Route 66, Inc.,*
234 Ariz. 470 (App. 2014)....................................................................*passim*

*Batty v. Ariz. Med. Bd.,*
253 Ariz. 151 (App. 2022).........................................................................29

*Beckles v. United States,*
580 U.S. 256 (2017)..................................................................................27

*Bennett Blum, M.D., Inc. v. Cowan,*
235 Ariz. 204 (App. 2014).................................................................5, 13, 18

*Bennett v. Napolitano,*
206 Ariz. 520 (2003).................................................................................59

-iv-

# TABLE OF AUTHORITIES

(continued)

**Page**

*State ex rel. Brnovich v. City of Phoenix*,
249 Ariz. 239 (2020)..................................................................................32, 33

*Brunet v. Murphy*,
212 Ariz. 534 (App. 2006)..................................................................39

*Brush & Nib Studio, LC v. City of Phoenix*,
247 Ariz. 269 (2019)..................................................................48, 49

*Citizens Clean Elections Commission v. Myers*,
196 Ariz. 516 (2000)..................................................................35

*City of Chicago v. Morales*,
527 U.S. 41 (1999)..................................................................21

*City of Phoenix v. Yates*,
69 Ariz. 68 (1949)..................................................................13, 19

*Clark v. Cap. Credit Collection Serv.*,
460 F.3d 1162 (9th Cir. 2006) ..................................................................55

*Cohen v. State*,
121 Ariz. 6 (1978)..................................................................20, 26

*Coleman v. City of Mesa*,
230 Ariz. 352 (2012)..................................................................49

*Connaly v. Gen. Constr. Co.*,
269 U.S. 385 (1926)..................................................................28

*Copeland v. Vance*,
893 F.3d 101 (2d Cir. 2018) ..................................................................22

*Davis v. Chisolm*,
48 Ariz. 366 (1936)..................................................................18

*Dobson v. State ex rel. Comm'n on App. Ct. Appointments*,
233 Ariz. 119 (2013)..................................................................56

*eBay Inc. v. MercExchange, L.L.C.*,
547 U.S. 388 (2006)..................................................................36

*Elrod v. Burns*,
427 U.S. 347 (1976)..................................................................36

-v-

*Exxon Corp. v. Busbee,*
  644 F.2d 1030 (5th Cir. 1981) ........................................................................ 29

*Fann v. State,*
  251 Ariz. 425 (2021) ............................................................................ *passim*

*Flower World, Inc. v. Sacks,*
  43 F.4th 1224 (9th Cir. 2022) ........................................................................ 54

*Fuenning v. Superior Court,*
  139 Ariz. 590 (1983) ...................................................................................... 38

*Goldberger v. State Farm Fire & Cas. Co.,*
  247 Ariz. 261 (App. 2019) ....................................................................... 38, 60

*Guerrero v. Whitaker,*
  908 F.3d 541 (9th Cir. 2018) ........................................................................ 23

*Havens Realty Corp. v. Coleman,*
  455 U.S. 363 (1982) ................................................................................. 50, 59

*Horner v. Benedetto,*
  847 F.2d 814 (Fed. Cir. 1988) ...................................................................... 15

*IB Prop. Holdings, LLC v. Rancho Del Mar Apartments Ltd. P'ship,*
  228 Ariz. 61 (App. 2011) ............................................................................... 37

*Kaiser v. Cascade Cap., LLC,*
  989 F.3d 1127 (9th Cir. 2021) ................................................................. 24, 25

*Kashem v. Barr,*
  941 F.3d 358 (9th Cir. 2019) ........................................................................ 22

*Kolender v. Lawson,*
  461 U.S. 352 (1983) ................................................................................. 21, 23

*Kresos v. White,*
  47 Ariz. 175 (1936) ....................................................................................... 19

*State ex rel. Larson v. Farley,*
  106 Ariz. 119 (1970) ..................................................................................... 28

*Lisa K. v. Ariz. Dep't of Econ. Sec.,*
  230 Ariz. 173 (App. 2012) ....................................................................... 49, 51

*Local 8027 v. Edelblut,*
--- F. Supp. 3d ----, 2023 WL 171392 (D. N.H. Jan. 12, 2023) ........................22

*Lytle v. Doyle,*
326 F.3d 463 (4th Cir. 2003) ............................................................4, 8

*Manning v. Caldwell,*
930 F.3d 264 (4th Cir. 2019) ...............................................................28

*McCullough v. Virginia,*
172 U.S. 102 (1898).............................................................................39

*Mecinas v. Hobbs,*
30 F.4th 890 (9th Cir. 2022) ................................................................49

*Melendres v. Arpaio,*
695 F.3d 990 (9th Cir. 2012) ...............................................................36

*Mills v. Ariz. Bd. of Tech. Registration,*
253 Ariz. 415 (2022)...........................................................51, 53, 54, 56

*Molera v. Hobbs,*
250 Ariz. 13 (2020)..............................................................................59

*Muscat v. Creative Innervisions LLC,*
244 Ariz. 194 ......................................................................................10

*Nyeholt v. Secretary of Veterans' Affairs,*
298 F.3d 1350 (Fed. Cir. 2002) ...........................................................27

*Passmore v. McCarver,*
242 Ariz. 288 (App. 2017)...................................................................10

*Peterson v. Sundt,*
67 Ariz. 312 (1948)..............................................................................33

*Planned Parenthood Ariz., Inc. v. Brnovich,*
254 Ariz. 401 (App. 2022)............................................................*passim*

*Planned Parenthood of Ind. & Ky., Inc. v. Marion Cnty. Prosecutor,*
7 F.4th 594 (7th Cir. 2021) ..................................................................30

*Protect Our Ariz. v. Fontes,*
522 P.3d 678 (Ariz. 2023) ..............................................................9, 43

-vii-

*Randolph v. Groscost*,
195 Ariz. 423 (1999)..................................................................35

*Regan v. First Nat'l Bank*,
55 Ariz. 320 (1940)......................................................................9

*Semmes Motors, Inc. v. Ford Motor Co.*,
429 F.2d 1197 (2d Cir. 1970) ...................................................37

*Sessions v. Dimaya*,
138 S. Ct. 1204 (2018)....................................................21, 23, 29

*Shell Oil Co. v. United States*,
7 F.4th 1165 (Fed. Cir. 2021) ...................................................15

*State v. Boyd*,
201 Ariz. 27 (App. 2001)...........................................................30

*State v. Estrada*,
201 Ariz. 247 (2011).................................................................40

*State v. Johnson*,
243 Ariz. 41 (App. 2017)...........................................................41

*State v. Mutschler*,
204 Ariz. 520 (App. 2003)....................................................49, 50

*Susan B. Anthony List v. Driehaus*,
573 U.S. 149 (2014).................................................................51, 53

*Tektel, Inc. v. United States*,
121 Fed. Cl. 680 (2015).............................................................15

*United States v. Davis*,
139 S. Ct. 2319 (2019)..............................................................4, 21

*United States v. Johnson*,
576 U.S. 591 (2015)................................................................21, 23

*United States v. Stupka*,
418 F. Supp. 3d 402 (N.D. Iowa 2019) .................................21, 23

*Util. Mgmt. Grp., LLC v. Pike Cnty. Fiscal Court*,
531 S.W.3d 3 (Ky. 2017)...........................................................17

# TABLE OF AUTHORITIES

(continued)

*Valle del Sol Inc. v. Whiting,*
  732 F.3d 1006 (9th Cir. 2013) ...................................................................23

*Von Saher v. Norton Simon Museum of Art at Pasadena,*
  578 F.3d 1016 (9th Cir. 2009) ...................................................................10

*Witzke v. Idaho State Bar,*
  2023 WL 3394925 (D. Idaho May 11, 2023) ...........................................27

*Yniguez v. Arizona,*
  939 F.2d 727 (9th Cir. 1991) ....................................................................59

**Constiutitons, Statutes, and Rules**

U.S. Const. art. I, § 10, cl. 1 ........................................................................1

A.R.S. § 1-249 .............................................................................................39

A.R.S. § 12-1598.16 .....................................................................................34

A.R.S. § 12-1832 ..........................................................................................56

A.R.S. § 12-1842 ..........................................................................................41

A.R.S. § 12-1845 ..........................................................................................41

A.R.S. § 44-1201 ..........................................................................................44

15 U.S.C. § 1692a(6) .....................................................................................57

15 U.S.C. § 1692k(c) .....................................................................................25

The Fair Debt Collection Practices Act (FDCPA), Pub. L. 95-109 ................*passim*

Laws
  1971, Ch. 163, § 3 ......................................................................................15
  1981, Ch. 244 § 7 ........................................................................................15
  1986, Ch. 4 § 29(A) ....................................................................................17
  1988, Ch. 161, § 16 ....................................................................................15
  1992, Ch. 148, § 5(B) ..................................................................................15
  1999, Ch. 195, § 26 ....................................................................................15

Proposition 206, § 6 (2016) ..........................................................................16

Uniform Declaratory Judgments Act ..............................................................41

# TABLE OF AUTHORITIES

(continued)

**Page**

Virginia Code § 4.1-333 ........................................................28

Ariz. R. Civ. P. 12(b)(6) ................................................47, 48

**Other Authorities**

Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* (2012) ............................................13, 32, 33

Ariz. Legis. Council, *Ariz. Legis. B. Drafting Manual 2021-22*, https://www.azleg.gov/alisPDFs/council/2021-2022_bill_drafting_manual.pdf ........................................16

New Oxford American Dictionary (3d ed. 2010) ....................................12

Webster's Third New International Dictionary (1993) ...........................12

-x-

# REPLY BRIEF ON APPEAL

Arizona's voters were promised that Prop 209's amendments would not impact contracts entered into before the effective date.[1] Nor could it because Prop 209 would then run afoul of the Contract Clause. U.S. Const. art. I, § 10, cl. 1. But the Savings Clause meant to carry-out this promise is contradictory and unworkable. This fact remains, regardless of how the State and Intervenor try to distract the Court from answering this case's core question or convince this Court to rewrite the Savings Clause. Unless the Court impermissibly rewrites the Savings Clause, Plaintiffs, judgment debtors, and the courts are left guessing whether, when, and if Prop 209 applies. For Plaintiffs, a wrong guess nets harsh penalties, including under the FDCPA. This is untenable. Clarity and uniformity are necessary.

On the vagueness claim, Plaintiffs demonstrated that in the post-judgment enforcement context, the plain language of the Savings Clause provides conflicting instructions regarding when Prop 209 applies. As Plaintiffs predicted, these conflicting instructions have already spawned non-uniform application. Plaintiffs have provided several examples of justice and superior courts singling out different subparts of the Savings Clause (and different triggers within those subparts) to

---

[1] For ease of reference, this combined Reply Brief and Cross-Answering Brief uses the same defined terms as Plaintiffs' opening brief.

1

determine whether Prop 209 applies. The result? An arbitrary, non-uniform application of the law.

Defendants mount several feint attacks on Plaintiffs' vagueness challenge, ranging from bringing up new arguments about how to interpret the Savings Clause's subparts, to questioning whether the vagueness doctrine even applies to Prop 209, to imposing an outdated and inflated standard of review. Defendants even ask the Court to simply disregard ever-growing evidence of non-uniform application. These feints reveal Defendants' inability to demonstrate that anyone involved with post-judgment debt collection, including litigants and courts, could determine how to uniformly apply Prop 209.

Even if Defendants could overcome the vagueness challenge, the number of unanswered questions regarding how to apply Prop 209 supports Plaintiffs' position that Prop 209 is unintelligible.

Under either theory, the legal infirmities of the Savings Clause create serious issues for Prop 209, as it is not severable from the rest of the law. Implicitly acknowledging that this Court should try to save Prop 209 from its poor draftsmanship, Defendants raise for the first time on appeal unpersuasive severability arguments. These arguments, however, would untenably require the Court to take a blue pencil to one or more of the conflicting subparts of the Savings Clause. Not only would this result in the application of Prop 209 to existing

contracts, but it would also require the Court to legislate from the bench. Neither is permissible.

Even if this Court sets aside the meritorious vagueness and unintelligibility arguments, this Court may declare when Prop 209 applies. If, and only if, this Court does not enjoin Prop 209, the Court should expressly adopt both subparts as alternative and cumulative grounds to exempt an action from Prop 209. Although it is buried in Defendants' briefs, all parties appear to agree that Prop 209 should not apply to any debt or enforcement actions arising out of contracts entered into before the Effective Date. And, both Defendants appear to concede that it would apply to judgments entered into *after* the Effective Date, necessarily implying it would not apply to judgments entered beforehand. Tying subparts one and two of the Savings Clause to the judgment date and contract date creates two easily identifiable and legally supportable events for courts and litigants to uniformly apply. And with the benefit of our Supreme Court's discussion in *Protect Our Arizona*, this Court may announce that Prop 209 does not apply to contractual debt at all.[2]

---

[2] Even if the Court concludes that the Supreme Court's discussion in *Protect Our Arizona* does not mean that Prop 209 is inapplicable to any contractual debt, that discussion at least confirms that the courts should be using the contract date to determine Prop 209's application.

Whatever solution this Court adopts, it is past time for certainty in the application of the law.

## I.     THE SAVINGS CLAUSE IS VOID FOR VAGUENESS.

### A.     The Text of the Savings Clause Gives Conflicting Instructions.

A vague law "is no law at all." *United States v. Davis*, 139 S. Ct. 2319, 2323 (2019). It is unconstitutionally vague for statutes to subject individuals to inconsistent statutory requirements that invite (if not demand) arbitrary enforcement. *See Planned Parenthood Ariz., Inc. v. Brnovich*, 254 Ariz. 401, 407 ¶ 20 (App. 2022). People are entitled to know "what specific conduct is covered" by a law "and what is not." *Lytle v. Doyle*, 326 F.3d 463, 469 (4th Cir. 2003).

The Savings Clause lists just three situations where Prop 209 does not apply: "[1] rights and duties that matured before the effective date of this act, [2] contracts entered into before the effective date of this act or [3] the interest rate on judgments that are based on a written agreement." APP-0273. Unfortunately, these instructions conflict.

The Savings Clause's second subpart plainly states that Prop 209 does not apply in any way to contracts entered into before the Effective Date, including post-judgment enforcement actions based on debts related to those already existing contracts. But the Savings Clause's first subpart also encompasses post-judgment enforcement actions based on all sorts of debts. Arizona's courts consider

garnishments as independent from the underlying lawsuit. *Bennett Blum, M.D., Inc. v. Cowan*, 235 Ariz. 204, 207 ¶ 13 (App. 2014). Thus, at least some post-judgment enforcement actions may be independent from the underlying contract action. Because the garnishment actions are independent from the underlying contract action, the rights and duties each action creates may mature independently too. Under the first subpart standing alone, Prop 209 *could* apply to debt arising out of a contract entered into before the Effective Date when a garnishment action matured *after* the Effective Date. On the other hand, if the second subpart is read in isolation, Prop 209 *could not* apply to that same debt which arose out of a contract entered into before the Effective Date, regardless of when the garnishment action was initiated. This contradiction shows the Savings Clause's vagueness.

Additionally, the "rights-and-duties-that-matured" language itself leaves litigants to guess at which rights and duties matter and when those rights and duties mature. There is not a singular set of "rights and duties" that exist throughout the course of a debtor-creditor relationship, there are many.

Identifiable rights and duties could mature at any one of the following procedural steps:

- the entry of the contract,

- the entry of the judgment (the court-ordered right to payment),

- the recording of a judgment (creating a lien on real property),

- the judgment debtor's subsequent purchase of real property,

- the filing of the application for the writ of garnishment (the judgment creditor's formal request for a court order directing a garnishee to seize and hold the judgment debtor's nonexempt property or earnings),

- the issuance of the writ of garnishment (the court order directing a garnishee to seize and hold the judgment debtor's nonexempt property or earnings),

- the service of the writ of garnishment (the time when the garnishee is within the court's personal jurisdiction and subject to its contempt powers),

- the entry of the judgment against the garnishee or order of continuing lien (the order directing the garnishee to turn over property held under the writ to the judgment creditor),

- the calculation of the debtor's nonexempt earnings statement (the garnishee's continuing duty to hold and report on the judgment debtor's earnings each pay period), or

- some other unspecified point.

*See* Pltfs.' Opening Br. at 12. Therefore, the phrase "rights and duties that matured" is unsettled in this legal context.

6

The Savings Clause's ill-suited language confronts citizens with conflicting instructions and terms that have no established interpretation in this context. Accordingly, it is impossible for Plaintiffs to conform their conduct with the law.

### B.    Non-Uniform Application of Prop 209 Grows Worse.

Unique for a party asserting a vagueness challenge, Plaintiffs have direct evidence of widespread confusion in applying the challenged law. Before the Effective Date, a working group tasked with updating self-service forms—which included both attorneys and judicial officers—disagreed over the scope and application of the Savings Clause. *Compare* APP-0395–99 (believing Prop 209 would apply to any garnishment actions filed after the Effective Date), *with* APP-0400–01 (disagreeing, and opining that Prop 209 would not apply to a garnishment action if the underlying judgment predated the Effective Date).

This confusion extends to the AOC, which cannot fulfill its statutory duty to create forms for garnishment proceedings. AOC twice advised litigants that the garnishment rates imposed in their case would depend on the individual judicial officer's interpretation of the Savings Clause. Then the AOC withdrew its guidance altogether. APP-0035–36 ¶¶ 22–23, APP-0348–55.[3]

---

[3] Remarkably, Intervenor continues to assert (at 36) that these conflicting messages from the AOC "highlight[] that [Prop] 209 is perfectly intelligible" because "AOC would not have been able to issue any guidance at all" if it were unintelligible.

Plaintiffs' concerns are not hypothetical. Since the Verdict, some courts have applied Prop 209 to any case with a writ of garnishment filed after the Effective Date. *See* APP-0412–20. Yet, some decline to apply the new law to writs filed after the Effective Date without explanation. APP-00435–78. Others refuse to apply Prop 209's provisions to cases where garnishments are based on contracts entered into before the Effective Date. APP-0421–434.

The confusion and arbitrary application of Prop 209 continues. On March 17, 2023, Plaintiffs filed a Notice of Supplemental Authority to supplement the record with orders and minute entries applying the Savings Clause in different ways. And on March 31, 2023, Plaintiffs filed their Response to the State's Motion to Extend Time, which supplemented the record with orders showing that one court commissioner applied the Savings Clause three different ways over the course of a single week. APP-0513–534.

Regrettably, that confusion persists. Recently one justice of the peace declined to apply Prop 209 in part "*because the Savings Clause of 209, Section 10, is unclear*, [and] the issue is pending in the Arizona Court of Appeals . . . ." APP-0535–537

---

Warning litigants that the interpretation of the Savings Clause will depend on the judicial officer hearing their case, is not "guidance." It is an admission that Prop 209 invites arbitrary enforcement. People are entitled to know "what specific conduct is covered" by a law "and what is not" before they act. *Lytle*, 326 F.3d at 469.

(emphasis added). After acknowledging the lack of clarity in the Savings Clause, this justice of the peace used the underlying judgment's entry date (before the Effective Date) to decide that Prop 209 did not apply. *Id.*

The rules of the game continue to change. The vagueness in the Savings Clause untenably requires all litigants to guess how a court will apply the law. *See* APP-0412–78, APP-0482–539. *See also Protect Our Ariz. v. Fontes*, 522 P.3d 678, 684–85 ¶¶ 18–21 (Ariz. 2023) (indicating Prop 209 has no effect on contractual debt by failing to mention Arizona's general rate of interest statute in considering whether the initiative's 100-word summary was objectively false or misleading).

Though Intervenor criticizes (at 24) Plaintiffs for not authenticating these orders, Intervenor never actually disputes their authenticity. Intervenor does not challenge what these orders say. Intervenor does not argue that the orders show widespread agreement about the Saving Clause's meaning. *See* Intervenor's Br. at 24–25 (admitting that the orders show "the clause may be subject to different interpretations"). Instead, Intervenor asks the Court to ignore them because they were not presented to the superior court. This request misses the mark.

Each of the orders that Plaintiffs presented post-dated the superior court's Verdict. APP-0421–0478. Plaintiffs could not have presented them to the superior court. In this situation, courts frequently take judicial notice of orders in related cases. *Regan v. First Nat'l Bank*, 55 Ariz. 320, 327 (1940) (taking "judicial notice

9

of other actions involving similar parties and issues and of the pleadings therein"); *Muscat v. Creative Innervisions LLC*, 244 Ariz. 194, 196 ¶ 5 n.2 (App. 2017) (taking judicial notice of a minute entry in a related case that was "filed along with [the appellant's] opening brief"); *Passmore v. McCarver*, 242 Ariz. 288, 290 n.1 (App. 2017) (taking judicial notice of orders not included in the record on appeal).

Of course, this Court is not asked to adjudicate these several cases or decide whether the interpretation in a particular case was erroneous. Instead, this Court should take the orders for what they are—evidence of conflicting interpretations of the Savings Clause appearing throughout Arizona's courts. *Cf. Von Saher v. Norton Simon Museum of Art at Pasadena*, 578 F.3d 1016, 1022 (9th Cir. 2009) (noticing publications to indicate what was in the public realm, "not whether the contents of those articles were in fact true"). These widespread divergent applications are akin to a federal "circuit split," an archetypal situation for an appellate court to intervene to ensure uniformity in the law. Try as it might, Intervenor cannot avoid the utter inconsistency in how courts are applying the Savings Clause.

These myriad real-world examples underscore that Plaintiffs' arguments are not merely hypothetical, as both Defendants allege. *See, e.g.*, Intervenor's Br. at 1, 8, 10, 13, 15, 23, 34; State's Br. at 26, 34-36. Courts and litigants are dealing with this very real problem daily in the thousands of garnishment actions pending across Arizona. APP-0403. This demonstrated confusion justifies granting Plaintiffs'

request for clarity; this Court should declare the Savings Clause unconstitutionally vague, unconstitutionally unintelligible, or provide definitive guidance as to what the Savings Clause actually means.

### C. None of Defendants' Counterarguments Overcome This Legal Infirmity and Demonstrated Vagueness.

#### 1. Defendants' Interpretations of the Savings Clause Are Divorced from Its Text.

Despite evidence that courts and litigants cannot determine how to uniformly apply the Savings Clause, Defendants claim the text is clear by (1) setting forth new interpretations on how the subparts of the Savings Clause should be read together and (2) arguing that "rights and duties" should be interpreted consistent with historical savings clauses. However, both justifications rely on unsupported, extratextual assumptions.

##### a. *The Savings Clause Subparts Must Be Applied Disjunctively.*

Regarding the interaction of the Savings Clause's subparts, the State now argues (at 29–30) that the Savings Clause should be read as one pronouncement of the law's intent (the act applies "prospectively only") followed by three non-exclusive examples of when the act would *not* apply. Specifically, the State argues that the Savings Clause's use of the words "accordingly" and "or" means that the second sentence provides "examples of what prospective application looks like in various context[s]." The State's cited dictionary definitions, however, do not support

11

its contention that "accordingly" is merely illustrative. Rather, the word "accordingly" is synonymous with "consequently" or "therefore." *See* New Oxford American Dictionary (3d ed. 2010) ("accordingly" means "consequently; therefore"); Webster's Third New International Dictionary (1993) ("accordingly" means "as a consequence: CONSEQUENTLY: as a logical outcome: so"). The word "accordingly"—as a synonym for "therefore" or "consequently"—renders the subparts of the sentence as exclusive exceptions to Prop 209's application.

Further, "or" as a disjunctive particle does not mean that "the listed categories are some, but not all, of the potential applications" of the Savings Clause, as the State contends. State's Br. at 30. The "provision of one exemption in a statute implicitly denies the existence of other unstated exemptions." *Ariz. Elec. Power Coop. v. Ariz. Dep't of Rev.*, 242 Ariz. 85, 89 ¶ 17 (App. 2017) (citation omitted). Because the Savings Clause specifies just three exemptions to Prop 209, it negates other unstated applications.

Tellingly, the State reaches its reading by rewriting the law:[4] substituting (at 31, 41) its own preferred language ("includes" for "accordingly") and adding the term "non-exclusive." The State argues this extratextual rewrite is justified because it is the only one that harmonizes Prop 209's purpose with the statutory text. State's

---

[4] Ironically, this is what the State accuses Plaintiffs of doing.

Br. at 31–32 (citing Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 63, 180 (2012)). But this argument flips statutory construction principles on their head.

Not only does the State's interpretation add in words not present, but it also fails to give meaning to the words actually contained in the statute. *See City of Phoenix v. Yates*, 69 Ariz. 68, 72 (1949) ("Each word, phrase, and sentence must be given meaning so that no part will be [void], inert, redundant, or trivial."). Subparts one and two irreconcilably conflict. The very source relied upon by the State instructs that when "context and other considerations . . . make it impossible to apply the harmonious-reading canon, the principles governing conflicting provisions . . . must be applied." *Scalia & Garner*, *supra* at 180. Those principles include the irreconcilability canon, which dictates that "[i]f a text contains truly irreconcilable provisions at the same level of generality, and they have been simultaneously adopted, neither provision should be given effect." *Id.* at 189. In that scenario, the proper resolution is to apply the unintelligibility canon." *Id.* Because Prop 209's Savings Clause is not severable, *see infra* Section III, these provisions cannot be ignored without invalidating the entire law. Accordingly, because the Savings Clause's subparts—as understood against the backdrop of *Bennett Blum* and other like cases—conflict, there is no permissible harmonious reading to pursue.

Intervenor, for its part, argues (at 22–23) that "if any [subpart] establishes that the Act does not affect the particular issue being evaluated, then the Act does not affect it." But that relies on the extratextual assumptions that the State deployed: the use of "accordingly" and the use of "or." Unsurprisingly, Intervenor's reading is as untethered from the text as it is from the reality of how courts are evaluating Prop 209 around the State. Courts are not restricting Prop 209's application to be prospective only if any subpart applies. Rather, courts fixate on one subpart to determine whether Prop 209 applies. Problematically, courts have greatly diverged over *which* subpart matters for Prop 209's application or—if subpart one is selected—what event in the post-judgment enforcement action must happen before the Effective Date to determine if Prop 209 applies. *See* APP-0412–78, APP-0482–539.

Overall, Defendants' attempts to rewrite the Savings Clause are meritless. Not only does the attempt to re-write the Savings Clause fail textually, it also does not explain what courts across Arizona are doing with the text.

> b. *Neither Defendant can Explain When a "Right or Duty" Matures Under the Savings Clause.*

An entire section of Intervenor's brief (at 17–22) is devoted to arguing that the phrase "rights and duties that have matured" is clear enough to pass muster. But Intervenor never explains that phrase's meaning in the post-judgment enforcement context or in application. Intervenor not only fails to identify which of the various

14

"rights and duties" are being contemplated, but also fails to specify when this unspecified set of "rights and duties mature." And while Intervenor acknowledges (at 21) the number of procedural steps involved in post-judgment enforcement actions, Intervenor never identifies at what step the "rights and duties" associated with a post-judgment enforcement action become "mature." Intervenor—the author of the law and defender of the 100-word summary in court—cannot even identify the point at which the Savings Clause applies to the various actions at issue (*e.g.*, contract execution, judgment entry, writ issuance, writ service, order of continuing lien entry, or at the time nonexempt earnings statements are calculated). *See* Pltfs.' Opening Br. at 12 (collecting examples).

Defendants primarily argue that the phrase "rights and duties that matured" has been used before in other areas. But none of Defendants' cited cases involve the post-judgment enforcement context. *See Shell Oil Co. v. United States*, 7 F.4th 1165, 1174–75 (Fed. Cir. 2021) (citing contract's indemnification provision); *Horner v. Benedetto*, 847 F.2d 814, 818 (Fed. Cir. 1988) (right to receive annuity under federal law); *Tektel, Inc. v. United States*, 121 Fed. Cl. 680, 685-86 (2015) (citing exhaustion of administrative remedies provision). With a single exception, Defendants' examples of other savings clauses do not relate to the post-judgment enforcement context either. *See, e.g.*, Laws 1999, Ch. 195, § 26; Laws 1992, Ch. 148, § 5(B); Laws 1988, Ch. 161, § 16; Laws 1981, Ch. 244 § 7; Laws 1971, Ch. 163, § 3;

15

Proposition 206, § 6 (2016). These examples shed no light on the post-judgment enforcement context, and should not be followed here.

In a completely new argument, Intervenor points (at 18) to the Legislature's drafting manual's use of the phrase "rights and duties that matured." But this example, like the others, is untethered from its context. The drafting manual cautions that a "savings clause must be tailored to the needs of the particular case" and that "[i]n every instance it is important to consider whose direct and collateral rights and duties . . . may be affected by the bill." Ariz. Legis. Council, *Ariz. Legis. B. Drafting Manual 2021-22*, at 55, https://www.azleg.gov/alisPDFs/council/2021-2022_bill_drafting_manual.pdf. The Savings Clause does not identify whose rights and duties mature. Indeed, Intervenor's inability to identify on-point examples or attempt to explain how the Savings Clause applies in the post-judgment context shows that the Savings Clause was not "tailored" as the drafting manual cautions. This has led to at least one trial court fixating on the "rights and duties" of a garnishee, despite the focus of Prop 209 being on the "rights and duties" of those in a debtor-creditor relationship. *See* APP-0488–490.

Defendants have only been able to locate one savings clause dealing with the post-judgment enforcement context, but this example is materially different from the Savings Clause. The savings clause of the 1986 amendments to the garnishment statutes stated: "This act applies to *all writs of garnishment issued on or after the*

16

*effective date of this act.* This act does not affect the rights and duties that matured *or proceedings that were begun* before the effective date of this act." Laws 1986, Ch. 4 § 29(A) (emphasis added). Plaintiffs' opening brief already explained (at 42) that these two additional phrases "left no doubt: the amendments did not apply to garnishment actions already underway."

Without the tailoring evident in the 1986 amendments to the garnishment statutes, the "right-and-duties" subpart of the Savings Clause provides no clarity about when garnishment actions are impacted by Prop 209. Thus, to effectively guide litigants whether Prop 209 applies to "writs of garnishment issued on or after the effective date" or "proceedings that were begun before the effective date" courts would be required to fill in the blanks previously dictated by legislators. That is not interpretation, that is legislation. *See Util. Mgmt. Grp., LLC v. Pike Cnty. Fiscal Court*, 531 S.W.3d 3, 13 (Ky. 2017) ("When a court is 'left in the dark with no lights furnished by the statute to dissipate that darkness' it cannot engage in conjecture lest it 'allocate to itself legislative functions.'" (citation omitted)).

The State attempts to downplay the 1986 amendment's clarifying language, arguing (at 34) that the references to "writs of garnishment issued on or after the effective date of this act" and "proceedings that were begun" would create more ambiguity under Plaintiffs' theory "because a case could fit within even more subparts simultaneously." This argument only supports Plaintiffs' vagueness

challenge. The issue is not whether the Savings Clause should have added this language, the issue is whether the Savings Clause is sufficiently clear as it was approved by the voters. The 1986 amendments do not rest solely on divining the meaning of the phrase "rights and duties that matured" like Prop 209's Savings Clause. Instead, the additional language in the 1986 amendments removed any ambiguity.

Regardless, Plaintiffs' theory is *not* that the Savings Clause is vague because of the presence of multiple subparts. Instead, Plaintiffs' challenge is that in the appropriate context, Prop 209's subparts overlap *and* conflict so much that they are indecipherable.[5] Prop 209's drafters failed to appreciate the contradictions when

---

[5] The State argues (at 35) that the "substantive rights and duties of parties to a garnishment proceeding are dependent upon the prior action and judgment." The State only cites *Davis v. Chisolm* to support this contention. However, *Davis* is not as clear as the State suggests; rather, it describes garnishments as *dependent* upon the prior action, this only means that a prior action and judgment is necessary to pursue a garnishment at all. 48 Ariz. 366, 368–70 (1936) (determining whether the rule regarding rendition of judgments should also apply to garnishment proceedings). Further, such *dependency* would logically flow from the execution of the contract, an interpretation that the superior court refused to reach, despite Intervenors' concession it does. APP-0093–95 at 23:3–25:17, APP-0098–99 at 28:21–24, 29:13–14. Thus, the State's reliance on *Davis* cannot overcome the confusion caused by the Savings Clause, in part due to superior or justice courts relying on longstanding caselaw viewing post-judgment enforcement actions as wholly independent from the underlying lawsuit. *Bennett Blum*, 235 Ariz. at 207 ¶ 13.

trying to save the initiative from the constitutional prohibition against applying new laws to existing contracts and vested substantive rights. *See Aranda v. Indus. Comm'n*, 198 Ariz. 467, 471 ¶ 16 (2000); *see also Kresos v. White*, 47 Ariz. 175, 178–79 (1936).

Ultimately, neither Defendant disputes Plaintiffs' basic premise that the Legislature's explicit mention in the 1986 amendments of "writs of garnishment issued" *and* "proceedings that were begun" shows that the language protecting "rights and duties that matured" lacked sufficient clarity standing alone. *See Yates*, 69 Ariz. at 72. Further, neither Defendant disputes that the phrase "rights and duties that matured" has no settled legal meaning in this particular context and that Intervenor did not even attempt to provide a definition when it drafted the law.

Devoid of any context, the phrase does not provide debtors and creditors (or courts) any meaningful standard to guide their conduct. *See Adams v. Comm'n on App. Ct. Appointments*, 227 Ariz. 128, 135 (2011) ("[I]t is a 'fundamental principle of statutory construction (and, indeed, of language itself) that the meaning of a word

---

To be sure, if the Court rejects Plaintiffs' vagueness and unintelligibility arguments and ignores the inherent, irreconcilable conflict within the Savings Clause, Plaintiffs agree with the State that the judgment date is the most logical date for a judgment creditor's rights to mature under the first subpart of the Savings Clause. *See infra* Section III.

cannot be determined in isolation, but must be drawn from the context in which it is used.'" (citation omitted)).

None of these examples shed light on the meaning of the Savings Clause at issue in this case, and this Court should disregard them. Tellingly, even if considered, Defendants still cannot explain what the phrase "rights and duties that matured" actually means in this context.

2.      A Facial Challenge Is Available and Does not Require a Showing that the Savings Clause Is Vague in All Applications.

Defendants each oppose Plaintiffs' ability to bring a facial challenge to the Savings Clause. But their arguments—to the extent they are not waived—rely on outdated and distinguishable authority.

To start, the State's assertion (at 28) that facial vagueness challenges may not be available outside of the First Amendment was not raised before the superior court, so it is waived on appeal. *Barkhurst v. Kingsmen of Route 66, Inc.*, 234 Ariz. 470, 476 ¶ 22 (App. 2014). Even if the argument was not waived, it is incorrect.

While the State relies on federal authority (at 23–24), Arizona courts have held that "indefiniteness in *any* statute may constitute an unconstitutional denial of due process of law." *Cohen v. State*, 121 Ariz. 6, 9 (1978) (citation omitted). Indeed, *Cohen* declared invalid two statutes governing the certification of psychologists practicing in Arizona. *Id.* at 7. There is no suggestion in *Cohen* that the ability to

facially challenge a law's indefiniteness should be limited to violations of the First Amendment.

Federal courts also do not support the State's position. The United States Supreme Court has allowed facial challenges outside of the First Amendment context, without requiring a showing that the statute is vague in all of its applications. *See United States v. Johnson*, 576 U.S. 591, 602 (2015) (striking down statute on its face even though "some conduct . . . clearly [fell] within the [statutes'] grasp"); *Sessions v. Dimaya*, 138 S. Ct. 1204, 1214 n.3 (2018) (similar). A plurality of the United States Supreme Court entertained facial vagueness challenges to statutes (like Prop 209) that lack a *mens rea* requirement. *See City of Chicago v. Morales*, 527 U.S. 41, 55 (1999) (plurality opinion). The uniting theme behind these cases is a "special consideration" for the "high risk that a law is unconstitutionally vague under the second prong of the void-for-vagueness test—the law is so indefinite or standardless that it allows or encourages arbitrary or discriminatory enforcement." *United States v. Stupka*, 418 F. Supp. 3d 402, 409–10 (N.D. Iowa 2019) (collecting cases); *see also Kolender v. Lawson*, 461 U.S. 352, 358 (1983) (the arbitrary enforcement prong is "the more important aspect of the vagueness doctrine"). A "vague law is no law at all," *Davis*, 139 S. Ct. at 2323, so Plaintiffs do not need to

21

meet the "no set of circumstances" test applicable in other contexts, *see Local 8027 v. Edelblut*, --- F. Supp. 3d ----, 2023 WL 171392, at *11 (D. N.H. Jan. 12, 2023).[6]

In addition to the lack of a *mens rea* requirement, the concern for arbitrary or discriminatory enforcement is especially acute here. As *Planned Parenthood v. Brnovich* demonstrates, when individuals are governed by conflicting statutory directives and face penalties for violating those directives, trying to apply the laws "would not merely invite arbitrary enforcement, it would practically demand it." 254 Ariz. at 268 ¶ 20. Laws that invite—or demand—arbitrary enforcement are void. *Id.* As demonstrated by the conflicting orders in post-judgment enforcement actions across Arizona cited above, arbitrary enforcement is present and ongoing.

Citing *Fann v. State*, Intervenor argues (at 6) that the "no set of circumstances" standard applies to this case. But *Fann* did not involve a void-for-vagueness challenge at all; instead, *Fann* dealt with challenges to a new income tax surcharge based on the Education Expenditure and Tax Enactment Clauses of the

---

[6] Courts have also entertained facial challenges where "exceptional circumstances" are present. *Copeland v. Vance*, 893 F.3d 101, 111 n.2 (2d Cir. 2018). Exceptional circumstances exist where laws do "lend themselves easily to a traditional as-applied analysis." *Kashem v. Barr*, 941 F.3d 358, 377 (9th Cir. 2019). Given the low dollar amount at issue in most of these cases, coupled with the rapid pace of post-judgment enforcement proceedings, the chances are high that post-judgment enforcement proceedings will evade appellate review and make it difficult (if not impossible) to follow a traditional as-applied analysis. *See* Pltfs.' Opening Br. at 40. Exceptional circumstances compel facial review here.

Arizona Constitution. 251 Ariz. 425, 430 ¶¶ 1–2 (2021). Intervenor also argues (at

7) that *Guerrero v. Whitaker* supports the "no set of circumstances" standard. But

*Guerrero* directly held that the "no set of circumstances" test was the "wrong legal

standard" because the United States Supreme Court has "expressly rejected the

notion that a statutory provision survives a facial vagueness challenge merely

because some conduct clearly falls within the statute's scope." 908 F.3d 541, 544

(9th Cir. 2018).[7]

Setting aside waiver, the State's argument that a facial vagueness challenge is

unavailable outside of the First Amendment is contrary to Arizona precedent.[8] It

---

[7] The State also relies on *Valle del Sol Inc. v. Whiting* to support application of "no standard of conduct" test. 732 F.3d 1006, 1020 (9th Cir. 2013). But *Valle del Sol* relied on *Alphonsus v. Holder*, 705 F.3d 1031, 1042 (9th Cir. 2013), which *Guerrero* overruled, 908 F.3d at 544 ("[W]e conclude that we applied the wrong legal standard in *Alphonsus*.").

[8] Recently, the Arizona Supreme Court stated that "in a typical facial challenge, we require the challenger to demonstrate that under no set of circumstances can the law be enforced in a constitutional manner." *AZ Petition Partners LLC v. Thompson*, --- P.3d -----, 2023 WL 4104100, at *4 (Ariz. 2023). But the Court went on to explain that standard is "relaxed" in the context of the overbreadth doctrine, *id.* ¶ 18, which is "logically related and similar" to the vagueness doctrine, *Kolender*, 461 U.S. at 358 n.8. Nothing in *AZ Petition Partners* speaks to whether Plaintiffs must prove the Savings Clause is vague in all of its applications, a concept that has been repudiated by the United States Supreme Court. *See Johnson*, 576 U.S. at 602; *Dimaya*, 138 S. Ct. at 1204. Regardless, it is axiomatic that when a "law is so indefinite or standardless that it allows or encourages arbitrary or discriminatory enforcement," *Stupka*, 418 F. Supp. 3d at 409–10, there are no circumstances in which that law can be enforced in a constitutional manner. *AZ Petition Partners* does not require Plaintiffs to meet the "no set of circumstances" standard here.

fares no better under federal cases, which allow facial vagueness challenges when (as is the case here) the concern for arbitrary enforcement is particularly acute. This Court should reject Intervenor's attempt to resurrect this incorrect standard.

3.    <u>Arizona Law Does Not Tolerate Vague Laws that Subject Individuals to Penalties.</u>

Despite the Savings Clause's extraordinary level of ambiguity, there is a high price for guessing wrong. Defendants attempt to minimize the penalties associated with Prop 209 by claiming that they are not that bad or nonexistent. To the contrary, recent Arizona precedent supports the principle that citizens cannot be forced to guess between two conflicting statutory guidelines when there are penalties for getting it wrong.

*a.*    *The Penalties Associated with Misapplying Prop 209 Are Significant.*

No party disputes that debts collected in violation of state law, including when Prop 209 is applied when it should not have been (and vice versa), would expose collectors to liability under the FDCPA or that mere litigation conduct can form the basis of a claim under the FDCPA. *See Kaiser v. Cascade Cap., LLC*, 989 F.3d 1127, 1136 (9th Cir. 2021). Outside the FDCPA, violating Prop 209 exposes violators subject to sanctions and potential liability for abuse of process or conversion. *See* Pltfs.' Opening Br. at 10 n.3. The State attempts to minimize the significance of this exposure.

24

Specifically, the State contends (at 38) that the FDCPA is not really a strict liability statute because it provides a "bona fide error" defense. No party raised the issue of the "bona fide error" defense below, so it is waived on appeal. *Barkhurst*, 234 Ariz. at 476 ¶ 22. But a bona fide error defense is not the same thing as a scienter requirement. *Kaiser*, 989 F.3d at 1135 (refusing to adopt a "knew or should have known" standard for the FDCPA because "that would create a scienter requirement, which is incompatible with strict liability" (citing cases)).

In any event, the FDCPA's bona fide error defense is no panacea. To begin, whatever affirmative defenses are available to Plaintiffs does not alter what a judgment debtor must prove to establish an FDCPA claim. And, as the State acknowledges, the defense requires a showing that a collector maintained "procedures reasonably adapted to avoid" the error. 15 U.S.C. § 1692k(c). Thus, to prove it violated the FDCPA because of a "bona fide error," each debt collector must formulate reasonable procedures to properly apply Prop 209. Because the AOC, Arizona's judicial officers, and the Defendants cannot agree on how Prop 209 applies, Plaintiffs cannot possibly develop such procedures.

After being sued, each collector must expend hours of labor gathering and disclosing those policies, procedures, and training related to the alleged error. It is akin to a merchant undergoing a tax audit each time they are accused of inadvertently returning incorrect change. Only after the court hearing the FDCPA case agrees that

the error was bona fide, will a debt collector be held not liable under the FDCPA. Bona fide error defenses are a last resort, lead to exorbitant attorneys' fees, and are one of the most expensive decisions a debt collector can make. Given the significant penalties on the line, due process does not tolerate the Savings Clause's conflicting instructions. It must be declared void for vagueness as a result.

> b. *The Penalties for Applying Prop 209 Incorrectly Justify a Stringent Vagueness Standard.*

To avoid dealing with Plaintiffs' liability under the FDCPA for guessing wrong, Defendants argue that the traditional vagueness standard does not apply here.

<u>First</u>, the State now takes the position (at 21–22) that the vagueness doctrine does not apply to the Savings Clause because it is not a "penal law that proscribes or requires specific conduct." Not only is this argument new, and thus waived on appeal, *Barkhurst*, 234 Ariz. at 476 ¶ 22, but it should also be rejected on the merits.

As noted above, Arizona courts broadly apply vagueness challenges as "indefiniteness in *any* statute may constitute an unconstitutional denial of due process of law." *Cohen*, 121 Ariz. at 9. Nothing in *Cohen* suggests that the ability to challenge a law's indefiniteness on its face should be limited to penal laws.[9]

---

[9] The State's allegation that Plaintiffs (at 26) did not cite a case applying the vagueness doctrine to a "non-penal" law (as defined by the State) is wrong. In the TRO before the superior court, Plaintiffs cited *Cohen*. *See* APP-0062.

Not a single case cited in the State's lengthy discussion holds that the void-for-vagueness doctrine is inapplicable when violation of a civil statute results in penalties. *See* State's Br. at 22–27. For example, *Witzke v. Idaho State Bar* involved a challenge to rules governing an applicant's character and fitness to practice law in Idaho. 2023 WL 3394925, at \*5 (D. Idaho May 11, 2023) ("Rule 215(a) lists the actions the Board may take after receiving a recommendation from the CF Committee. Rule 215(f)(1) establishes the procedures for scheduling and appearing at a show cause hearing."). *Nyeholt v. Secretary of Veterans' Affairs* concerned a challenge to a diagnostic code "addressing disabilities of the liver" for purposes of a disability rating. 298 F.3d 1350, 1351 (Fed. Cir. 2002). And *Beckles v. United States*, which the State discusses at great length, dealt with federal sentencing guidelines used to enhance a sentence. 580 U.S. 256, 265 (2017). But the Savings Clause is not a procedural rule, a diagnostic code, or anything like it. The Savings Clause purports to define the standard for lawful collection efforts in Arizona, and collections in violation of that purported standard are penalized.

The State argues (at 26) that Prop 209 does not regulate conduct or impose penalties. Even under the State's cases, however, the operative inquiry is whether the Savings Clause "define[s] the lawfulness of conduct or speech." *Nyeholt*, 298 F.3d at 1356. Debts collected in violation of state law expose collectors to liability under the FDCPA, and the Savings Clause defines the manner in which debts may

27

be lawfully collected. In sum, the Saving Clause "forbids . . . . the doing of an act"—collecting debt under prior law—"in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application." *Connaly v. Gen. Constr. Co.*, 269 U.S. 385, 391 (1926).[10]

At bottom, the State's real gripe about Plaintiffs' position appears to be that the standard of conduct required, and the penalties imposed are not in the same statute. But there is nothing strange or novel about a court considering statutes on related, interlocking subjects. Courts read statutes "in conjunction with other statues to the end that they may be harmonious and consistent." *State ex rel. Larson v. Farley*, 106 Ariz. 119, 122 (1970); *see also Manning v. Caldwell*, 930 F.3d 264, 273 (4th Cir. 2019) (considering two different statutes together where "[a] civil interdiction order under Virginia Code § 4.1-333 is a necessary predicate for imposing the increased criminal penalties set forth in the other statutes addressing interdiction"). Interestingly, the State never appears to consider how the FDCPA and the Savings Clause work together to set up a standard (albeit, a hopelessly vague

---

[10] The State alternatively claims (at 32) that the Savings Clause is not standardless, because it "provides two alternative courses of conduct—apply the old law, or apply the new law." But this obfuscates the issue. Neither Defendant explains the way litigants (or courts) can decide *how* to choose between these two alternative courses of conduct without facing the untenable risk of liability under the FDCPA or state law. Without a valid choice between two alternatives, and penalties on the line, the Savings Clause has no ascertainable standard.

28

one) and impose a penalty for not adhering to that standard. The vagueness doctrine applies to those circumstances. *See, e.g.*, *Exxon Corp. v. Busbee*, 644 F.2d 1030, 1032 (5th Cir. 1981) (applying the vagueness doctrine to a "nonpenal, commercial regulatory statute" which prohibited predatory practices in agreements between gasoline distributors and dealers but ultimately upholding the statute). As a result, the State's cursory assertion that the Savings Clause does not regulate conduct should be rejected.

Second, Intervenor does not dispute that Prop 209 is subject to a vagueness challenge. Instead, it asks (at 26) this Court to apply a watered-down version of the vagueness doctrine generally applicable to economic regulation. In Intervenor's view, Plaintiffs should have "consult[ed] relevant legislation" beforehand. Here, Plaintiffs made every effort to seek clarity when they requested guidance from AOC. The AOC failed to provide any guidance.

Regardless, Intervenor is incorrect that civil laws categorically receive the most lenient vagueness test. While some regulations may receive a lenient review, a court should more intensely scrutinize laws with severe penalties. *See Batty v. Ariz. Med. Bd.*, 253 Ariz. 151, 156 ¶ 19 (App. 2022) (the degree of vagueness that due process tolerates turns on the nature of the penalty); *see also Dimaya*, 138 S. Ct. at

29

1229 (Gorsuch, J., concurring) (explaining that the severity of today's civil penalties warrants at least the same vagueness review not less).[11]

Plaintiffs face significant strict liability penalties for not adhering to what the Savings Clause requires. The problem is that Plaintiffs cannot determine what those requirements are. Averting this kind of arbitrary enforcement is the very reason for the vagueness doctrine's existence, and the magnitude of the penalties warrants stringent review.

> c. *Because Misapplication of Prop 209 Comes with Severe Penalties, It Must Be Declared Unconstitutional.*

This Court has recently explained that citizens cannot be expected to guess between two distinct statutory regimes with penalties hanging over their heads. *Planned Parenthood*, 254 Ariz. at 407 ¶ 20. In *Planned Parenthood*, doctors who provided, supplied, or administered abortions were governed by two sets of statutes: one allowing abortions under certain circumstances; the other criminalizing abortion in nearly every circumstance. *Id.* at 403 ¶¶ 1, 4. The attorney general argued that

---

[11] Intervenor's suggestion (at 26–27) that the *Flipside* and *Whatley* cases only stand for the proposition that "a scienter requirement may *mitigate* a law's vagueness" is incomplete. Because Prop 209 does not contain a scienter requirement, it must pass a heightened standard of vagueness review. *Planned Parenthood of Ind. & Ky., Inc. v. Marion Cnty. Prosecutor*, 7 F.4th 594, 603 (7th Cir. 2021) (vagueness concerns are "heightened when the statute contains no *mens rea* requirement" (citation omitted)); *accord State v. Boyd*, 201 Ariz. 27, 30 ¶ 17 (App. 2001).

30

prosecutions under the criminal statutes should be permitted notwithstanding the overlapping statutes, but this Court rejected that reading. *Id.* at 406 ¶ 17.

Because providers would be governed by inconsistent statutes, "the resulting uncertainty for licensed physicians who provide abortion services would violate due process, which requires that 'the law must be sufficiently definite to avoid arbitrary enforcement.'" *Id.* at 407 ¶ 20 (citation omitted). This scheme "would not merely invite arbitrary enforcement, it would practically demand it." *Id.* Further, "physicians performing elective abortions would not know if their conduct would be criminally prosecuted . . . or if they could avoid liability by complying with Title 36." *Id.* ¶ 21. In other words, the Court could not adopt the attorney general's view because doing so would render the statutes unconstitutionally vague. *Id.* ¶ 20.

Rather than actually address this Court's discussion of vagueness principles in *Planned Parenthood*, Intervenor (at 28) superficially distinguishes it, purporting that it "does not concern the issue of alleged vagueness at all." This contention ignores that the Court rejected the attorney general's argument that "physicians may nevertheless be prosecuted" even if the conflicting statutes governing licensed abortion providers were harmonized. 254 Ariz. at 406 ¶ 17. As illustrated above, that argument was rejected on the basis of vagueness principles. *Id.* at 407 ¶¶ 20–21.

31

Intervenor's attempt to avoid this Court's reasoning in *Planned Parenthood* is unpersuasive; *Planned Parenthood* supports a conclusion that the Savings Clause is unconstitutionally vague.

## II.   THE SAVINGS CLAUSE IS UNENFORCEABLE AS UNINTELLIGIBLE.

A statute is unenforceable when it "is so incomplete or unintelligible that [courts] cannot divine its purpose and intent, or how to implement it." *State ex rel. Brnovich v. City of Phoenix*, 249 Ariz. 239, 247–48 ¶ 35 (2020). When a law gives citizens conflicting instructions about how to conduct themselves, the doctrine is "readily applicable." *See Scalia & Garner*, *supra*, at 134–39 (explaining that the unintelligibility canon "is readily applicable . . . when two provisions are irreconcilable"). "After all, if we cannot make a valid choice between two differing interpretations, . . . we are left with the consequence that a text means nothing in particular at all." *Id.* at 189 (internal citation and quotation marks omitted).

Intervenor does not contest that the Savings Clause leaves open a number of questions, including what types of contracts fall within its grasp, what courts should do in the event of an innocent but mistaken attempt to collect on a debt under preexisting law, or the procedures by which litigants can invoke the new law in post-judgment enforcement actions already underway. Intervenor simply claims (at 33) that these questions do not go to Prop 209's implementation. But that cannot be right. Courts implementing Prop 209 have dealt, are dealing, and will have to deal with all

32

of these issues. Consequently, Prop 209 leaves them in the dark. In any event, these open questions only compound the unintelligibility of the Saving Clause's irreconcilable instructions, which are sufficient on their own to apply the unintelligibility doctrine here. *Scalia & Garner*, *supra*, at 134–39.

As it did before the superior court, Intervenor focuses myopically (at 32–33) on *Peterson v. Sundt*'s statement that a court should not declare a statute unintelligible if it can "define the purpose and intent of the legislature." 67 Ariz. 312, 320 (1948). From there, Intervenor just regurgitates the first sentence of the Savings Clause as if that resolves the issue. Resort to purpose alone does not make the statute intelligible. There must still be a textual basis for the court to implement that purpose. *See City of Phoenix*, 249 Ariz. at 247 ¶ 35 (explaining that statutes "'must be prescribed in *terms* sufficient and definite to serve as a guide' for 'intelligent execution'" (citation omitted)) (emphasis added). But the unintelligible and contradictory provisions of the Savings Clause enable courts to arbitrarily pick and choose which cases the law applies to.

Both the State and the Intervenor fully embrace the reality that the judiciary has expressed nothing but confusion about the application of Prop 209 thus far, claiming inexplicably that this somehow shows that the law is intelligible and can be implemented. *See* Intervenor's Br. at 36; State's Br. at 44. But this argument overlooks two key points.

First, post-judgment enforcement actions are meant to be accessible to all litigants, including those representing themselves. That is why there are statutorily required forms for use in garnishment proceedings. *See* A.R.S. § 12-1598.16. But this system breaks down, and the forms are deprived of any utility, if courts are interpreting the Savings Clause in an arbitrary and contradictory manner. Second, Intervenor wrote this law and wrote the 100-word summary that told voters that Prop 209 did "not affect existing contracts." *See* APP-0267. The reality that some courts are applying Prop 209 to those contracts (because they view post-judgment enforcement actions as independent from those contracts) is directly contrary to what Intervenor and the 100-word summary told voters.

Even if this Court finds the Savings Clause survives the void-for-vagueness challenge, it remains so unintelligible as to be unenforceable.

## III. WITHOUT PROP 209'S SAVINGS CLAUSE, THE REMAINING PROVISIONS CANNOT SURVIVE.

For the first time on appeal, Intervenor argues (at 37) that any defects in the Savings Clause are severable. But, Intervenor admits (38–39) that they never made this claim in the superior court: "no party has proposed, even as an alternative argument, that the Savings Clause as a whole be severed." *See also* Pltfs.' Opening Br. at 50. Accordingly, Intervenor's arguments about severability are waived. *Barkhurst*, 234 Ariz. at 476 ¶ 22; *Am. Meat Inst. v. Pridgeon*, 724 F.2d 45, 47 (6th Cir. 1984) (arguments regarding severability of a statute may be waived).

34

Intervenor's untimely assertion of severability is also unpersuasive. Relying on *Citizens Clean Elections Commission v. Myers*, Intervenor argues (at 38) that the presence of a severability clause in Prop 209 means that "all doubts are to be resolved in favor of severability." 196 Ariz. 516, 523 ¶ 15 (2000). Severability clauses are "merely useful, not essential evidence of legislative intent." *Fann*, 251 Ariz. at 436 ¶ 51 (quoting *Norton v. Superior Court*, 171 Ariz. 155, 158 (App. 1992)). They do not erode courts' responsibility to ensure: (1) the valid portions of the law are workable, and (2) are not "so irrational or absurd as to compel the conclusion that an informed electorate would not have adopted one portion without the other." *Id.* ¶ 36 (citing *Randolph v. Groscost*, 195 Ariz. 423, 427 ¶ 15 (1999)). The Court must still undertake its ordinary severability analysis.

Under that analysis, Intervenor's argument distills to a conclusory assertion (at 39) that striking the Saving Clause's second sentence "would be consistent with the voters' intent as well as leaving the remainder of the Act 'enforceable and workable.'" This does not solve the problem for two reasons.

First, litigants and courts will still lack clear, uniform rules about whether Prop 209's applicability turns on the date of the underlying contract, the date of the underlying judgment, the date that a post-judgment enforcement proceeding began, or some other point during a post-judgment enforcement proceeding. The resulting inconsistency and lack of uniform prospective application means that the law cannot

35

accomplish its intended purpose or the "voter's will" without remedial action. *Fann*, 251 Ariz. at 436 ¶ 37.

Second, as a result of this inconsistency, at least some courts would apply Prop 209 to existing contracts. A well-informed electorate would not have approved a law applicable to existing contracts, when the approved law (and its 100-word summary) expressly included language intended to avoid that result. It fails the second prong of the severability analysis as a result. *Id.* ¶ 36.

Intervenor has waived any argument as to severability here. But even Intervenor's belated arguments fail on the merits. If the Savings Clause is found unconstitutional, Prop 209's remaining provisions are not severable.

## IV. PLAINTIFFS SATISFIED ALL REQUIREMENTS FOR AN INJUNCTION.

Plaintiffs established all requirements for a permanent injunction: (1) irreparable injury; (2) a balance of hardships favoring Plaintiffs; and (3) public policy weighing in favor of injunctive relief. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). Intervenor argues (at 40–41) that Plaintiffs have failed to demonstrate an irreparable injury. Intervenor's arguments fail for three reasons.

First, an infringement of Plaintiffs' due process rights is an irreparable injury that public policy favors remediating. *See Elrod v. Burns*, 427 U.S. 347, 373 (1976); *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012). Thus, no party disputes

the propriety of a permanent injunction if this Court agrees with Plaintiffs' constitutional arguments.

Second, the law refutes Intervenor's unsupported assertion that money can compensate Plaintiffs for their other harms, including loss of customers. Courts often hold that "[e]quitable relief may be appropriate to prevent a loss of customers." *See, e.g.*, *IB Prop. Holdings, LLC v. Rancho Del Mar Apartments Ltd. P'ship*, 228 Ariz. 61, 65 ¶ 12 (App. 2011) (citations omitted). Monetary damages that fail to "address the full harm suffered" by Plaintiffs are an inadequate remedy. *Id.* ¶¶ 10–11. Further, because the existence and magnitude of this harm threatens the viability of Plaintiffs' businesses, it is unquestionably irreparable. *See, e.g.*, *Semmes Motors, Inc. v. Ford Motor Co.*, 429 F.2d 1197, 1205 (2d Cir. 1970) ("But the right to continue a business in which William Semmes had engaged for twenty years . . . is not measurable entirely in monetary terms; the Semmes want to sell automobiles, not to live on the income from a damages award.").

Third, while Intervenor argues (at 40–41) invalidating Prop 209 would "undermine[] the will of the voters who approved the Act, and [strip] countless Arizonans of the protections of Proposition 209," that is true of every voter-approved initiative. Intervenor cannot run from courts' inconsistent applications of the law. Because Prop 209 is not being applied prospectively only—the express scope of application presented to voters and approved by them—its application undermines

37

their will. Similarly, because courts are treating Arizona's creditors and debtors in like circumstances differently, Intervenor's criticisms about stripping Arizonans of Prop 209's protections ring hollow. The law should be applied uniformly depending on what people do, not where they are. *See Fuenning v. Superior Court*, 139 Ariz. 590, 602 (1983); *see also Goldberger v. State Farm Fire & Cas. Co.*, 247 Ariz. 261, 268 ¶ 26 (App. 2019). The protections for debtors should be applied consistent with the will of the voters who passed Prop 209: to contracts entered into after the Effective Date.[12]

This Court should find that Plaintiffs satisfy all remaining requirements to obtain injunctive relief.

## V. ALTERNATIVELY, DECLARATORY JUDGMENT IS APPROPRIATE.

If this Court disagrees with or wishes to avoid Plaintiffs' facial challenges, this Court should issue a declaratory judgment explaining how courts and litigants can uniformly apply Prop 209. In their opening brief, Plaintiffs advocate for two different declarations, one consistent with the relief requested in the superior court

---

[12] While the State flatly asserts (at 47) that invalidating Prop 209 would not be in the public interest, this ignores the ballot materials presented to voters. Those materials promised voters that the law would be applied prospectively only and would not affect existing contracts. What voters got instead was chaos, with some courts applying Prop 209 to existing contracts. Resolving this widespread confusion is in the public interest.

and a new formulation based on new Supreme Court guidance interpreting Prop 209.

Despite Defendants' objections, either is appropriate.

### A.   Plaintiffs' Request for Declaratory Relief Is Appropriate.

Plaintiffs ask that this court declare that preexisting law applies to: (a) contracts entered into before the Effective Date and (b) post-judgment enforcement actions based on contracts entered into before the Effective Date, regardless of when the underlying judgment was entered; and that Prop 209 would apply to (c) contracts (or judgments unrelated to contracts) entered into after the Effective Date. *See* APP-0027–28 ¶ 110. Under this formulation, judgment date and contract date—two readily ascertainable and identifiable dates would serve as alternative triggers under subpart one and subpart two of the Savings Clause.[13]

Ironically, despite Intervenors' insistence that Plaintiffs' suggested declaration would require a rewrite of the statute, Intervenor's newly proffered interpretation of the Savings Clause actually comports with this requested relief. Essentially, the requested relief would mean that the different provisions of the

---

[13] There are benefits to this formulation aside from clarity. For example, by applying the contract date or the judgment date there is no risk of eliminating any accrued rights in derogation of A.R.S. § 1-249, which generally prohibits legislation from eliminating accrued rights. *See, e.g.*, *Brunet v. Murphy*, 212 Ariz. 534, 539–40 ¶¶ 18–25 (App. 2006) (holding that amendments to Adult Protective Services Act could not deprive a plaintiff of an accrued claim under preexisting law); *see also McCullough v. Virginia*, 172 U.S. 102, 123 (1898) (the right to collect on a money judgment vest, and thus necessarily has accrued, upon entry of the judgement).

Savings Clause are alternative, non-exclusive grounds to exempt a proceeding from Prop 209. Intervenor expressly agrees:[14] "In different circumstances, one or more of these subparts will apply. If any of them establishes that the Act does not affect the particular issue being evaluated, then the Act does not affect it." Intervenor's Br. at 22–23; *see also* APP-0093–95 at 23:3–25:17, APP-0098–99 at 28:21–24, 29:13–14.[15] Even the State appears to agree that the contract date and judgment date are the relevant triggers under the Savings Clause: "If one order relates to a case involving a contract entered into before Prop 209's effective date, and another to a case involving a contract entered into after the effective date, the rationale for applying Prop 209 in one case and not the other would be entirely consistent." *See* APP-0554–555. *See also* State's Br. at 35 (stating "substantive rights and duties of parties to a garnishment proceeding are dependent upon the prior action and judgment"). Because there is no real disagreement between the parties regarding when Prop 209

---

[14] Apparently forgetting this argument, Intervenor now argues (at 44) that adoption of Plaintiffs' proposed declaration would be a change in the law as currently being applied. But to make this argument Intervenor cherry picks a singular order from the several conflicting orders presented by Plaintiffs, and ordains its reasoning as controlling here.

[15] Intervenor misconstrues Plaintiffs' citation to *State v. Estrada*, 201 Ariz. 247, 250 ¶ 15 (2011). *Estrada* is an example of a court providing an explanation of what circumstances a ballot proposition should be interpreted to apply to. *Id.* at 253 ¶ 24. That is all Plaintiffs ask here.

should apply to a contract or judgment, the Court should harmonize these positions and adopt the declaratory judgment Plaintiffs' request.

Intervenors argue (at 41–45) that a declaratory judgment in this case would amount to an impermissible advisory opinion. Not so. Creating a uniform interpretation of a law when there is none is directly supported by the text of the Uniform Declaratory Judgments Act. *See* A.R.S. § 12-1842 ("[The] purpose [of this article] is to settle and to afford relief from uncertainty and insecurity with respect to rights, status and other legal relations; and is to be liberally construed and administered."); A.R.S. § 12-1845 ("This article shall be so interpreted and construed as to effectuate its general purpose to make uniform the law of those states which enact it . . . ."). Unfortunately, courts and litigants are not applying Prop 209 uniformly, so a declaration is necessary.

Nor are Plaintiffs asking the Court to change what the Savings Clause says. Rather, Plaintiffs request that if the Court gives the statute a constitutional construction, this Court harmonize the apparently conflicting language in the Savings Clause to explain *how* it reaches a constitutional construction. *See State v. Johnson*, 243 Ariz. 41, 43 ¶ 8 (App. 2017) (noting that courts will, when possible, give the statute a constitutional meaning). Quite simply Plaintiffs are looking for a single interpretation of the Savings Clause so that they can avoid the attendant

liability under the FDCPA, sanctions, and other claims that will be brought without that interpretation.

In opposition, the State fixates (at 44–45) its entire argument on Plaintiffs' decision to narrow its request for declaratory relief. As explained in their opening brief, Plaintiffs chose to omit part of its previously requested declaratory relief (regarding when a non-contract action's rights and duties mature) because it appeared to distract the Intervenor, Defendant, and the superior court from the heart of the issue presented: the Savings Clause's internal conflict. To avoid this confusion, Plaintiffs focus their present request for declaratory relief on Prop 209's application to contractual debt, which is the subject of the majority of cases causing a lack of uniformity in the courts.

For these reasons, and those in the opening brief, Plaintiffs respectfully request that if this Court does not invalidate Prop 209, it should grant Plaintiffs' request for declaratory relief.

**B.    This Court May Alternatively Declare that Prop 209 Does Not Apply to Contractual Debt at All.**

Although the Arizona Supreme Court issued a decision order regarding placing Prop 209 on the ballot before the 2022 election, it did not issue its opinion *Protect Our Arizona* explaining how it reached its decision until early 2023.

In *Protect Our Arizona*, the Supreme Court considered whether the 100-word summary was misleading for stating that it did not "change existing law regarding

secured debt." 522 P.3d 678 at ¶¶ 18–21. The Court reasoned that because Prop 209 does not affect any "debts secured through voluntary financing arrangements," it was not misleading. *Id.* As such, if Prop 209 does not affect voluntary debt and all contracts are entered into voluntarily, it follows that Prop 209 does not apply to contractual debt at all. *See id.* at ¶ 20 (noting that contracts are "themselves voluntarily entered into"). This outcome was surprising, as no party in that case (or this one) advocated for that rationale.

The State and Intervenor make five attempts to discount or distinguish Plaintiffs' reading. None persuade.

<u>First</u>, the State argues (at 18–19) that the Court should not even consider Plaintiffs' argument that Prop 209 does not apply to contractual debt at all because it was not raised below and, thus, was waived. But Plaintiffs' argument relies entirely on the Arizona Supreme Court's interpretation of Prop 209 in *Protect Our Arizona*. Specifically, this opinion was not available until *after* the superior court issued its Verdict in this case. It is inconceivable that a subsequent Supreme Court opinion interpretating the law at issue in a separate appellate case that is pending cannot be referenced. Accordingly, this Court should exercise its discretion and consider this argument not previously available to the parties. *See Baldino v. Greenberg Traurig, LLP*, 2015 WL 157250, at *2 ¶ 9 (Ariz. Ct. App. 2015) (reasoning that new arguments raised in a notice of supplemental authority can be considered so long as

43

they were not previously available); *34 Degrees North LLC v. Mountain View Constr. LLC*, 2016 WL 7209664, at *5 ¶ 24 (Ariz. Ct. App. 2016) (exercising its discretion and denying a motion to strike new arguments not previously considered by the trial court).

Second, the State (at 19) argues that Plaintiffs have misread *Protect Our Arizona* because the medical debt addressed by A.R.S. § 44-1201 may arise from sources other than contract. However, the State does not contest that the vast majority of applications under A.R.S. § 44-1201, which governs all indebtedness not just medical debt, will be contractually based. By holding that Prop 209 does not change existing law regarding secured debt and failing to mention A.R.S. §44-1201 (a statute amended by Prop 209 and applicable to contractual debt), the Supreme Court has already indicated that the Savings Clause has no prospective *or retrospective* effect on contractual debt.

Third, Intervenor argues (at 46) that the Supreme Court's silence on A.R.S. § 44-1201 is not a ruling in this case. But Plaintiffs never presented the Supreme Court's silence as a holding. Rather, Plaintiffs argued that the Supreme Court did not interpret Prop 209 as changing anything about A.R.S. § 44-1201, which applies to existing contracts. If the Supreme Court believed it had, the 100-word summary explaining that it did *not* change existing law regarding secured debt would have been false and misleading. In the end, Intervenor does not dispute that basic premise.

44

Fourth, the State (at 20) argues that if the Prop 209 did not impact contracts at all, there would be no reason to specify "existing contracts" in its opinion. Not only are the Supreme Court's references to "existing contracts" quotes of either the 100-word summary or the Savings Clause, but its references to "existing contracts" actually support Plaintiffs' argument. Namely, the Supreme Court explained that "just as the initiative '[d]oes not affect existing contracts' regarding debt, . . . the initiative does not affect the law regarding how secured transactions are voluntarily attached, perfected, and enforced." *Id.* at ¶ 20. Unlike the first half of the sentence, the Supreme Court did not qualify the second part regarding voluntary debts (including contractually secured debt) to include only debts flowing from *existing* contracts. Accordingly, Prop 209 cannot apply to existing contracts or *any* voluntary debts that flow from existing or forthcoming contracts.

Fifth, the State (at 21) ultimately casts the Supreme Court's analysis as *dicta*. Plaintiffs conceded this in their opening brief. What the State does not contest, however is, even as *dicta*, the Supreme Court's pronouncement on Prop 209's applicability regarding voluntarily secured debt is a persuasive interpretation that courts should consider, especially when weighing the vagueness or unintelligibility of the law. Indeed, a conclusion otherwise would mean that Prop 209 *does* apply to voluntarily secured debt and that the 100-word summary was misleading. It is

45

Case 3:23-bk-06089-DPC   Doc 16   Filed 11/09/23   Entered 11/09/23 11:47:18   Desc
Main Document      Page 140 of 157

incredulous to not reference a Supreme Court case interpreting the meaning of the statute that is subject to a constitutional vagueness claim.

For all these reasons, the Court can and should exercise its discretion to consider this argument and either declare that the law is unconstitutionally vague or, in the alternative, that Prop 209 does not apply to contractual debt prospectively or retrospectively.

## VI.  **CONCLUSION**

Although Defendants repeatedly assert that the phrase "rights and duties that have matured" has a meaning that makes Prop 209's application clear, neither of them are able to tell the Court or Plaintiffs (who actually deal with these issues) what that meaning is. Instead, they try to avoid this whole challenge altogether by hiding from what voters were told and how courts are applying the Savings Clause in a wildly contradictory manner. This Court should not let Defendants avoid the issue while creditors, debtors, and courts across Arizona are left to pick up the pieces, and at great expense. The superior court should be reversed, and this Court should remand with instructions to enjoin Prop 209 in its entirety.

46

## ANSWERING BRIEF ON CROSS-APPEAL

In a last-ditch attempt to avoid the merits, the State and Intervenors cross-appealed, arguing that Plaintiffs' claims are not justiciable because their injuries are allegedly too hypothetical. Regardless of the fact that Plaintiffs' injuries are not hypothetical based on the contrary and conflicting application of Prop 209 in courts across Arizona, *see supra* Reply Br. Section I.B. Defendants' standing arguments simply cannot overcome the procedural context in which they were raised: as a Rule 12(b)(6) motion to dismiss. In that context, courts (as the superior court did below) must accept Plaintiffs' allegations as true. Defendants' disagreements with Plaintiffs' allegations are legally irrelevant here.

But Plaintiffs have done more than adequately alleged standing. Although Defendants castigate Plaintiffs' claims as hypothetical (which they are not), the law does not require Plaintiffs to await prosecution before bringing their claims. Even more importantly, Plaintiffs have ticked through a laundry list of individualized harms that have (and continue to) affect them since the moment Prop 209 became effective. Ranging from financial loss to the inability to continue operating their businesses, the consequences of Prop 209's vagueness are real and potentially devastating.

Finally, unlike in federal court, standing in Arizona is a prudential doctrine. Given the importance of the issue, and the complete divergence of courts across the

47

State, the need for a uniform interpretation of the Savings Clause compels a determination on the merits.

This Court should affirm Plaintiffs' standing to bring their facial challenge.

## I. PLAINTIFFS HAVE STANDING TO BRING A FACIAL CONSTITUTIONAL CHALLENGE.

Defendants' justiciability arguments arise from their motions to dismiss Plaintiffs' claims. APP-0118–122, APP-0139–146. The superior court correctly denied these motions. APP-0407–408. The superior court reasoned that Plaintiffs sufficiently pled a justiciable claim by alleging (1) that the "terms within [Prop 209] are subject to varying interpretations and/or meanings," (2) "that Prop 209 does not reasonably define exactly what conduct is prohibited," and (3) that Plaintiffs "have been harmed—and will be harmed—by the uncertainty and confusion arising out of the new statutory scheme." *Id.* (quoting *State v. Mutschler*, 204 Ariz. 520, 523 (App. 2003), APP-0009 ¶ 11, and APP-0020–21 ¶ 63 (internal quotation marks omitted)). This Court should adopt the superior court's correct analysis and affirm the dismissal of Defendants' motions to dismiss.

Standing and ripeness are "prudential doctrine[s] that prevent[] a court from rendering a premature decision on an issue that may never arise." *Brush & Nib Studio, LC v. City of Phoenix*, 247 Ariz. 269, 280 ¶ 36 (2019). If concerns underlying standing and ripeness are the same, the court will consider them together. *Id.* at 279–80 ¶ 35. Cases are justiciable "if the plaintiff has incurred an injury" or "if there is

48

an actual controversy between the parties." *Id.* at 280 ¶ 36. Generally, only one plaintiff needs standing for a claim to proceed. *Mecinas v. Hobbs*, 30 F.4th 890, 897 (9th Cir. 2022).[16]

The superior court correctly recognized that, in a facial vagueness challenge, a plaintiff has standing if it alleges that "terms within the [statute] are subject to varying interpretations and/or meanings" and it "can reasonably be argued that the [statute] does not reasonably define exactly what conduct is prohibited." *Mutschler*, 204 Ariz. at 523 ¶ 5; *see also Lisa K. v. Ariz. Dep't of Econ. Sec.*, 230 Ariz. 173, 177 ¶ 7 (App. 2012) (noting that "the challenge to the facial constitutionality of a statute requires only an inquiry into whether the law itself is unconstitutional" (quoting *Hernandez v. Lynch*, 216 Ariz. 469, 472 ¶ 8 (App. 2007)).

It is true (as Defendants contend) that this Court reviews justiciability questions *de novo*. *Brush & Nib Studio*, 247 Ariz. at 279 ¶ 34. But because Defendants challenged standing through motions to dismiss, this Court must "assume the truth of all well-pleaded factual allegations and indulge all reasonable inferences from those facts." *Coleman v. City of Mesa*, 230 Ariz. 352, 355–56 ¶¶ 7–9 (2012). Assuming the truth of Plaintiffs' well-plead allegations and applying

---

[16] "Though federal justiciability jurisprudence is not binding on Arizona courts," it can be instructive. *Fann*, 251 Ariz. at 432 ¶ 12.

*Mutschler*—which neither Defendant disagrees with, distinguishes, or even cites—the superior court correctly held that Plaintiffs alleged sufficient facts to establish standing. APP-0407–408.

Plaintiffs' Verified Complaint meets this standard by alleging that the Savings Clause is subject to varying, non-uniform interpretations by the people it governs. APP-0006–23 ¶¶ 3–10, 46–74. Plaintiffs actually exceeded *Mutschler*'s requirements by demonstrating that the AOC had already published conflicting guidance about Prop 209's application to garnishment actions, advising that it is "unclear" and subject to varying interpretations: "a judicial officer may impose the new lower rates based on their reading of Prop[] 209" while "another judicial officer may impose the higher garnishment rates for contracts . . . based on their interpretation." APP-0007–8, APP-0348–355. Assuming the truth of these allegations and the reasonable inferences that flow from them, Plaintiffs easily clear Arizona's justiciability hurdle.

Intervenor's contrary arguments cannot be squared with *Mutschler* or *Coleman*, which undisputedly controls the justiciability analysis here. Intervenor complains (at 10, 13) that Plaintiffs' allegations are too speculative, "entirely made up" or an "invented set[] of facts." But these criticisms ring hollow where the court must assume the truth of these well-pled allegations. *Coleman*, 230 Ariz. at 355–56 ¶¶ 7–9. Intervenor (at 8) also seems to confuse standing with the differences between

50

facial and as-applied challenges. Indeed, Intervenor argues that there is no standing because the "Court is not being asked to decide whether Proposition 209's debt protections apply to a particular debt." Intervenor's Br. at 8. If this Court adopted Intervenor's unreasonable reading, no party would ever be able to bring a facial challenge. Courts do not require Plaintiffs to prove specific facts for their facial challenge. *Mills v. Ariz. Bd. of Tech. Registration*, 253 Ariz. 415, 424 ¶ 27 (2022); *Lisa K.*, 230 Ariz. at 177 ¶ 7.

The State (at 49), on the other hand, cites to federal authorities not raised before the superior court to now argue that an entirely different standard applies to pre-enforcement constitutional challenges. (citing *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014)). This Court "generally do[es] not consider arguments and legal issues on appeal that have not been specifically presented to the superior court." *Barkhurst*, 234 Ariz. at 476 ¶ 22. Accordingly, this Court should find that the State waived this new legal argument by not raising it with the superior court.

Even if the argument was properly raised, Plaintiffs' claims meet the *Susan B. Anthony* test. This test requires that Plaintiffs demonstrate (1) "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute," and (2) "a credible threat of prosecution thereunder." *Susan B. Anthony List*, 573 U.S. at 159. Here, Plaintiffs challenge the constitutionality and

intelligibility of Prop 209's Savings Clause. The Savings Clause governs how Plaintiffs may collect debt: using the higher withholding amounts available under prior law or the lower withholding amounts imposed by Prop 209. However, based on the plain language of the statute, Plaintiffs cannot determine when Prop 209 applies and have already experienced non-uniform application of the law to factually similar circumstances. *See supra* Reply Br. Section I.B. Thus, the non-uniform application of the law means that Plaintiffs have been, and will continue to be, found to have collected a debt in violation of state law simply because they cannot predict how the particular judge will feel about Prop 209 on that specific day. This violates Plaintiffs' constitutional due process rights. *See supra* Reply Br. Section I.

The threat Plaintiffs face is present and ongoing. There were tens of thousands of post-judgment enforcement actions pending in state courts alone as of the effective date. APP-0403. An adverse order in any one of these cases could result in an expensive and time-consuming FDCPA action brought by the debtor. *See supra* Reply Br. Section I(C)(3)(a).

Accordingly, Plaintiffs have sufficiently demonstrated that they have and intend to continue to engage in conduct proscribed by the statute and that this conduct is impacting their due process rights. Further, Plaintiffs have a credible threat of prosecution from a debtor under the FDCPA.

II.  **THE PRE-ENFORCEMENT CHALLENGE TO PROP 209 PRESENTS AN ACTUAL CONTROVERSY.**

A plaintiff does not need to demonstrate an actual injury for a claim to be justiciable if "an actual controversy exists between the parties." *Mills*, 253 Ariz. at 424 ¶ 29. If a claim "relate[s] to an existing threat" or the "right to be clearly advised about what" the law proscribes, an actual controversy exists. *Id.* at 424–25 ¶ 30; *see also Ariz. Ass'n of Providers for Persons with Disabilities v. State*, 223 Ariz. 6, 13 ¶¶ 17–18 (App. 2009) (per curiam) (reasoning "threat" of harm is sufficient for standing to prevent a future injury).[17] Moreover, an actual controversy will exist when allegations demonstrate that there is a "real and present need to know whether the pertinent statutes are constitutional." *Mills*, 253 Ariz. at 424 ¶ 30.

The Arizona Supreme Court recently found that, in a pre-enforcement facial challenge to voter initiatives, an actual controversy exists as of the initiative's effective date. In *Fann v. State*, a group of plaintiffs challenged Proposition 208 as unconstitutional. 251 Ariz. at 430 ¶ 1. The court held that the challenge was ripe and a "present controversy." *Id.* at 432 ¶¶ 12–14. It reasoned that, because plaintiffs were subject to the tax as of the effective date, the law also affected their property rights

---

[17] Despite the State's invocation of *Susan B. Anthony List* standard to all pre-enforcement challenges, they cite to no Arizona case applying this standard. Notably, in 2022, the court in *Mills* held Plaintiffs had standing to bring a pre-enforcement constitutional challenge and did *not* apply the *Susan B. Anthony List* standing standard. *See generally Mills*, 253 Ariz. at 923–25 ¶¶ 23–32.

as of the effective date, even though no tax had been paid and no tax dollars had been spent. *Id.*

Like the unconstitutional tax in *Fann*, as of Prop 209's "effective date, the [unconstitutionally vague] statute began clearly and immediately affecting" Plaintiffs' constitutional due process rights and "a present controversy regarding the validity of the statute exists." *Id.* Similarly, because Prop 209's changes to the exemption amounts began affecting Plaintiffs' property rights by decreasing the availability and amount of assets subject to Plaintiffs' hundreds of ongoing and future post-judgment enforcement actions on December 5, 2022, an actual controversy existed as of that date. APP-0009 ¶ 11, APP-0010–11 ¶¶ 13–18, APP-0042 ¶¶ 11–15 (noting Plaintiffs' ongoing collection actions).

Intervenor (at 10, 13) argues that Plaintiffs do not present a justiciable controversy because their "only alleged harms are potential future harms contingent on a chain of events that may or may not occur." But the actual controversy requirement does not require plaintiffs "to await prosecution." *Mills*, 253 Ariz. at 424 ¶ 30. Rather, the inquiry "turns on 'whether the plaintiffs face a *realistic danger* of sustaining a direct injury as a result of the *statute's operation or enforcement*.'" *Flower World, Inc. v. Sacks*, 43 F.4th 1224, 1229 (9th Cir. 2022) (citation omitted) (emphasis added). Here, Plaintiffs have adequately pled (and ultimately demonstrated through non-uniform applications of Prop 209 across the state) that

Prop 209 is subject to differing interpretations. APP-0007–08 ¶¶ 6–7, APP-0020–21 ¶¶ 63–64, APP-0348–355, APP-0394–400, APP-0412–478, APP-0482–539. And no party disputes that the FDCPA imposes financial penalties on a strict liability basis if a debt collector seeks to recover the wrong amount of debt.[18] Accordingly, Plaintiffs face a realistic threat of injury as a result of Prop 209's non-uniform application.

The State (at 51) asserts that Plaintiffs' standing is somehow undercut because they are not parties to *any* of the cases included in the Appendix. To the contrary, nearly every pleading comes from a member firm of Plaintiff Arizona Creditors Bar Association ("ACBA"). That ACBA's members are presently suffering non-uniform application of the law, as pled in Plaintiffs' Verified Complaint, only strengthens Plaintiffs' valid standing in the action.

The State (at 50–51) also argues that Plaintiffs have "not even attempt[ed]" to show that their declaratory judgment claim is justiciable because they have not "alleged that there was any question about the application of Prop 209 to their

---

[18] While Defendants have raised the potential application of a bona fide error defense for the first time on appeal, the potential invocation or application of an affirmative defense does not change the fact that a potential plaintiff does not need to establish scienter in order to establish a prima facie case of liability under the FDCPA. *Clark v. Cap. Credit Collection Serv.*, 460 F.3d 1162, 1177 (9th Cir. 2006) ("This narrow exception to strict liability under the FDCPA is an affirmative defense . . . .").

ongoing proceedings, or any impending proceedings." This argument is wrong for two reasons. <u>First</u>, Plaintiffs squarely addressed the justiciability of their declaratory judgment claim with the superior court. APP-0153–154. <u>Second</u>, the State's argument presupposes that all declaratory judgment claims must concern as-applied challenges. This ignores the Arizona Supreme Court's instruction in *Mills* that a declaratory judgment action can be justiciable even when the injury has not occurred yet. 253 Ariz. at 424 ¶ 30. The fact "[t]hat standing exists under these circumstances is implicitly recognized by Arizona's declaratory judgment statute," *Dobson v. State ex rel. Comm'n on App. Ct. Appointments*, 233 Ariz. 119, 122 ¶ 11 (2013), which authorizes "*any person* . . . whose rights . . . are affected by a statute . . . may have determined *any question of construction or validity* arising under the . . . . statute . . . ." A.R.S. § 12-1832 (emphases added).

Accordingly, Plaintiffs have sufficiently pled an "actual controversy" which is alone enough to establish that their claims are justiciable.

## III.    <u>PLAINTIFFS PLED SUFFICIENT INJURY-IN-FACT.</u>

In addition to pleading an actual controversy, Plaintiffs have also pled particularized and concrete injuries stemming from Prop 209.

For instance, Plaintiffs Absolute Resolutions Investments LLC, Bauhinia, LLC, Desert Ridge Community Association and August Ranch Master Community Association, Cash Time Title Loans, Inc., Hameroff Law Group, P.C., and ACBA's

member firms[19] and lawyers are all "debt collectors" under the FDCPA (either in their individual capacity or as an agent for their clients). *See* 15 U.S.C. § 1692a(6). APP-0010–11 ¶¶ 11 13–18. In addition, Plaintiff Cash Time Title Loans, Inc. is a routine garnishee, a group that is similarly regulated and subject to penalties for attempting to collect the wrong garnishment amount. APP-0011 ¶ 18, APP-0050–51 ¶¶ 3–16. As "debt collectors" and garnishees, these Plaintiffs are directly injured by Prop 209's unconstitutionally vague and unintelligible Savings Clause. These Plaintiffs regularly file garnishment actions or are required to file statements of earnings in post-judgment enforcement actions but cannot determine how to conform their conduct with the law (*i.e.*, pursue the correct amounts of debt or determine the correct amount of money to garnish under either the new or old law). The inconsistent application of Prop 209 in the several justice and superior courts subjects these Plaintiffs to the realistic threat of strict liability under the FDCPA.

In addition to the financial penalty associated with an FDCPA claim that all of these Plaintiffs would sustain, lawyer Plaintiffs subject to an FDCPA claim will

---

[19] As a membership organization, ACBA has associational standing to bring its members claims' when members share "common and equal injuries." *Ariz. Ass'n of Providers for Persons with Disabilities*, 223 Ariz. at 13 ¶¶ 17–18. Because ACBA's members are all debt collector firms or lawyers subject to strict liability penalties under the FDCPA, APP-0037 ¶ 35, APP-0040–47, associational standing exists here. *Ariz. Ass'n of Providers*, 223 Ariz. at 13 ¶¶ 17-18.

suffer reputational harm, ethical complaints, and increased insurance costs that threaten the survival of their law practices. APP-0036–37 ¶¶ 26–30, 32–34, APP-0044–47 ¶¶ 28–33, 37, 39–40. Moreover, Cash Time Title Loans, Inc. will be required to increase operating costs due to frequent needs to recalculate garnishments or make refunds due to Prop 209's irreconcilable confusion. APP-0011 ¶ 18, APP-0050–51 ¶¶ 3–16. Finally, debt collector Plaintiffs Absolute Resolutions Investments LLC, Bauhinia, LLC, Desert Ridge Community Association and August Ranch Master Community Association, Cash Time Title Loans, Inc., are also harmed by Prop 209's increase in exemptions, reduction in rates of withholding, and, with respect to those collecting medical debt, the decrease in interest rates. This constitutes a "distinct and palpable injury" from the application of the otherwise unconstitutional statute. *See, e.g.*, *Ariz. Ass'n of Providers*, 223 Ariz. at 13 ¶¶ 17–18 (finding a party's injury sufficient for standing because it was subject to the challenged statute's 10 percent rate reductions).

ACBA also has suffered an organizational injury sufficient to confer standing: "ACBA has, and will continue, to divert significant time, money, and other resources toward educating its members about the implementation and associated liability risks created by Prop 209," giving it standing here. APP-0047 ¶ 42. "Under the diversion-of-resources theory, an organization has standing to sue when a defendant's illegal acts impair the organization's ability to engage in its own projects by forcing the

58

organization to divert resources in response." *Arcia v. Fla. Sec'y of State*, 772 F.3d 1335, 1341 (11th Cir. 2014) (citing *Havens Realty Corp. v. Coleman,* 455 U.S. 363, 379 (1982)).

Finally, Plaintiff Protect Our Arizona was the political committee organized to oppose Prop 209's passage. APP-0010 ¶ 12. Its standing in this case is based on its interest in opposing Prop 209. This interest directly mirror's Intervenor's standing in this case, as the political committee organized to support Prop 209's passage. *Cf. Yniguez v. Arizona*, 939 F.2d 727, 733 (9th Cir. 1991) (reasoning that committee sponsoring a ballot initiative had a strong interest in the constitutionality of a statute it "vigorously campaigned" to pass); *see also Molera v. Hobbs*, 250 Ariz. 13, 18 ¶¶ 2–3 (2020) (featuring a defendant sponsor committee and plaintiff opposition committee in a pre-election challenge to voter initiative).

These injuries are sufficient to establish Plaintiffs' standing.

## IV.   **THIS COURT SHOULD DETERMINE THE CASE ON THE MERITS.**

Arizona's justiciability doctrines are prudential, not jurisdictional. *See Bennett v. Napolitano*, 206 Ariz. 520, 527 ¶ 31 (2003).  As such, this Court can, in exceptional circumstances, consider the merits even if Plaintiffs do not have standing. *Id.* Courts have considered the merits absent standing when the issues are of great public importance and are likely to reoccur. *Id.* The uniform applicability of a voter initiative, that cannot be amended or clarified by the legislature under the

Voter Protection Act, to an area of law that generates tens of thousands of actions each year is undoubtedly an issue of statewide importance. *See Goldberger*, 247 Ariz. at 268 ¶ 26 (public policy favored reading insurance contract in a manner that promoted uniform application). Moreover, because of the low dollar amounts at issue in any individual case, these issues are not likely to reach appellate review.

Even if this Court disagrees with the superior court's correct reasoning regarding standing, this Court should exercise its discretion and reach the merits of this case.

## V.    **<u>CONCLUSION</u>**

For all these reasons, Plaintiffs' claims are justiciable. They have alleged inconsistent application of the law, an actual controversy, and sufficient injury-in-fact to confer standing. Defendants' cross-appeal is meritless, and this Court should affirm the superior court's decision to deny Plaintiffs' motions to dismiss.

RESPECTFULLY SUBMITTED this 26th day of June, 2023.

SNELL & WILMER L.L.P.


By: */s/ Brett W. Johnson*
    Brett W. Johnson
    Benjamin W. Reeves
    Tracy A. Olson
    Ryan Hogan
    Charlene A. Warner
    One East Washington Street
    Suite 2700
    Phoenix, Arizona 85004-2202

# PARTY CONTACT INFORMATION

Hayleigh S. Crawford
Luci D. Davis
Office of the Arizona Attorney General
2005 N. Central Ave.
Phoenix, AZ 85004
Hayleigh.Crawford@azag.gov
Luci.Davis@azag.gov

*Attorneys for Defendant State of Arizona*

James E. Barton, II
Jacqueline Mendez Soto
Barton Mendez Soto PLLC
401 W. Baseline Rd., Ste. 295
Tempe, AZ 85283
james@bartonmendezsoto.com
jacqueline@bartonmendezsoto.com

*Attorneys for Intervenor-Defendants Arizonans Fed Up with*
*Failing Healthcare (Healthcare Rising AZ)*